UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,
800 Connecticut Avenue
4th Floor East
Norwalk, CT 06854,

          *Plaintiff,*

      v.

United States Department of Justice,

          *Defendant.*

Civil Action No. _____

## COMPLAINT

For its complaint, Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") alleges as follows:

### NATURE OF THIS ACTION

1.     This is a Freedom of Information Act ("FOIA") action that seeks declaratory and injunctive relief in light of the failure of the United States Department of Justice to release documents to Stolt-Nielsen as required by law.

2.     This action is related to *Stolt-Nielsen v. United States*, 05-cv-02217-RJL (D.D.C.), which challenges the failure of the United States Department of Justice's Antitrust Division to release documents associated with six FOIA requests made by Stolt-Nielsen from June 2, 2005 to September 20, 2005. These requests (which are not part of this lawsuit) are described in this complaint as the First, Second, Third, Fourth, Fifth, and Sixth FOIA requests.

3.    This action concerns six FOIA requests made by Stolt-Nielsen to the Antitrust Division from October 14, 2005 to January 26, 2006.  These requests are described in this complaint as the Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA requests.

### JURISDICTION

4.    This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

### VENUE

5.    Venue is appropriate in this Court pursuant to 5 U.S.C. § 552(a)(4)(B).

### PARTIES

**I.    The Plaintiff — Stolt-Nielsen Transportation Group Ltd.**

6.    The plaintiff in this action is Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen").  Stolt-Nielsen provides transportation services for bulk liquid chemicals, edible oils, acids, and other specialty liquids.  The Company provides, among other things, intercontinental parcel tanker services.  Parcel tanker shipping is the ocean transportation of bulk chemicals, edible oils and other specialty liquids.

7.    Stolt Nielsen S.A. ("SNSA"), a Luxembourg company, is the parent corporation of all Stolt-Nielsen entities worldwide.  SNSA employs approximately 5,000 people worldwide and 500 people in the United States, primarily in Connecticut, Texas and Louisiana.  SNSA's common shares are traded on the Oslo Stock Exchange (under symbol SNI) and on the NASDAQ Exchange as an American Depository Receipt ("ADR") (under symbol SNSA).

**II.    The Defendant — United States Department of Justice**

8.    The defendant in this action is the United States Department of Justice, which includes the Antitrust Division of the United States Department of Justice ("Antitrust Division")

as well as all components of that agency that are empowered to administer the provisions of FOIA.

## FACTUAL BACKGROUND

9.     The factual background common to this action and Stolt-Nielsen's initial FOIA action (Civil Action No. 05-2217) are set forth herein.

## I.    The Amnesty Agreement

10.     On January 15, 2003, the Antitrust Division entered into a binding amnesty agreement ("Amnesty Agreement") with Stolt-Nielsen. The Division promised "not to bring any criminal prosecution" against Stolt-Nielsen (or that company's directors, officers, and employees) in exchange for information provided by Stolt-Nielsen concerning possible collusive activity in the parcel tanker industry violative of the Sherman Act.

11.     Stolt-Nielsen adhered to its part of the bargain by promptly reporting to the Antitrust Division evidence of a hard-core, criminal antitrust conspiracy in the parcel tanker industry.

12.     Subsequently, the Antitrust Division used the information provided by Stolt-Nielsen to obtain guilty pleas from Stolt-Nielsen's co-conspirators.  Odfjell Seachem AS ("Odfjell") was fined $42.5 million.  Odfjell's chairman, Bjorn Sjaastad, was sentenced to four months in prison and fined $250,000.  Odfjell Vice-President Erik Nilsen was sentenced to three months in prison and fined $25,000.  Jo Tankers, B.V. was fined $19.5 million.  Its former co-managing director, Henrikus Van Westenbrugge, was sentenced to three months in prison and fined $75,000.

