## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STOLT-NIELSEN TRANSPORTATION GROUP LTD.** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**UNITED STATES DEPARTMENT OF JUSTICE,** )<br><br>**Defendant.** ) | **Civil Action No. 1:06-cv-00474 (RJL)** |

### ANSWER TO THE COMPLAINT

Defendant United States Department of Justice ("DOJ"), by its undersigned attorneys, hereby answers the complaint as follows:

<u>First Defense</u>

The complaint fails to state a claim upon which relief can be granted.

<u>Second Defense</u>

In response to the numbered paragraphs of the complaint, defendant admits, denies, or otherwise states as follows:

1. Defendant admits that this is a civil action for declaratory and injunctive relief brought pursuant to the Freedom of Information Act ("FOIA"). Defendant denies the remainder of the allegations in ¶ 1.

2. Defendant acknowledges that plaintiff previously filed an action styled *Stolt-Nielsen v. United States*, 05-CV-02217-RJL (D.D.C.) relating to six FOIA requests made by Stolt-Nielsen

Transportation Group Ltd. ("Stolt-Nielsen") from June 2, 2005 to September 20, 2005, referred to as the First, Second, Third, Fourth, Fifth, and Sixth FOIA requests in Plaintiff's Complaint. Defendant denies the remainder of the allegations in ¶ 2.

3. Defendant admits first sentence of ¶ 3. The FOIA requests that are the subject of this action are described in the Complaint and in this Answer as the Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA requests.

4. Defendant acknowledges the existence of the statutes referenced in ¶ 4 but denies that they necessarily confer subject matter jurisdiction over this action.

5. Admit.

6. Admit.

7. Defendant lacks sufficient information with regard to the details of the business activities of Stolt-Nielsen S.A. ("SNSA") to admit or deny the allegations in ¶ 7.

8. Defendant denies that for the purposes of this suit Defendant includes all components of the Department of Justice that are empowered to administer the provisions of the FOIA.

## Factual Background

9. Deny.

## I.    The Amnesty Agreement

10. - 20. On January 15, 2003, the Antitrust Division entered into a conditional amnesty agreement with Stolt-Nielsen and affiliated entities in its investigation of collusion in the parcel tanker shipping industry, an investigation that is currently ongoing. Through an amnesty application, also known as a leniency application, the applicant admits that it has participated in a criminal antitrust violation and cooperates in the Division's investigation of its coconspirators.

Amnesty is granted to an applicant in a two-stage process.  Initially, the applicant is granted a

conditional amnesty letter.[1]  The conditions in the initial letter include the verification of certain

specified representations by the applicant and the full, continuing and complete cooperation of

the applicant, as defined in the letter.[2]  The required representations include the applicant's

representation that it "took prompt and effective action to terminate its part in the anticompetitive

activity being reported upon discovery of the activity."[3]  The conditional letter also provides that

if the Antitrust Division determines that the applicant has violated the agreement, the amnesty

agreement "shall be void, and the Antitrust Division may revoke the conditional acceptance of

[the applicant] into the Corporate Leniency Program."[4]  Once all of the conditions in the

conditional leniency letter are satisfied, the Division notifies the applicant in writing that its

application has been granted.

     The Division's amnesty program is its most effective generator of international cartel

---

[1]     *See* Amnesty Agreement between the Antitrust Division and Stolt-Nielsen and its affiliates (Jan. 15, 2003) (hereinafter "SNTG Amnesty Agreement"), attached as Exhibit 1 ("This agreement is conditional and depends upon SNTG satisfying the conditions set forth below. After all of these conditions are met, the Division will notify SNTG in writing that the application has been granted.").  The SNTG Amnesty Agreement defined SNTG as Stolt-Nielsen Transportation Group Ltd. (Bermuda), its parent (including its ultimate parent), affiliates, and subsidiaries, but not including joint venture partners.  Defendant uses SNTG in this Answer to refer to the same entities.

[2]     *See* SNTG Amnesty Agreement  ¶ 3 ("Subject to verification of SNTG's representations in paragraph 1 above, and subject to its full, continuing and complete cooperation, as described in paragraph 2 above, the Antitrust Division agrees conditionally to accept SNTG into Part B of the Corporate Leniency Program . . . .").