13.     On April 8, 2003, in contravention of its obligations under the Amnesty Agreement, the Antitrust Division abruptly "suspended" Stolt-Nielsen's cooperation

requirements due to a purported misrepresentation made by Stolt-Nielsen concerning its discovery and termination of the anticompetitive activity at issue.

14.    On June 24, 2003, Richard B. Wingfield, a Stolt-Nielsen executive, was criminally charged with violations of the Sherman Act. This action was also in contravention of the Antitrust Division's promise in the Amnesty Agreement not to prosecute Stolt-Nielsen's directors, officers, and employees.

15.    On February 6, 2004, Stolt-Nielsen and SNSA commenced a civil action in the United States District Court for the Eastern District of Pennsylvania to enforce their rights under the Amnesty Agreement. Specifically, Stolt-Nielsen requested a declaratory judgment and injunctive relief requiring the Antitrust Division to honor its promise not to indict Stolt-Nielsen. The district court immediately granted Stolt-Nielsen's request to keep the entire action under seal. On March 2, 2004, the Antitrust Division formally removed Stolt-Nielsen from the agency's corporate leniency program.

16.    In April 2004, the district court held a trial on the merits. During that trial, the Antitrust Division presented a single witness — Deputy Assistant Attorney General James A. Griffin — whose testimony encompassed a December 4, 2002 meeting between various Antitrust Division officials and John Nannes, counsel for Stolt-Nielsen. Mr. Griffin's testimony concerning Stolt-Nielsen's admission into and participation in the antitrust amnesty program was authorized by R. Hewitt Pate, who was at the time Assistant Attorney General for the Antitrust Division.

17.    On May 15, 2004, the Antitrust Division moved the district court to unseal the action, including the trial transcript and exhibits.

18.    On January 14, 2005, the district court entered final judgment in favor of Stolt-Nielsen and permanently enjoined the Antitrust Division from seeking an indictment of either Stolt-Nielsen or Wingfield. *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D.Pa. 2005). In so doing, the district court concluded that: (a) Stolt-Nielsen did not make any misrepresentation to the Antitrust Division; (b) Stolt-Nielsen fulfilled its promise to deliver evidence of the antitrust conspiracy; and (c) the Antitrust Division received the benefit of its bargain by obtaining successful convictions of the other members of the conspiracy.

19.    Simultaneously, the district court also granted the Division's motion unsealing the trial testimony and exhibits.

20.    Subsequently, the Antitrust Division appealed from the district court's final judgment. That appeal is currently pending before the United States Court of Appeals for the Third Circuit.

## II.    The Antitrust Division's Public Statements Concerning Stolt-Nielsen

21.    Since April 2003, when it first suspended Stolt-Nielsen's cooperation requirement under the Amnesty Agreement, the Antitrust Division has made repeated remarks to the public concerning Stolt-Nielsen, notwithstanding that agency's policy of not commenting upon ongoing criminal matters. *See* 28 C.F.R. § 50.2(b)(2) (prohibition concerning criminal actions: "At no time shall personnel of the Department of Justice furnish any statement or information for the purpose of influencing the outcome of a defendant's trial . . ."); 28 C.F.R. § 50.2(c) (prohibition concerning civil actions: "Personnel of the Department of Justice associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to . . . [t]he

character, credibility, or criminal records of a party, witness, or prospective witness"); 28 C.F.R. § 50.2(b)(6) ("The release of certain types of information generally tends to create dangers of prejudice without serving a significant law enforcement function").

### A.    An FBI Agent Speaks To The Press About Stolt-Nielsen

22.    After charges were brought against Stolt-Nielsen's employee, Mr. Wingfield, an FBI agent assisting the Division in the parcel tanker investigation spoke to a major worldwide shipping publication.  Specifically, the FBI agent was quoted by that publication as saying that the Bureau had a "strong case" against the accused and that he expects "several more arrests" in the coming months.  "FBI's 'Strong Case' May Lead To More Stolt-Nielsen Arrests; Bureau's Stance Over Price Fixing Probe Is Made Public In The Run Up To Wingfield's Indictment," *Lloyd's List*, August 13, 2003 (attached as Exhibit 1).