[3]     *See* SNTG Amnesty Agreement ¶ 1(a).

[4]     *See* SNTG Amnesty Agreement ¶ 3.

3

cases, and is the Justice Department's most successful amnesty program.[5] The amnesty program is particularly appropriate for antitrust offenses because price-fixing, bid-rigging, and allocation agreements are conspiracy offenses, and thus, even though a qualifying amnesty applicant receives amnesty for its reported violations, the applicant's coconspirators will be prosecuted. In fact, over $2 billion in criminal fines and numerous jail sentences have been obtained as a result of the Division's current amnesty program, which was implemented in 1993.[6]

Because the amnesty program is vital to the Antitrust Division's criminal enforcement program, maintaining its integrity is also critical. It is imperative that the Division ensure that the program is not misused by applicants who are not eligible for amnesty and who would escape prosecution while their truthful, cooperating coconspirators are prosecuted, and that the defense

---

[5]    James M. Griffin, Deputy Assistant Attorney General for Criminal Enforcement, Antitrust Division, U.S. Justice Department, Status Report: Corporate Leniency Program, Speech Before the ABA's Antitrust Law Section's Criminal Practice and Procedure Committee (March 28, 2001), *available at* http://www.usdoj.gov/atr/public/speeches/8063.htm; *see also* Scott Hammond, Director of Criminal Enforcement, Antitrust Division, U.S. Justice Department, Detecting and Deterring Cartel Activity Through An Effective Leniency Program, Speech Before the International Workshop on Cartels (Nov. 21-22, 2000), *available at* http://www.usdoj.gov/atr/public/speeches/9928.htm ("Over the last five years, the United States' Corporate Leniency Program ('Amnesty Program') has been responsible for detecting and cracking more international cartels than all of our search warrants, secret audio or videotapes, and FBI interrogations combined. It is, unquestionably, the single greatest investigative tool available to anti-cartel enforcers.") The success of the Division's amnesty program has led anti-cartel enforcers around the world to adopt similar amnesty programs. Scott D. Hammond, Deputy Assistant Attorney General, Antitrust Division, U.S. Justice Department, An Update of the Antitrust Division's Criminal Enforcement Program, Speech before the ABA Antitrust Law Section's Cartel Enforcement Roundtable (Nov. 16, 2005), *available at* http://www.usdoj.gov/atr/public/speeches/213247.htm.

[6]    Scott D. Hammond, Deputy Assistant Attorney General, Antitrust Division, U.S. Justice Department, An Update of the Antitrust Division's Criminal Enforcement Program, Speech before the ABA Antitrust Law Section (Nov. 16, 2005), *available at* http://www.usdoj.gov/atr/public/speeches/213247.htm.

bar and business people have confidence in the program such that they are not dissuaded from making amnesty applications.

After entering into a conditional amnesty agreement with SNTG regarding its participation in an antitrust cartel in the parcel tanker shipping industry, the Antitrust Division received credible evidence that SNTG's representation about prompt and effective termination of its participation in the cartel upon discovery was false, and therefore, that it was never eligible for amnesty.[7]  On April 8, 2003, the Antitrust Division notified SNTG that it was no longer required to cooperate with the investigation since there was doubt that its conditional leniency would ever ripen into actual leniency due to its misrepresentations.  Pursuant to the terms of the conditional SNTG Amnesty Agreement, the Division proceeded to investigate the truthfulness of SNTG's representations.

Before SNTG's requirement to cooperate was suspended, two corporate subjects of the investigation offered to cooperate, and began cooperating, with the Antitrust Division.  These two corporations and certain of their executives provided the Division with evidence of the continuation of the parcel tanker customer allocation, price-fixing, and bid-rigging conspiracy until November 2002 and pleaded guilty to a conspiracy that lasted until that date, which was nine months later than the time that SNTG had told the Division it had withdrawn from the

---

[7]     In response to questions about this requirement, the Division had previously clarified in a 1998 speech that the Division would consider a corporation to have discovered its cartel activity "at the earliest date on which either the board of directors or counsel for the corporation (either inside or outside) were first informed of the conduct."  Gary R. Spratling, Deputy Assistant Attorney General for Criminal Enforcement, Antitrust Division, U.S. Department of Justice, The Corporate Leniency Policy: Answers to Recurring Questions, Speech Before the ABA Antitrust Section's 1998 Spring Meeting (Ap. 1, 1998).