23.    The *Lloyd's List* article continued:   "Special agent John Sharp from the FBI's Philadelphia field office told Lloyd's List: 'No matter what happens with the case, [the arrest] will remain on Mr Wingfield's record.'"  (Exhibit 1, bracketed material in original).

24.    The *Lloyd's List* article attributed to the FBI agent additional statements about other Stolt-Nielsen executives:   "Mr. Sharp said the FBI had documents to prove that Stolt-Nielsen executives hatched a price-fixing conspiracy.  The existence of these documents and the executives' inability to contest their existence was itself tantamount to an admission of culpability, Mr. Sharp said."  (Exhibit 1).  The article goes on to quote the FBI agent that "he was not at liberty to divulge names of people other than Mr. Wingfield who would be arrested, but added: 'I know who they are.'" (Exhibit 1).

### B.    Public Speeches By Antitrust Division Officials Concerning Stolt-Nielsen

25.    The Antitrust Division has subsequently engaged in a public speaking campaign targeting Stolt-Nielsen.  Specifically, Scott D. Hammond, Deputy Assistant Attorney General for

Criminal Enforcement for the Antitrust Division, has spoken about Stolt-Nielsen at a number of public venues within the United States and abroad. Among the speeches made by Mr. Hammond are:

    a.    "Recent Developments In Antitrust Law," 19th Annual National Institute On White Collar Crime 2005, Las Vegas, Nevada, March 3, 2005. During this speech, Mr. Hammond stated that "the removal or the attempt to remove Stolt from the corporate leniency" was the number one "blockbuster development" in criminal antitrust enforcement in recent months. Mr. Hammond also commented on Antitrust Division deliberations associated with a December 4, 2002 meeting with counsel for Stolt-Nielsen, noting: "We went into the hall, we looked at those letters, we thought about it, and we said, 'it's pretty good.'" Finally, Mr. Hammond stated in his speech that Stolt-Nielsen was "a company that did everything wrong from the beginning."

    b.    Spring 2005 American Bar Association Antitrust Section Meeting, Washington, D.C., March 30, 2005.

    c.    Langdon Hall 2005 Competition Law Invitational Forum in Canada, May 6, 2005.

    d.    Executive Committee meeting, New York State Bar Association Antitrust Law Section, New York City, September 14, 2005. In this speech, Mr. Hammond stated that Stolt-Nielsen continued in an antitrust conspiracy until the publication of a November 22, 2002 *Wall Street Journal* article, a proposition with which Stolt-Nielsen strongly disagrees.

e.    American Bar Association's International Law Section Meeting in Brussels, October 26, 2005.

f.    National Press Club, Washington, D.C., November 16, 2005. In this speech, Mr. Hammond repeated many of the prejudicial comments he made in the past concerning Stolt-Nielsen, including:

    i.    "But Stolt is an unfortunate example of a company that did everything wrong. General counsel discovered that the company was involved in an international cartel. General counsel reported it to the Chairman of U.S. subsidiary, and yet, the company failed to take advantage of the leniency program and failed to report the conduct. Making matters worse, instead, Stolt continued to conspire and participate in this same international conspiracy."

    ii.    "Now, they conspired by continuing to have senior executives meeting, discussing and participating in the cartel with their competitors, and that conspiracy continued right up until the time the *Wall Street Journal* reported the existence of the conspiracy."

    iii.    "It [Stolt] lied to the Antitrust Division; that is, the company misrepresented their way into the program by saying that the conduct ended when it was discovered and provided the Justice Department with false and misleading information and withheld other information. When we discovered that, they were removed from the program."

    iv.   "A District Court Judge in the Eastern District of Philadelphia saw it differently."

    v.   "But what we have here is a company [Stolt], as I said, that lied its way into the [amnesty] program."

    vi.   "If a company's general counsel, outside counsel or the board of directors learns that a company is involved in an antitrust violation, they must take prompt and effective action to terminate their participation.  That is not what happened here.  It's clearly not what happened here."

    vii.   "Do not make the mistake Stolt made.  Report the conduct, protect the company, protect the individuals."