conspiracy.  During this gap, the international parcel tanker conspiracy affected tens of millions of dollars in U.S. commerce.  Odfjell Seachem AS (Odfjell) agreed to plead guilty and cooperate and was fined $42.5 million.  Its Chairman, Bjorn Sjaastad, was sentenced to four months in prison and fined $250,000.  Odfjell Vice-President Erik Nilsen was sentenced to three months in prison and fined $25,000.  Jo Tankers BV agreed to plead guilty and cooperate and was fined $19.5 million.  Jo Tanker's former Co-Managing Director, Hendrikus Van Westenbrugge, was sentenced to three months in prison and fined $75,000.  Pursuant to the United States Sentencing Guidelines, each of these defendants received a reduced sentence for their cooperation, in part, because each defendant supplied to the Division detailed evidence of the conspiracy during the period March 2002 to November 2002, information which had been withheld from the Division by SNTG.

In addition, Stolt-Nielsen executive Bjorn Jansen, after he was given the opportunity to get a personal attorney, recanted his previous statement to the Division, made in the presence of counsel for SNTG, that SNTG had stopped conspiring in March 2002.  In his later statement, Jansen conceded that, in fact, the conspiracy continued after Stolt-Nielsen's former General Counsel and Senior Vice-President, Paul O'Brien, reported the conspiracy to company management.[8]

On June 24, 2003, Richard B. Wingfield, Executive Vice-President and Managing

---

[8]    O'Brien filed suit in June 2002 against Stolt-Nielsen claiming he was constructively discharged from the company.  In November 2002, O'Brien amended his complaint and specified that his resignation was caused by, among other things, Stolt-Nielsen's failure to terminate its participation in an illegal price-fixing conspiracy when he complained about it to senior Stolt-Nielsen management.

Director, Tanker Trading, for Stolt-Nielsen, a foreign national who was residing in the United States, was criminally charged with conspiring to allocate customers, fix prices, and rig bids for parcel tanker shipping of products to and from the United States and elsewhere.

On February 6 and 18, 2004, Stolt-Nielsen, its parent SNSA, and Richard Wingfield commenced civil actions in the United States District Court for the Eastern District of Pennsylvania to enjoin the Antitrust Division from seeking their indictment. The court placed the actions under seal and consolidated them. On March 2, 2004, the Antitrust Division rescinded SNTG's conditional leniency based on two grounds: (1) that SNTG had falsely represented in the agreement that it had taken prompt and effective action to terminate its anticompetitive activity upon discovering it; and (2) that SNTG had failed to cooperate fully by withholding material evidence regarding the conspiracy.

At a two day hearing on April 13-14, 2004, John Nannes, counsel for SNTG, and James Griffin, then Deputy Assistant Attorney General for Criminal Enforcement for the Antitrust Division whose testimony was authorized pursuant to 28 C.F.R. § 16.21 et seq., testified about the conditional leniency negotiations. Neither side called any additional witnesses, although the Antitrust Division submitted extensive grand jury material to the Court ex parte which detailed the continuation of the conspiracy until November 2002. At the hearing, counsel for SNTG conceded that, despite the obligation to provide complete and truthful cooperation, the company provided the Division with no evidence of its participation in the conspiracy past March 2002.

On January 14, 2005, the district court entered final judgment, enjoining the Antitrust Division from seeking an indictment of Stolt-Nielsen, SNSA, or Richard Wingfield. _Stolt-Nielsen S.A. v. United States_, 352 F. Supp. 2d 553 (E.D. Pa. 2005). The court concluded that,

7

under the terms of the conditional leniency agreement, SNTG was not required to have ceased its illegal activity by March 2002 because the conditional leniency agreement did not specifically mention that date. The court also found that the Division received the benefit of its bargain under the conditional leniency agreement because "SNTG's partners in the conspiracy were prosecuted and convicted, and the conspiracy has been terminated." *Id.* at 562. Under its interpretation of "benefit of the bargain," the court did not reach whether SNTG had disclosed the full scope of the conspiracy or had fulfilled its obligation to provide complete and truthful cooperation as required under the conditional leniency agreement. Nor did the court determine whether SNTG's representation that it took prompt and effective action to end its anticompetitive activity upon discovery was true. In fact, the court found that the date on which SNTG ended its participation in the conspiracy "was never clearly established." *Id.* at 562 n.10. The court simultaneously granted the United States's motion to unseal the action, including the trial transcripts and exhibits.