26.    Based upon information and belief, Mr. Hammond and other Antitrust Division officials have spoken critically about Stolt-Nielsen at other public venues.

**C.    Articles About Stolt-Nielsen Reviewed By Antitrust Division Officials**

27.    The Antitrust Division, including Mr. Hammond, has on two occasions assisted private authors with writing articles critical of Stolt-Nielsen and the district court's decision.

28.    The first article, Jim Walden, Kristopher Dawes, *The Curious Case of Stolt-Nielsen S.A. v. United States*, The Antitrust Source (March 2005) (attached as Exhibit 2), benefited from direct assistance by Mr. Hammond. *See* Exhibit 3 (e-mail from Jim Walden to Scott Hammond, dated January 25, 2005: "Thanks for all the helpful information, which was great.  We will cite a bunch of it in the article").

29.    The second article, Donald L. Baker, *True Confessions*, Legal Times (September 26, 2005) (attached as Exhibit 4), also benefited from assistance from the Antitrust Division.  In its answer filed in connection with *Stolt-Nielsen v. United States*, 05-cv-02217-RJL (D.D.C.), the

Antitrust Division admitted that it reviewed a draft of Mr. Baker's article and provided Mr. Baker with its comments.

30.    The Antitrust Division presented both the Walden and Baker articles to the United States Court of Appeals for the Third Circuit as authority, without disclosing the fact that it had reviewed and commented upon drafts of the articles.

31.    As a result of the Antitrust Division's prejudicial communications to the public, Stolt-Nielsen has filed a series of FOIA requests with the Antitrust Division to ascertain the full scope and nature of its improper communications about Stolt-Nielsen.

### III.    The FOIA Requests

32.    From June 2, 2005 to January 26, 2006, Stolt-Nielsen filed twelve separate FOIA requests with the Antitrust Division. *See* Exhibit 5 (summary chart). The latter six requests form the basis of this action.

#### A.    The First FOIA Requests Made By Stolt-Nielsen

33.    Stolt-Nielsen made its First, Second, Third, Fourth, Fifth, and Sixth FOIA requests from June 2, 2005 through September 30, 2005. Certain documents were provided by the Antitrust Division on September 30, 2005. Thereafter, Stolt-Nielsen filed an administrative appeal. On November 15, 2005, Stolt-Nielsen commenced a civil action in this Court with respect to these six FOIA requests. *Stolt-Nielsen v. United States*, 05-cv-02217-RJL (D.D.C.). That action has been assigned to the Honorable Richard J. Leon.

#### B.    The Six FOIA Requests That Are The Subject Of This Lawsuit

##### 1.    Seventh Request:  Antitrust Division Communications With Certain Private Attorneys And Correspondents Regarding The Parcel Tanker Investigation

34.    Stolt-Nielsen made its seventh request on October 14, 2005, requesting any and all documents that reflect, memorialize, embody or contain communications regarding the

investigation into the parcel tanker investigation, to or from (1) David S. Golub; (2) Jonathan M. Levine; (3) James M. Griffin, following his departure from the Antitrust Division in December 2004; and (4) Donald I. Baker, the author of a September 26, 2005 article in the *Legal Times* entitled *True Confessions* ("Seventh FOIA Request") (attached as Exhibit 6).

35.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-003 to this request.

36.    That letter stated that the Antitrust Division would be "unable to comply with the twenty working day time limit in this case, as well as the ten additional days provided by the statute." No documents have been provided.