The United States appealed the district court's ruling, and on March 23, 2006, the Third Circuit Court of Appeals reversed the district court's order enjoining the United States from indicting Stolt-Nielsen, SNSA, or Wingfield. *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006). The court of appeals applied the well established rule that a federal court cannot enjoin the initiation of a federal criminal prosecution. While noting that exceptions to this rule have been made, such as in cases involving the exercise of First Amendment rights, the court did not believe that a potential defendant's attempt to enforce a cooperation or immunity agreement pre-indictment warranted an exception to the general rule. Thus, noting an injunction against indictment would be an extraordinary remedy raising separation-of-powers issues, the court

8

concluded that the district court "lacked authority" to enjoin the United States from indicting Stolt and Wingfield. *Id*. at 187.   Finally, the court of appeals found that because the district court had no authority to enjoin an indictment in this case, the district court's judgment "lacks preclusive effect." *Id.* at 187 n.7.   Thus, if Stolt-Nielsen, SNSA, or Wingfield are indicted and again argue that the United States violated the SNTG Amnesty Agreement, the court of appeals directed that the district court "must consider the Agreement anew and determine the date on which Stolt-Nielsen[9] discovered its anticompetitive conduct, the Company's and Wingfield's subsequent actions, and whether, in light of those actions, Stolt-Nielsen complied with its obligation under the Agreement to take 'prompt and effective action to terminate its part in the anticompetitive activity being reported upon discovery of the activity.'" *Id.*  Plaintiff has filed a petition for rehearing, which is pending with the court of appeals as of this time.  Defendant denies the remainder of the allegations in ¶¶ 10 - 20.

## II.    Comments About The Antitrust Division's Corporate Leniency Program

21.   Defendant admits that part of the success of its Corporate Leniency Program has been the Division's willingness, through speeches and other guidance, to explain to the antitrust bar how the program works.  These speeches are relied on by the antitrust bar in giving counsel to their corporate clients.  In fact, in its civil suit seeking an injunction against being indicted, Stolt-Nielsen cited many speeches given by the Antitrust Division regarding the amnesty program. According to Stolt-Nielsen and SNSA's civil lawsuit regarding the amnesty revocation, SNTG used speeches by Division officials and other public pronouncements about the leniency program

_____

[9]  The court of appeals defined Stolt-Nielsen as including both Stolt-Nielsen and SNSA. *Id.* at 179.

in deciding whether to seek leniency.  Since 1993, in over 100 leniency cases, the Division had

never revoked a conditional corporate leniency until it revoked SNTG's conditional leniency.

The revocation generated many questions from the antitrust bar as to the Division's future

interpretation and application of the leniency program.  The facts which led to the only

revocation in the history of the Corporate Leniency Program were of very high interest to the

antitrust bar in advising their clients as to whether to seek leniency.  After the district court

opinion was publicly issued in January 2005, and after the hearing record was unsealed and made

public, the Division responded to such inquiries by discussing the revocation of SNTG's amnesty

and answering questions about it in public fora, such as ABA panel discussions.  The Division

believed such comments based on the public record were necessary for the guidance of the

antitrust bar in the continued use of the amnesty program,  its most effective investigative tool.

*See* 28 C.F.R. § 50.2(a)(2) ("[T]here are valid reasons for making available to the public

information about the administration of the law.").  Defendant denies the remaining allegations

in ¶ 21.

22. - 24.  Defendant admits that FBI Agent Sharp spoke to a major worldwide shipping

publication but denies that the quotes attributed to him are accurate.  Defendant denies the

remaining allegations in ¶¶ 22 - 24.

25.  Defendant admits that Deputy Assistant Attorney General Scott D. Hammond spoke

at the venues listed in ¶ 25 a, b, c, d, e and f and, as explained in ¶ 21 of this Answer, discussed

and answered questions about the revocation of SNTG's amnesty to provide guidance to the

antitrust bar regarding the future use and application of the Division's amnesty program.