### 2.    Eighth Request:    All Amnesty Agreements Entered Into By the Antitrust Division From August 1993 To The Present

37.    Stolt-Nielsen made its eighth request on October 14, 2005, requesting any and all amnesty agreements entered into by the Antitrust Division from August 1993 to the present ("Eighth FOIA Request") (attached as Exhibit 7).

38.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-002 to this request.

39.    That letter stated that the Antitrust Division would be "unable to comply with the twenty working day time limit in this case, as well as the ten additional days provided by the statute." No documents have been provided.

### 3.    Ninth Request:   Speeches By Antitrust Division Officials Concerning Stolt-Nielsen

40.    Stolt-Nielsen made its ninth request on November 9, 2005, requesting (1) any speeches and speech-related materials concerning Stolt-Nielsen given by Mr. Hammond from June 2, 2005 (the date of Stolt-Nielsen's prior FOIA request) to the present, including but not limited to the speeches given by Mr. Hammond (a) in New York City on September 14, 2005,

and (b) in Brussels, Belgium on October 26, 2005; and (2) any public speeches and speech-related materials concerning Stolt-Nielsen given by any other Antitrust Division official concerning Stolt-Nielsen, including but not limited to Lisa Phelan (currently Chief, National Criminal Enforcement Section), from March 1, 2004 to the present ("Ninth FOIA Request") (attached as Exhibit 8).

41.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-019 to this request.

42.    That letter stated that the Antitrust Division would be "unable to comply with the twenty working day time limit in this case, as well as the ten additional days provided by the statute." No documents have been provided.

### 4.    Tenth Request:    Communications Between The Antitrust Division And The International Competition Network About Stolt-Nielsen

43.    Stolt-Nielsen made its tenth request on December 7, 2005, requesting any and all materials relating to communications, presentations or speeches by any Antitrust Division official that discuss in any way Stolt-Nielsen, Stolt-Nielsen's status in the Division's amnesty program, the circumstances and rationale for the Division's attempted withdrawal of amnesty from Stolt-Nielsen, and/or the Antitrust Division's litigation with Stolt-Nielsen over Stolt-Nielsen's amnesty status in the Eastern District of Pennsylvania and the appeal to the United States Court of Appeals for the Third Circuit and/or the investigation into Stolt-Nielsen, by officials of the Antitrust Division to the participants in the International Competition Network ("Tenth FOIA Request") (attached as Exhibit 9).

44.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-026 to this request.

45.     That letter stated that the Antitrust Division would be "unable to comply with the twenty working day time limit in this case, as well as the ten additional days provided by the statute." No documents have been provided.

      **5.      Eleventh Request:      Speeches By Antitrust Division Officials Concerning Stolt-Nielsen**

46.     Stolt-Nielsen made its eleventh request on January 24, 2006, requesting (1) any speeches and speech-related materials concerning Stolt-Nielsen given by Mr. Hammond from November 9, 2005 (the date of Stolt-Nielsen's most-recent FOIA request on this issue) to the present, including but not limited to the speeches given by Mr. Hammond at the National Press Club in Washington, D.C. on November 16, 2005; and (2) any public speeches and speech-related materials concerning Stolt-Nielsen given by any other Antitrust Division official concerning Stolt-Nielsen, including but not limited to Lisa Phelan (currently Chief, National Crime Enforcement Division), from March 1, 2004 to the present ("Eleventh FOIA Request") (attached as Exhibit 10).

47.     Stolt-Nielsen received a letter from the Antitrust Division, dated February 2, 2006, which assigned control number ATFY06-038 to this request.

48.     That letter stated that the Antitrust Division would be "unable to comply with the twenty working day time limit in this case, as well as the ten additional days provided by the statute." No documents have been provided.