Defendant denies the remaining allegations in ¶ 25.

26.  As noted above, the Division has responded to questions about SNTG's amnesty revocation to provide guidance to the antitrust bar regarding the future use and application of the Division's amnesty program.  Defendant denies the remaining allegations in ¶ 26.

27. - 30.  Defendant admits that because the Antitrust Division had never revoked a conditional leniency, and because the district court opinion seemed at the time to be contrary to well-established law, members of the antitrust defense bar have written about the opinion.  *See* James Walden,  Kristopher Dawes, *The Curious Case of Stolt-Nielsen S.A. v. United States*, THE ANTITRUST SOURCE (May 2005); Donald Baker, *True Confessions*, LEGAL TIMES (September 26, 2005).  Both Walden and Baker contacted the Division regarding their articles and requested that the Division review the draft articles and alert them to any errors.  The Division reviewed the Walden/Dawes and Baker articles for factual errors and referred the authors to the public record to correct factual errors.  *See* Exhibit 2 (January 25, 2005 e-mail from Scott Hammond to James Walden: "I just sent you a fax with transcripts and exhibits from the public record . . . .").  The Defendant admits citing the Walden article in a footnote in its Third Circuit brief in reference to a statement that the revocation of SNTG's conditional amnesty was the only time the Division had revoked a grant of conditional amnesty.  The Division also sent a Fed. R. App. P. 28(j) letter to the Third Circuit, advising it of Baker's then recently published article.  Defendant denies that it was in any way a co-author of the articles.  Defendant denies the remaining allegations in ¶¶ 27 - 30.

31.     Defendant admits that Stolt-Nielsen submitted a series of FOIA requests to the Antitrust Division.  Defendant denies the remaining allegations in ¶ 31.

### III.    The FOIA Requests

32.    Admit first and last sentence of ¶ 32.  Defendant denies the accuracy of Plaintiff's

Exhibit 5, its summary chart of FOIA requests.

### A.    The First Six FOIA Requests Made By Stolt-Nielsen

33.    Defendant admits the allegations of this paragraph, except that the Sixth FOIA

request was made on September 20, 2005 and the date of the Division's initial document

production in response to this first set of Plaintiff's FOIA requests was September 13, 2005.  On

September 13, the Division produced 280 pages of documents in response to Plaintiff's First

through Fifth FOIA requests.  In addition, on March 28, 2006, the Division produced a

supplemental response of 134 pages for Plaintiff's Second, Third, and Sixth FOIA requests and

noted that a number of documents responsive to Plaintiff's Sixth FOIA request had also been

disclosed in its September 13 production.  *See* Exhibits 3 and 4 (Sept. 13, 2005 and March 28-29,

2006 letters respectively).[10]

### B.    The Six Requests That Are The Subject Of This Lawsuit

**1.    Seventh Request: Antitrust Division Communications With Attorneys David S. Golub, Jonathan M. Levine, James Griffin And Donald I. Baker  (ATFY06-003)**

34.  Admit.

35.  Admit.

36.  Admit first sentence.  Defendant denies the documents were not produced; rather, on

---

[10]    The September 13 letter stated the Division was producing 277 pages, but as noted in
the March 28 letter, the Division actually produced 280 pages on September 13.

April 27, 2006, Defendant responded to Plaintiff's Seventh request (ATFY06-003) by releasing

158 pages of documents.  Portions of certain of these pages were redacted pursuant to the

deliberative process privilege and attorney work-product doctrine incorporated into FOIA

Exemption 5, 5 U.S.C. § 552(b)(5).  Defendant withheld thirty-six documents (151 pages) in

their entirety pursuant to the deliberative process privilege and attorney work-product doctrine of

FOIA Exemption 5, 5 U.S.C. § 552(b)(5); Rule 6(e) of the Federal Rules of Criminal Procedure

and 5 U.S.C. § 552 (b)(3) relating to matters occurring before a federal grand jury; FOIA

Exemption 7A, 5 U.S.C. § 552(b)(7)(A) relating to interference with enforcement proceedings;

Exemption 7C, 5 U.S.C. § 552(b)(7)(C) relating to unwarranted invasions of personal privacy;

and Exemption 7D; 5 U.S.C. § 552(b)(7)(D) relating to the non-disclosure of confidential sources

of information.  *See* Exhibit 5 (April 27, 2006 letter/ATFY06-003).