      **6.      Twelfth Request:  Communications Between The Antitrust Division And Attorneys With (1) St. Martin & Williams; And (2) Kasowitz, Benson, Torres & Friedman LLP**

49.     Stolt-Nielsen made its twelfth request on January 26, 2006, requesting any and all documents that reflect, memorialize, embody or contain communications regarding the investigation into the parcel tanker investigation, to or from (1) any attorney with St. Martin &

Williams, including but not limited to Conrad S.P. "Duke" Williams III; and (2) any attorney with Kasowitz, Benson, Torres & Friedman LLP, including but not limited to Hector Torres, Harold G. Levinson, or Gary W. Dunn ("Twelfth FOIA Request") (attached as Exhibit 11).

50.     Stolt-Nielsen received a letter from the Antitrust Division, dated February 2, 2006, which assigned control number ATFY06-040 to this request.

51.     That letter stated that the Antitrust Division would be "unable to comply with the twenty working day time limit in this case, as well as the ten additional days provided by the statute." No documents have been provided.

**IV.   The Need For Judicial Review At This Time**

52.     On January 10, 2006, Stolt-Nielsen engaged in good-faith discussions with the Antitrust Division concerning *Stolt-Nielsen v. United States*, 05-cv-02217-RJL (D.D.C.), as well as the Seventh, Eighth, Ninth, and Tenth FOIA Requests. Those discussions, however, have not produced any concrete results. Nor has the Antitrust Division provided documents responsive to the Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA Requests. Thus, Stolt-Nielsen is compelled to file this additional lawsuit.

53.     The policies embodied in FOIA cast a spotlight on government actions. When the government itself embarks on a public campaign to tarnish a company's reputation, that company is entitled to each and every communication that makes up that campaign.

**COUNT ONE**

**(Failure to Provide Documents Responsive to FOIA Requests)**

54.     Stolt-Nielsen incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55.     Pursuant to FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the

time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added).

56.    Stolt-Nielsen made FOIA requests for records that reasonably described the records it sought and were in accordance with published rules of the Department of Justice. Nonetheless, the Antitrust Division has failed (a) to provide documents in its possession that are responsive to the Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA Requests; and (b) to identify a legitimate statutory exemption that would entitle it to withhold responsive records.

57.    By failing to produce records in response to the Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA Requests without adequate justification, the Antitrust Division has violated the requirements of FOIA.

## COUNT TWO

### (Failure to Provide A *Vaughn* Index)

58.    Plaintiff incorporates by reference paragraphs 1 through 57 as though fully set forth herein.

59.    Pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), and its progeny, an agency that seeks to withhold information in response to a FOIA request must provide a *Vaughn* index, consisting of "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

60.    The Antitrust Division has failed to provide a *Vaughn* index justifying its failure to disclose records with respect to its Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA Requests.

61.    By failing to provide a *Vaughn* index, the Antitrust Division has violated the requirements of FOIA.

## DEMAND FOR RELIEF

WHEREFORE, Stolt-Nielsen respectfully prays for an order of this Court:

(a)    entering judgment in favor of Stolt-Nielsen;

(b)    declaring that the Antitrust Division has violated FOIA;

(c)    ordering the Antitrust Division to prepare a *Vaughn* index of materials it proposes to withhold and share such index with Stolt-Nielsen;

(d)    ordering the Antitrust Division to produce to Stolt-Nielsen all documents that are responsive to Stolt-Nielsen's FOIA requests;

(e)    assessing against the Antitrust Division reasonable attorneys fees and other litigation costs reasonably incurred by Stolt-Nielsen in prosecuting this case; and

(f)    issuing such further relief as the Court deems just and proper.


Dated:  March 14, 2006                          Respectfully submitted,

                                                **WHITE & CASE** LLP

                                        By: _____
                                                J. Mark Gidley (D.C. Bar No. 417280)
                                                Christopher M. Curran (D.C. Bar. No. 408561)
                                                Lucius B. Lau (D.C. Bar No. 446088)
                                                701 Thirteenth St., N.W.
                                                Washington, D.C.  20005
                                                tel.: (202) 626-3600
                                                fax: (202) 639-9355

                                                *Counsel to Stolt-Nielsen Transportation*
                                                *Group Ltd.*