### 2.     Eighth Request: Any And All Amnesty Agreements (ATFY06-002)

37.  Deny.  Plaintiff's Eighth request sought any and all amnesty agreements entered into

by the Antitrust Division from August 1993 to the present, but on January 10, 2006, Plaintiff

narrowed the scope of this request to the date and language of amnesty agreements the Division

entered into from January 1, 1999 to the present.

38.  Admit.

39.  Admit first sentence.  Defendant denies that documents were not produced; rather, on

April 27, 2006, Defendant responded to Plaintiff's Eighth request (ATFY06-002) by releasing

four amnesty agreements (14 pages) that were entered into evidence at trial, or in the case of the

SNTG Amnesty Agreement, in amnesty litigation, and, accordingly, are public documents.

Defendant withheld approximately 324 pages of documents in their entirety pursuant to Rule 6(e)

of the Federal Rules of Criminal Procedure and 5 U.S.C. § 552(b)(3) relating to matters

occurring before a federal grand jury; FOIA Exemption 7A, 5 U.S.C. § 552(b)(7)(A) relating to

interference with enforcement proceedings; Exemption 7C, 5 U.S.C. § 552(b)(7)(C) relating to

unwarranted invasions of personal privacy; and Exemption 7D, 5 U.S.C. § 552(b)(7)(D) relating

to the non-disclosure of confidential sources.  *See* Exhibit 6 (April 27, 2006 letter/ATFY06-002).

> **3.    Ninth Request: Speeches And Speech-Related Materials By Any Antitrust Division Official (ATFY06-019)**

40.  Admit.

41.  Admit.

42.   Admit first sentence.  Defendant denies that documents were not produced; rather,

on April 27, 2006, Defendant responded to Plaintiff's Ninth request (ATFY06-019) by releasing

nine pages of documents.  Certain portions of these pages were redacted pursuant to FOIA

Exemption 7A, 5 U.S.C. § 552(b)(7)(A) relating to interference with enforcement proceedings

and pursuant to the attorney work-product doctrine and the deliberative process privilege of

FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  Defendant withheld twenty-one documents (33 pages)

14

in their entirety pursuant to the attorney work-product doctrine and the deliberative process

privilege portions of FOIA Exemption 5, 5 U.S.C. § 552(b)(5), and FOIA Exemption 7A, 5

U.S.C. § 552(b)(7)(A) relating to interference with enforcement proceedings.  *See* Exhibit 7

(April 27, 2006 letter/ATFY06-019).

        **4.**       **Tenth Request:  Antitrust Division Communications With The International Competition Network (ATFY06-026)**

43.  Admit.

44.  Admit.

45.  Admit first sentence.  Defendant denies that documents were not produced; rather, on

April 27, 2006, Defendant responded to Plaintiff's Tenth request (ATFY06-026) by releasing

fourteen pages of documents.  Certain portions of these pages were redacted pursuant to FOIA

Exemptions 6 and 7C, 5 U.S.C. §§ 552(b)(6) and (b)(7)(C) relating to unwarranted invasions of

personal privacy, and pursuant to the attorney work-product doctrine and the deliberative process

privilege prongs of FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  Defendant withheld sixty-eight

documents (154 pages) in their entirety pursuant to the deliberative process privilege and attorney

work-product doctrine prongs of FOIA Exemption 5, 5 U.S.C. § 552(b)(5); FOIA Exemption 7A,

5 U.S.C. § 552(b)(7)(A) relating to interference with enforcement proceedings; FOIA Exemption

7C, 5 U.S.C. § 552(b)(7)(C) relating to unwarranted invasions of personal privacy; FOIA

Exemption 7D, 5 U.S.C. § 552(b)(7)(D) relating to the identities of confidential sources of

information; and Federal Rule of Criminal Procedure 6(e) and 5 U.S.C. § 552(b)(3) relating to

matters occurring before a federal grand jury.  *See* Exhibit 8 (April 27, 2006 letter/ATFY06-026).

      5.      **Eleventh Request:  Speeches And Speech-Related Materials By Any Antitrust Division Official (ATFY06-038)**

46.  Admit.

47.  Admit.

48.  Admit first sentence.  Defendant denies that documents were not produced; rather, on

April 27, 2006, Defendant responded to Plaintiff's Eleventh request (ATFY06-038) by releasing

two documents (20 pages).  *See* Exhibit 9 (April 27, 2006 letter/ATFY06-038).

      6.      **Twelfth Request:  Antitrust Division Communications With Law Firms St. Martin & Williams And Kasowitz, Benson, Torres & Friedman LLP  (ATFY06-040)**

49.  Admit.

50.  Admit.

51.  Admit first sentence.  Defendant denies that documents were not produced; rather,

on April 27, 2006, Defendant responded to Plaintiff's Twelfth request (ATFY06-040) by

releasing forty-six pages of documents.  Certain portions of these pages were redacted pursuant

to FOIA Exemption 7A, 5 U.S.C. § 552(b)(7)(A) relating to interference with enforcement

proceedings, and FOIA Exemption 7C, 5 U.S.C. § 552(b)(7)(C) relating to unwarranted

invasions of personal privacy.  Defendant withheld thirty-seven documents (526 pages) in their

entirety pursuant to the deliberative process privilege and attorney work-product doctrine prongs

of FOIA Exemption 5, 5 U.S.C. § 552(b)(5); Exemption 7A, 5 U.S.C. § 552(b)(7)(A) relating to

interference with enforcement proceedings; FOIA Exemption 7C, 5 U.S.C. § 552(b)(7)(C)

relating to unwarranted invasions of personal privacy; FOIA Exemption 7D, 5 U.S.C.

§ 552(b)(7)(D) relating to the identities of confidential sources of information; FOIA Exemption

3, 5 U.S.C. § 552(b)(3), and Federal Rules of Criminal Procedure 6(e) relating to matters

occurring before a federal grand jury. *See* Exhibit 10 (April 27, 2006 letter/ATFY06-040).

## IV.    The Need For Judicial Review At This Time

52.    As noted in paragraphs 33-51 above, the Defendant has produced 261 pages of

documents in response to the Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth FOIA

Requests and 414 pages of documents in response to Plaintiff's first six FOIA requests.

Defendant denies the remaining allegations in ¶ 52.

53.    As discussed above, in ¶¶ 21, 25, and 26 of this Answer, after the District Court

opinion was publicly issued in January 2005, and after the hearing record was unsealed and made

public, the Division responded to inquiries from the defense bar about the future use and

application of the Division's amnesty program by discussing the revocation of SNTG's amnesty

and answering questions about it in public fora. Plaintiff's FOIA requests go far beyond the

Division's speeches regarding the amnesty revocation and seek information to which it is not

legally entitled, including but not limited to non-public amnesty agreements from other grand jury investigations, and private communications with foreign anti-cartel enforcers and confidential sources.  Defendant denies the remaining allegations in ¶ 53.

**COUNT ONE**

**(Failure To Provide Documents Responsive To FOIA Requests)**

54.  Defendant incorporates its responses to ¶¶ 1 through 53 as though fully set forth herein.

55.  Defendant acknowledges the existence of the statute referenced in ¶ 55 but denies the remaining allegations in ¶ 55.

56.  Defendant admits that Stolt-Nielsen made FOIA requests for records but denies the remaining allegations in ¶ 56.

57.  Deny.

**COUNT TWO**

**(Failure To Provide A Vaughn Index)**

58.  Defendant incorporates its responses to ¶¶ 1 through 57 as though fully set forth herein.

59.  Defendant acknowledges the existence of the case law referenced in ¶ 59 but denies that it had an obligation to provide a *Vaughn* index with its FOIA responses.

60.  Defendant admits that it has not provided a *Vaughn* index.  Defendant denies the remaining allegations in ¶ 60.

61.  Deny.

Further answering the complaint, defendant denies every allegation not expressly admitted or qualified.

Dated: May 3, 2006                          Respectfully submitted,


   /s/_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney


   /s/_____
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant United States Attorney


   /s/_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 307-2332