UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | |
| *Plaintiff,* | |
| v. | Civil Action No. 06cv474 (RJL) |
| United States Department of Justice, | |
| *Defendant.* | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") respectfully moves for partial summary judgment on Count One of its complaint. Specifically, Stolt-Nielsen seeks an order of this Court directing the Antitrust Division of the United States Department of Justice to produce all agency records responsive to five of the six Freedom of Information Act ("FOIA") requests that are the subject of this lawsuit: ATFY06-003 (communications to or from certain private attorneys); ATFY06-002 (amnesty agreements from August 1993 to the present); ATFY06-019 (speeches made by certain Antitrust Division officials); ATFY06-038 (speeches made by certain Antitrust Division officials); and ATFY06-040 (communications to or from certain private attorneys). Stolt-Nielsen is not moving for summary judgment at this time concerning its request designated ATFY06-026 (communications to or from the International Competition Network). Rather, Stolt-Nielsen will assess its position on this issue once the defendant produces its *Vaughn* index (which the defendant it has agreed to do on or before June 9, 2006). The reasons supporting this motion are contained in the attached memorandum of points and authorities.

Pursuant to Local Civil Rule 7(f), Stolt-Nielsen respectfully requests an oral hearing on this motion, at the earliest date that is convenient to the Court.

Dated:  May 12, 2006

Respectfully submitted,

**WHITE & CASE**LLP

By: _____

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar. No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C.  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation Group Ltd.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

*Plaintiff,*

v.

United States Department of Justice,

*Defendant.*

Civil Action No. 06cv474 (RJL)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**WHITE & CASE** LLP

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar. No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation
Group Ltd.*

May 12, 2006

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

I.      The Amnesty Agreement And Stolt-Nielsen's Efforts To Preserve Its Amnesty .............. 2

II.     The Antitrust Division's Communications With The Public ............................................. 4

        A.      Public Remarks About Stolt-Nielsen ...................................................................... 4

        B.      The Division's Communications With Counsel For Private Claimants ................. 5

        C.      Amnesty Agreements ................................................................................................ 6

STANDARD OF REVIEW ............................................................................................. 7

ARGUMENT .................................................................................................................... 8

I.      The Court Should Order The Antitrust Division To Produce All Documents
        Involving Speeches Made By Antitrust Division Officials About Stolt-Nielsen ............... 8

II.     The Court Should Order The Antitrust Division To Produce All Documents
        Involving All Antitrust Division Amnesty Agreements From August 1993 To The
        Present ........................................................................................................................... 11

III.    The Court Should Order The Antitrust Division To Produce All Documents
        Involving Communications With Certain Private Attorneys ........................................... 15

CONCLUSION ............................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*Army Times Publ'g Co. v. Dep't of Air Force,*
    998 F.2d 1067 (D.D.C. 1993) ................................................................................. 10

*CEI Washington Bureau Inc. v. United States,*
    404 F. Supp. 2d 172 (D.D.C. 2005) ............................................................ 8, 10, 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................... 7

*Chilivis v. S.E.C.,*
    673 F.2d 1205 (11th Cir. 1982) ......................................................................... 9

*Covington & Burling v. Food & Nutrition Serv. of the U.S. Dep't of Agriculture,*
    744 F. Supp. 314 (D.D.C. 1990) ........................................................................ 9

*Hornbeck Offshore Transp., LLC v. United States Coast Guard,*
    2006 WL 696053 (D.D.C. Mar. 20, 2006) .................................................. 8, 14

*Mapother v. Department of Justice,*
    3 F.3d 1533 (D.C. Cir. 1993) ...................................................................... 10, 13

*Mead Data Ctr., Inc. v. U.S. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ......................................................................... 9

*Mokhiber v. United States Department of Treasury,*
    335 F. Supp. 2d 65 (D.D.C. 2004) ................................................................ 9, 10

*Rockwell Inter. Corp v. United States Dep't of Justice,*
    235 F.3d 598 (D.C. Cir. 2001) ......................................................................... 9

*Stolt-Nielsen S.A. v. United States,*
    352 F. Supp. 2d 553 (E.D.Pa. 2005) .................................................................. 3

*Stolt-Nielsen S.A. v. United States,*
    442 F.3d 177 (3d Cir. 2006) ........................................................................... 2, 3

*United States v. Metropolitan St. Louis Sewer Dist.,*
    952 F.2d 1040 (8th Cir. 1992) ......................................................................... 9

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press,*
    489 U.S. 749 (1989) ......................................................................................... 16

STATUTES

5 U.S.C. § 552 .................................................................................................*passim*

OTHER

28 C.F.R. § 50.2 (2004) ....................................................................................... 1

Fed. R. of Civ. P. 56(c) ....................................................................................... 7

Fed. R. of Crim. P. 6(e) ............................................................................ 12, 13, 16

## INTRODUCTION

For the past three years, Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen") and the Antitrust Division of the United States Department of Justice ("Antitrust Division") have had a dispute concerning promises made by the Antitrust Division in its 2003 Amnesty Agreement with Stolt-Nielsen. Stolt-Nielsen responded to this dispute by first approaching the Antitrust Division to resolve the matter amicably and, when that failed, sought judicial intervention in federal district court. The Antitrust Division responded to this dispute by engaging in an unprecedented and improper public relations campaign against Stolt-Nielsen. Many of the Antitrust Division's public statements directly contravene 28 C.F.R. § 50.2, which bars most public statements about ongoing cases. And all of the Antitrust Division's public statements about Stolt-Nielsen are subject to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, such that they must be disclosed to Stolt-Nielsen immediately.

Stolt-Nielsen commenced this FOIA action to obtain access to the Antitrust Division's publicity campaign against it. Stolt-Nielsen's position is simple: if the Antitrust Division has communicated with the public about Stolt-Nielsen (or, alternatively, about an amnesty-related issue that bears upon Stolt-Nielsen's own amnesty), then Stolt-Nielsen is entitled to that communication. In our system, the federal government has an obligation to operate openly, especially with respect to its public speechmaking. This obligation applies with greater force when the government promotes an Amnesty Program designed to entice firms to self-report illegal conduct to the government and whose operation is touted as "transparent."

## STATEMENT OF FACTS

**I.    The Amnesty Agreement And Stolt-Nielsen's Efforts To Preserve Its Amnesty**

Induced by the Antitrust Division's speeches promising amnesty to companies that voluntarily report illegal conduct, Stolt-Nielsen approached the Antitrust Division in late 2002.

On January 15, 2003, the Antitrust Division entered into a written amnesty agreement ("Amnesty Agreement") with Stolt-Nielsen. This agreement was based on the model amnesty agreement disseminated publicly by the Antitrust Division. In the Amnesty Agreement, the Division promised "not to bring any criminal prosecution" against Stolt-Nielsen (or that company's directors, officers, and employees) in exchange for information provided by Stolt-Nielsen concerning possible collusive activity in the parcel tanker industry violative of the Sherman Act. Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Dispute ("SF") ¶ 5.

Stolt-Nielsen adhered to its part of the bargain by reporting to the Antitrust Division evidence of a hard-core, criminal antitrust conspiracy in the parcel tanker industry. "Using the information provided by Stolt-Nielsen and its executives (including Wingfield), the Government secured guilty pleas from Stolt-Nielsen's co-conspirators, resulting in prison sentences for individual executives at those companies and fines totaling $62 million." *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177, 180 (3d Cir. 2006).

On April 8, 2003, in contravention of its obligations under the Amnesty Agreement, the Antitrust Division abruptly "suspended" Stolt-Nielsen's cooperation requirements. SF ¶ 6. A few months later, on June 24, 2003, Richard B. Wingfield, a Stolt-Nielsen executive, was criminally charged with violations of the Sherman Act. SF ¶ 7. This action was also in contravention of the Antitrust Division's promise in the Amnesty Agreement not to prosecute Stolt-Nielsen's directors, officers, and employees.

On February 6, 2004, Stolt-Nielsen and Stolt-Nielsen S.A. commenced a civil action in the United States District Court for the Eastern District of Pennsylvania to enforce their rights under the Amnesty Agreement. SF ¶ 8. On March 2, 2004, the Antitrust Division formally removed Stolt-Nielsen from the agency's corporate leniency program. SF ¶ 9. In April 2004, the district court held a trial on the merits. SF ¶ 10.

On January 14, 2005, the district court entered final judgment in favor of Stolt-Nielsen and permanently enjoined the Antitrust Division from seeking an indictment of either Stolt-Nielsen or Mr. Wingfield. *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D.Pa. 2005). In so doing, the district court concluded that: (a) Stolt-Nielsen did not make any misrepresentation to the Antitrust Division; (b) Stolt-Nielsen fulfilled its promise to deliver evidence of the antitrust conspiracy; and (c) the Antitrust Division received the benefit of its bargain by obtaining successful convictions of the other members of the conspiracy. The Antitrust Division then appealed from the district court's judgment to the United States Court of Appeals for the Third Circuit.

On March 23, 2006, the Third Circuit issued an opinion, reversing the judgment of the district court. *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006). The Third Circuit reversed the district court on the narrow grounds that the district court did not possess the "authority" to enjoin a federal criminal indictment. *Id.* at 187. The Third Circuit did not rule on the merits of the case; rather, that court specifically stated that Stolt-Nielsen was entitled to have this issue heard post-indictment in a pre-trial motion to dismiss. *Id.* at 187 n.7. Stolt-Nielsen has filed a petition for rehearing *en banc*.

**II.    The Antitrust Division's Communications With The Public**

**A.    Public Remarks About Stolt-Nielsen**

Since April 2003, when it first suspended Stolt-Nielsen's cooperation requirement under the Amnesty Agreement, the Antitrust Division has made repeated remarks to the public concerning Stolt-Nielsen, notwithstanding that agency's policy of ***not*** commenting upon ongoing criminal matters.

After the arrest of Richard Wingfield, FBI Special Agent John Sharp was interviewed by the press. SF ¶ 16. The Antitrust Division admits that the interview took place. Answer at p.10. In his interview with Lloyd's List, Special Agent Sharp noted that the Bureau had a "strong case" against Mr. Wingfield and that he expected "several more arrests" in the coming months. SF ¶ 16.

Scott D. Hammond, Deputy Assistant Attorney General for Criminal Enforcement for the Antitrust Division, has also made numerous speeches about Stolt-Nielsen. One such speech was his March 3, 2005 speech at the 19th Annual National Institute on White Collar Crime 2005 in Las Vegas, Nevada, where he stated that "the removal, or the attempt to remove Stolt from the Corporate Leniency Program" was the number one "blockbuster development" in recent months. SF ¶ 19. In this speech, Mr. Hammond also said that, "if you look at the record in this case, you will find that this is a company that deserved to be removed from the Leniency Program" because "[i]t did everything wrong, every step of the way."

In its Answer, the Antitrust Division admits that it utilizes speeches "to explain to the antitrust bar how the program works." Answer at p. 9. In its Answer, the Antitrust Division also admits that, after the Eastern District of Pennsylvania issued its decision in January 2005, it responded to inquiries "by discussing the revocation of SNTG's amnesty and answering questions about it in public fora, such as ABA panel discussions." Answer at p.10. The

Antitrust Division also admits that Mr. Hammond spoke on the occasions identified by Stolt-Nielsen in its Complaint. *Id.*

Through two separate FOIA requests, Stolt-Nielsen has requested Antitrust Division speeches and speech-related material relating to Stolt-Nielsen matters. The Antitrust Division has indicated that it is withholding 187 pages of responsive documents.

**B.     The Division's Communications With Counsel For Private Claimants**

Attorneys employed by the Antitrust Division have had numerous contacts with attorneys representing parties that have sued Stolt-Nielsen.

Numerous communications have occurred between Robert Connolly, Chief of the Philadelphia Field Office of the Antitrust Division, and David Golub, a Connecticut attorney who represents Paul E. O'Brien. Mr. O'Brien is a former General Counsel of Stolt-Nielsen who has sued Stolt-Nielsen in Connecticut state court on a theory of constructive termination. In response to one of Stolt-Nielsen's FOIA requests, the Antitrust Division produced a series of correspondence to and from Mr. Golub (much of which counsel for Stolt-Nielsen already possessed). Statements made by Mr. Golub in open court, however, reveal the existence of additional communications. Specifically, Mr. Golub has stated that Mr. Connolly asked him to defer depositions. *See* SF ¶ 24 ("And he requested that the depositions be deferred for some period of time"). Mr. Golub has also spoken with Mr. Connolly concerning the use of information provided by Stolt-Nielsen to the Antitrust Division. *See* SF ¶ 24 ("I have spoken with the Department of Justice's attorney as to whether there were any representations made with respect to the use and non-use of this information").

Through two separate FOIA requests, Stolt-Nielsen has requested documents that embody communications between the Antitrust Division and several, specifically identified private attorneys, including David Golub and Hector Torres. The Antitrust Division has

indicated that it is withholding almost **700** pages of responsive documents. *See* SF ¶¶ 29 (151 pages withheld concerning Seventh FOIA Request (relating to David Golub, *et al.*)); 44 (526 pages withheld concerning Twelfth FOIA Request (relating to Hector Torres, *et al.*)).

### C.    Amnesty Agreements

Since 1993, the Antitrust Division has operated a Corporate Leniency Program whereby it offers a "complete pass" from criminal prosecution and criminal fines to the first company in an industry that reports conduct to the Division that constitutes a criminal violation of the Sherman Act. SF ¶ 1.

In numerous public speeches, the Antitrust Division has advertised the "transparency" of its amnesty program, both in its elements and as it is applied in operation. *See, e.g.,* Scott D. Hammond, "When Calculating The Costs And Benefits Of Applying For Corporate Amnesty, How Do You Put A Price Tag On An Individual's Freedom?" at 1 (March 8, 2001) ("we made the requirements for entering the program as transparent and attainable as possible"); Gary R. Spratling, "Transparency In Enforcement Maximizes Cooperation From Antitrust Offenders," at 2 (Oct. 15, 1999) ("transparency must include not only explicitly stated standards and policies, but also clear explanations of prosecutorial discretion in applying those standards and policies").

"In August 1993, the Division revised its Corporate Leniency Program to make it easier and *more attractive for companies to come forward* and cooperate with the Division." Scott D. Hammond, "An Update of the Antitrust Division's Criminal Enforcement Program," at 9 (Nov. 16, 2005) (emphasis added). "As a result of these changes, the Leniency Program is the Division's most effective generator of international cartel cases, and it is the Department's most successful leniency program." *Id.* at 9-10. "Since the Division revised its leniency program, cooperation from amnesty applications has resulted in scores of convictions and more than $2 billion in criminal fines." *Id.*

6

In fact, the Antitrust Division advertises the lack of prosecutorial discretion it has retained in order to make its program "transparent." *See* Scott D. Hammond, "Detecting And Deterring Cartel Activity Through An Effective Leniency Program," at 7 (Nov. 21, 2000) ("Our Amnesty Program by its nature is transparent because we have eliminated, to a great extent, the exercise of prosecutorial discretion in its application").

In its Answer, the Antitrust Division states that, "since 1993, ***in over 100 leniency cases***, the Division had never revoked a conditional corporate leniency until it revoked SNTG's conditional leniency." Answer at p. 10 (emphasis added).

Through a FOIA request, Stolt-Nielsen has requested that the Antitrust Division produce all amnesty agreements that agency has entered into between August 1993 and the present. In response, the Antitrust Division produced four amnesty agreements and withheld an unspecified number of other amnesty agreements. However, in light of the fact that the Antitrust Division has acknowledged the existence of "over 100 leniency cases," the agency is withholding in excess of *95* amnesty agreements.

### STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In a FOIA case, it is the government's "burden to establish that any exemption from disclosure applies." *CEI Washington Bureau Inc. v. United States*, 404 F. Supp. 2d 172, 175 (D.D.C. 2005) (citing 5 U.S.C. § 552(a)(4)(B)).

## ARGUMENT

I. **The Court Should Order The Antitrust Division To Produce All Documents Involving Speeches Made By Antitrust Division Officials About Stolt-Nielsen**

In its Ninth FOIA Request (designated as request number ATFY06-019) and its Eleventh FOIA Request (designated as request number ATFY06-038), Stolt-Nielsen requested that the Antitrust Division produce speeches and speech-related material relating to Stolt-Nielsen. The Antitrust Division responded to these requests on April 27, 2006, producing a total of 29 pages.

With respect to the Ninth FOIA Request, the Antitrust Division redacted portions of the documents it produced (asserting that such redactions are warranted based on the attorney work-product doctrine and the deliberative process privilege) and withheld 21 documents in their entirety (asserting that such action is warranted based upon the attorney work-product doctrine, the deliberative process privilege, and the existence of ongoing enforcement proceedings).

Concerning all of these redactions and withheld materials, it is the Antitrust Division's burden to demonstrate that a FOIA exemption applies. *See CEI*, 404 F. Supp. 2d at 175 (the Government has the "burden to establish that any exemption from disclosure applies"). And a FOIA exemption, when applicable, pertains to information, not to documents containing the information. Thus, even if a FOIA exemption permits part of a document to be redacted, the remainder of the document must be produced. *See Hornbeck Offshore Transp., LLC v. United States Coast Guard*, 2006 WL 696053 at *18 (D.D.C. Mar. 20, 2006) ("'The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material'") (quoting *Mead Data Ctr., Inc. v.*

8

*U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). For each document it has withheld in its entirety, the Antitrust Division must now demonstrate that a FOIA exemption allows it to withhold the *entire* document in question.

Information that may be otherwise protected by the attorney work-product doctrine and the deliberative process privilege is subject to waiver by disclosure to third parties. *See Rockwell Inter. Corp v. United States Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001) (material subject to attorney work-product doctrine subject to waiver); *Chilivis v. S.E.C.*, 673 F.2d 1205, 1212 (11th Cir. 1982) (waiver of FOIA exemptions under 5 U.S.C. § 552(b)(5) "can occur when communications are disclosed to private individuals or nonfederal agencies"); *see also United States v. Metropolitan St. Louis Sewer Dist.*, 952 F.2d 1040, 1045 (8th Cir. 1992) ("When documents are voluntarily released to third parties, 'the government's assertion that these communications [are] confidential [is] rendered substantially less credible'") (citation omitted). To the extent that the Antitrust Division has disclosed to third parties information that would otherwise be protected by the attorney work-product doctrine and/or the deliberative process privilege, the doctrine and privilege have been *waived* and such materials must be produced to Stolt-Nielsen.

The deliberative process exemption does not apply to purely factual matters or to factual sections of deliberative memoranda, unless the facts are "inextricably intertwined" with deliberative material. *Covington & Burling v. Food & Nutrition Serv. of the U.S. Dep't of Agriculture*, 744 F. Supp. 314, 319 (D.D.C. 1990); *see also Mokhiber v. United States Department of Treasury*, 335 F. Supp. 2d 65, 70 (D.D.C. 2004) ("Even accepting defendant's assertion that the factual material is a 'relatively small proportion of the deliberative sections of the settlement agreement,' the fact that the amount of factual information is minimal does not

relieve the agency from the obligation to attempt to parse out and disclose purely factual material") (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.D.C. 1993) (emphasis added)). The Antitrust Division "bears the burden of showing that *no such segregable information exists.*" *Mokhiber*, 335 F. Supp. 2d at 70 (emphasis added). Thus, having withheld entire documents based upon the deliberative process privilege, the Antitrust Division must now demonstrate that the factual material contained in such documents cannot be segregated from the deliberative information.

For an agency to withhold documents under FOIA Exemption 7(A), the agency must demonstrate that the documents were compiled for *law enforcement purposes* (not for speechmaking) and that their disclosure "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably anticipated.*" *Mapother v. Department of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis in original). Given that the Ninth FOIA Request pertains to *speeches* and *speech-related material* about Stolt-Nielsen — made in the context of the Antitrust Division's public and "transparent" amnesty program — it is far from clear that the Antitrust Division will be able to justify withholding such material on the basis that their disclosure will somehow interfere with pending enforcement proceedings. Again, Stolt-Nielsen's position in this lawsuit is that material that is shared with other members of the public must, consistent with FOIA, be shared with Stolt-Nielsen as well.

With respect to the Eleventh FOIA Request, the Antitrust Division asserts that it has no additional documents, other than the documents already disclosed to Stolt-Nielsen. Nonetheless, the Antitrust Division must still demonstrate "that it made a good faith effort to conduct the search, using methods that could reasonably be expected to produce the information requested." *CEI*, 404 F. Supp. 2d at 176.

**II.    The Court Should Order The Antitrust Division To Produce All Documents Involving All Antitrust Division Amnesty Agreements From August 1993 To The Present**

The Antitrust Division publishes the text of its model amnesty agreement (SF ¶ 2) and, since 1993, has entered into over 100 of these agreements with amnesty applicants (SF ¶ 3). Disclosure of these amnesty agreements to Stolt-Nielsen is consistent with the "transparency" that the Antitrust Division has consistently advertised as being a hallmark of its Corporate Leniency Program. As explained by Scott Hammond:

> [T]he original version of the U.S. Corporate Leniency Program dates back to 1978. Until the current program was revised in 1993, we received only one leniency application per year, and the original program did not lead to the detection of a single international cartel – not one. We learned some lessons the hard way and revised the program in 1993. We made it *more transparent* and increased the opportunities and raised the incentives for companies to report criminal activity and cooperate with the Division. Since then, there has been a *nearly twenty-fold increase in the application rate, and it has resulted in the cracking of dozens of large international cartels*.

Scott D. Hammond, "Cornerstones Of An Effective Leniency Program," at 3-4 (Nov. 22, 2004) (emphasis added); *see also* Scott D. Hammond, "When Calculating The Costs And Benefits Of Applying For Corporate Amnesty, How Do You Put A Price Tag On An Individual's Freedom?," at 1 (March 8, 2001) ("we made the requirements for entering the program *as transparent and attainable as possible*") (emphasis added); Scott D. Hammond, "Fighting Cartels – Why And How? Lessons Common To Detecting And Deterring Cartel Activity," at 2 (Sept. 12, 2000) ("transparency in enforcement policies . . . [is] at the heart of both our Amnesty Program and our deterrence efforts"); Scott D. Hammond, "Detecting And Deterring Cartel Activity Through An Effective Leniency Program," at 1 (Nov. 21, 2000) ("antitrust authorities must provide transparency, to the greatest extent possible, throughout the anti-cartel enforcement program so that prospective cooperating parties can predict with a high degree of certainty their treatment following cooperation").

11

In its Eighth FOIA Request (designed as request number ATFY06-002), Stolt-Nielsen requested that the Antitrust Division produce any and all amnesty agreements entered into by that agency from August 1993 (the beginning of the Antitrust Division's modern amnesty program) to the present. The Antitrust Division responded to this request on April 27, 2006, producing a total of *four* amnesty agreements.

As an initial matter, the Antitrust Division makes a statement in its April 27, 2006 letter that requires correction. According to the Antitrust Division, during a January 10, 2006 meeting, Stolt-Nielsen "limited the scope of the request to the period January 1, 1999 to the present and to the text and date of each amnesty agreement." The Antitrust Division appears to misapprehend the purpose of that meeting. Stolt-Nielsen never limited its original FOIA request. Stolt-Nielsen merely made an offer on that date as part of a comprehensive *settlement* proposal to end (or at least narrow) this litigation and expedite production. The Antitrust Division never accepted that offer and four additional months have passed. Because the Antitrust Division has not accepted the full terms of that settlement offer, it has expired.

By its April 27, 2006 letter, the Antitrust Division indicates that it is withholding an unspecified number of amnesty agreements pursuant to (1) Rule 6(e) of the Federal Rules of Criminal Procedure and 5 U.S.C. § 552(b)(3); (2) FOIA Exemption 7A (pertaining to interference with ongoing criminal proceedings); (3) FOIA Exemption 7C (pertaining to invasions of personal privacy); and (4) FOIA Exemption 7D (pertaining to non-disclosure of confidential sources). None of these reasons justifies withholding the amnesty agreements in their entirety.

*First*, the Antitrust Division has had a long standing policy of publicizing the *text* of its model amnesty agreements. SF ¶ 2 (citing speeches by former Antitrust Division official Gary

Spratling in 1998 and 1999). The Division does so to entice companies to approach the Antitrust Division and enter the amnesty program.

**Second**, the text of amnesty agreements (especially when subject to appropriate redactions) has not been shown to be "matters occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B).

**Third**, the potential applicability of FOIA Exemptions 7A, 7C, and 7D would only justify redacting **portions** of the agreements. For example, FOIA Exemption 7A allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Setting aside the obvious point that this exemption only applies to enforcement proceedings that are "pending or reasonably anticipated" (*Mapother*, 3 F.3d at 1540), such that this exemption would not apply to the many enforcement proceedings that have been completed since August 1993, this exemption would only permit the Antitrust Division to redact **limited** information from amnesty agreements that involve pending or reasonably anticipated proceedings (such as the name of the amnesty applicant and the industry at issue). The remaining text of the agreement may be freely disclosed to Stolt-Nielsen without any interference in enforcement proceedings.

Similarly, only partial redactions would be warranted with respect to FOIA Exemption 7C. That exemption allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The personal privacy of the amnesty applicant can

be protected by merely redacting the name of applicant from the agreement. No invasion of privacy would occur by disclosing the remaining portions of the agreement to Stolt-Nielsen.

The same principle holds true for FOIA Exemption 7D, which allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (D) could reasonably be expected to disclose the identity of a confidential source . . . ." 5 U.S.C. § 552(b)(7)(D). The name of the amnesty applicant (as well as the industry at issue) can simply be redacted from the agreement.

The importance of redacting only that part of a document that contains exempted material cannot be overemphasized. The statute itself contemplates deleting only those parts of a document that contain protected material. *See* 5 U.S.C. § 552(b)(2) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection"). And the Court has been clear that the "focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Hornbeck Offshore Transp., LLC*, 2006 WL 696053 at *18 (citation and internal quotation marks omitted). Even the Antitrust Division itself seems to recognize that it is its duty to redact only those parts of a document that are exempted — in the documents it has produced to Stolt-Nielsen to date, the Antitrust Division has had no difficulty redacting portions of a document while producing the remaining portion of the document to Stolt-Nielsen. The Antitrust Division simply needs to apply this well-recognized principle to the numerous amnesty agreements it has not yet disclosed. The FOIA exemptions it relies upon can be satisfied by simply redacting the name of

each amnesty applicant and the industry at issue from each amnesty agreement. There is no justification for withholding the remaining portions of the agreements from Stolt-Nielsen.

**III.    The Court Should Order The Antitrust Division To Produce All Documents Involving Communications With Certain Private Attorneys**

In its Seventh FOIA Request (designated as request number ATFY06-003) and its Twelfth FOIA Request (designated as request number ATFY06-040), Stolt-Nielsen requested that the Antitrust Division produce documents that memorialize communications to or from several private attorneys. The Antitrust Division responded to these requests on April 27, 2006, producing a total of 204 pages.

Concerning the Seventh FOIA Request, the Antitrust Division redacted portions of the documents it produced (asserting that such redactions are warranted based on the attorney work-product doctrine and the deliberative process privilege). With respect to the Twelfth FOIA Request, the Antitrust Division also redacted portions of the documents it produced (asserting that such redactions are warranted based on FOIA Exemption 7A (interference with ongoing criminal proceedings) and FOIA Exemption 7C (unwarranted invasion of personal privacy)). Again, it is the Antitrust Division's burden to demonstrate that a FOIA exemption applies with respect to all of these redactions. *CEI*, 404 F. Supp. 2d at 175.

For example, the Twelfth FOIA Request sought communications to or from (1) any attorney with the law firm of St. Martin & Williams; or (2) any attorney with the law firm of Kasowitz, Benson, Torres & Freedman LLP. One of the documents produced in response to this request was an e-mail from Robert Connolly (Chief of the Philadelphia Field Office of the Antitrust Division) to a person whose name has been redacted pursuant to FOIA Exemptions 7A and 7C. Lau Decl. ¶ 51. No other information from the e-mail was redacted. It is not plausible that the recipient of this e-mail (presumably an attorney with one of the two law firms that were

15

the subject of this FOIA request) has an expectation of privacy concerning the e-mail. Indeed, the Antitrust Division has had no difficulty disclosing the names of recipients of other governmental e-mails it disclosed to Stolt-Nielsen. It is also inconceivable that the Antitrust Division would somehow utilize private attorneys as part of its own enforcement proceeding (particularly attorneys representing clients who are pressing private claims against Stolt-Nielsen in civil litigation).

In total, the Antitrust Division has withheld almost *700* pages of responsive documents relating to communications with private claimants' counsel (151 pages pertaining to David Golub, *et al.* and 526 pages pertaining to Hector Torres, *et al.*). The Antitrust Division asserts that it properly withheld such documents pursuant to (1) Rule 6(e) of the Federal Rules of Criminal Procedure and 5 U.S.C. § 552(b)(3); (2) FOIA Exemption 7A (pertaining to interference with ongoing criminal proceedings); (3) FOIA Exemption 7C (pertaining to invasions of personal privacy); and (4) FOIA Exemption 7D (pertaining to non-disclosure of confidential sources). Again, the burden is on the Antitrust Division to demonstrate that its communications with private attorneys constitutes "a matter occurring before the grand jury" (Fed. R. Crim. P. 6(e)(2)(B)), will "interfere with enforcement proceedings" (FOIA Exemption 7A), constitutes "an unwarranted invasion of personal privacy" (FOIA Exemption 7C), or "could reasonably be expected to disclose the identity of a confidential source" (FOIA Exemption 7D).

Government operates best in the sunshine, a policy preference embodied in the Freedom of Information Act. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 774 (1989) ("the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny . . .") (emphasis in original). Those policies are even stronger where the government itself makes representations to the public in order to

advertise a program encouraging voluntary approaches to prosecutors. Having made public pronouncements, the government is obliged to disclose those pronouncements to Stolt-Nielsen.

## CONCLUSION

For these reasons, the Court should grant Stolt-Nielsen's motion for partial summary judgment and order the Antitrust Division to produce all agency records responsive to the following FOIA requests that are the subject of this lawsuit: ATFY06-003 (communications to or from certain private attorneys); ATFY06-002 (amnesty agreements from August 1993 to the present); ATFY06-019 (speeches made by certain Antitrust Division officials); ATFY06-038 (speeches made by certain Antitrust Division officials); and ATFY06-040 (communications to or from certain private attorneys).


Dated: May 12, 2006                         Respectfully submitted,


                                            WHITE & CASE LLP

                                            By: _____
                                            J. Mark Gidley (D.C. Bar No. 417280)
                                            Christopher M. Curran (D.C. Bar. No. 408561)
                                            Lucius B. Lau (D.C. Bar. No. 446088)
                                            701 Thirteenth St., N.W.
                                            Washington, D.C. 20005
                                            tel.: (202) 626-3600
                                            fax: (202) 639-9355

                                            *Counsel to Stolt-Nielsen Transportation
                                            Group Ltd.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

*Plaintiff,*

v.

United States Department of Justice,

*Defendant.*

Civil Action No. 06cv474 (RJL)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Civil Rule 56.1, plaintiff, Stolt-Nielsen Transportation Group Ltd., respectfully submits this statement of material facts as to which there is no genuine dispute.

1.    Since 1993, the Antitrust Division of the United States Department of Justice ("Antitrust Division") has had a Corporate Leniency Program whereby it offers a "complete pass" from criminal prosecution and criminal fines to the first company in an industry that reports conduct to the Division that constitutes a criminal violation of the Sherman Act. Declaration of Lucius B. Lau, dated May 12, 2006 ("Lau Decl.") at ¶¶ 2 (Corporate Leniency Policy), 7 (Hammond Nov. 21, 2000 speech at 2 n.1) ("Under the U.S. program, corporate amnesty and corporate leniency are used interchangeably to mean a ***complete pass*** from criminal prosecution and zero dollars in fines for the anticompetitive conduct") (emphasis added).

2.    The Antitrust Division has published its model amnesty agreement, which it uses in granting amnesty to corporations pursuant to the Corporate Leniency Policy. Lau Decl. at ¶¶ 8 (Spratling 1999 speech), 50 (Spratling 1998 speech).

3.      Since revising its leniency policy in 1993, the Antitrust Division has granted corporate leniency in over 100 cases.  Answer at p.10; Lau Decl. at ¶ 21 (Antitrust Division Reply Brief filed in *Stolt-Nielsen S.A. v. United States*, No. 05-1480 (3d Cir.) at p. 16).

4.      In the past, the Antitrust Division has modified its model leniency letter based upon the specific facts and issues present concerning an amnesty applicant.  Lau Decl. at ¶ 49 (Christie's amnesty agreement, dated January 2000).

5.      On January 15, 2003, the Antitrust Division signed an amnesty agreement with Stolt-Nielsen ("Amnesty Agreement").  Lau Decl. at ¶ 11.

6.      On April 8, 2003, the Antitrust Division "suspended" Stolt-Nielsen's cooperation requirements.  Lau Decl. at ¶ 12.

7.      On June 24, 2003, Richard B. Wingfield, a Stolt-Nielsen executive, was criminally charged with violations of the Sherman Act.  Answer at pp. 6-7.

8.      On February 6, 2004, Stolt-Nielsen and Stolt-Nielsen S.A. commenced a civil action in the United States District Court for the Eastern District of Pennsylvania to enforce their rights under the Amnesty Agreement.  Lau Decl. at ¶ 13 (E.D.Pa. Complaint).  The district court immediately granted Stolt-Nielsen's request to keep the entire action under seal.  Lau Decl. at ¶ 14 (E.D.Pa. Order of February 13, 2004).

9.      On March 2, 2004, the Antitrust Division formally removed Stolt-Nielsen from the agency's corporate leniency program.  Lau Decl. at ¶ 15 (Antitrust Division letter of March 2, 2004).

10.     In April 2004, the district court held a trial on the merits.  Lau Decl. at ¶ 16 (trial transcripts).

11.     On May 15, 2004, the Antitrust Division moved the district court to unseal the action, including the trial transcript and exhibits. Lau Decl. at ¶ 17 (Antitrust Division motion to unseal).

12.     On January 14, 2005, the district court entered final judgment in favor of Stolt-Nielsen and permanently enjoined the Antitrust Division from seeking an indictment of either Stolt-Nielsen or Wingfield. *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D.Pa. 2005). Lau Decl. ¶ 18.

13.     Simultaneously, the district court also unsealed the trial testimony and exhibits. Lau Decl. at ¶ 19 (E.D.Pa. court order entered January 14, 2005).

14.     On March 23, 2006, the Third Circuit issued an opinion, reversing the judgment of the district court. *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006). Lau Decl. at ¶ 23.

## I.    The Antitrust Division's Public Statements Concerning Stolt-Nielsen

15.     Since April 2003, when it first suspended Stolt-Nielsen's cooperation requirement under the Amnesty Agreement, the Antitrust Division has made repeated remarks to the public concerning Stolt-Nielsen, notwithstanding that agency's policy of not commenting upon ongoing criminal matters, as detailed below.

### A.    An FBI Agent Speaks To The Press About Stolt-Nielsen

16.     After charges were brought against Stolt-Nielsen's employee, Mr. Wingfield, an FBI agent assisting the Division in the parcel tanker investigation spoke to a major worldwide shipping publication, Lloyd's List.  Specifically, FBI Special Agent John Sharp was quoted by that publication as saying that the Bureau had a "strong case" against the accused and that he expects "several more arrests" in the coming months. Lau Decl. at ¶ 24.

17.    The *Lloyd's List* article continued: "Special agent John Sharp from the FBI's Philadelphia field office told Lloyd's List: 'No matter what happens with the case, [the arrest] will remain on Mr. Wingfield's record.'"  Lau Decl. at ¶ 24.

18.    The *Lloyd's List* article attributed to the FBI agent additional statements about other Stolt-Nielsen executives:  "Mr. Sharp said the FBI had documents to prove that Stolt-Nielsen executives hatched a price-fixing conspiracy.  The existence of these documents and the executives' inability to contest their existence was itself tantamount to an admission of culpability, Mr. Sharp said."  Lau Decl. at ¶ 24.  The article goes on to quote the FBI agent that "he was not at liberty to divulge names of people other than Mr. Wingfield who would be arrested, but added: 'I know who they are.'"  Lau Decl. at ¶ 24.

**B.    Public Speeches By Antitrust Division Officials Concerning Stolt-Nielsen**

19.    The Antitrust Division has subsequently engaged in a public speaking campaign targeting Stolt-Nielsen.  Specifically, the Antitrust Division's Deputy Assistant Attorney General for Criminal Enforcement has spoken about Stolt-Nielsen at a number of public venues within the United States and abroad.  Among those speeches are:

    a.    "Recent Developments In Antitrust Law," 19th Annual National Institute On White Collar Crime 2005, Las Vegas, Nevada, March 3, 2005. Answer ¶ 25.  During this speech, the Deputy Assistant Attorney General stated that "the removal or the attempt to remove Stolt from the corporate leniency" was the number one "blockbuster development" in criminal antitrust enforcement in recent months. Lau Decl at ¶ 9 (transcript p. 11). He also stated, "I submit to you that if you look at the record in this case, you will find that this is a company that deserved to be removed from the Leniency Program." Lau Decl. at ¶ 9 (transcript pp. 14-15).  Finally, he

stated in his speech that Stolt-Nielsen was "a company that did everything wrong from the beginning." Lau Decl. at ¶ 9 (transcript p. 23).

b.   Spring 2005 American Bar Association Antitrust Section Meeting, Washington, D.C., March 30, 2005. Answer ¶ 25.

c.   Langdon Hall 2005 Competition Law Invitational Forum in Canada, May 6, 2005. Answer ¶ 25.

d.   Executive Committee meeting, New York State Bar Association Antitrust Law Section, New York City, September 14, 2005. Answer ¶ 25.

e.   American Bar Association's International Law Section Meeting in Brussels, October 26, 2005. Answer ¶ 25.

f.   National Press Club, Washington, D.C., November 16, 2005. Answer ¶ 25.

**C.   Articles About Stolt-Nielsen Reviewed By Antitrust Division Officials**

20.   The Antitrust Division has on two occasions assisted private authors with writing articles critical of Stolt-Nielsen and the district court's decision. Answer at p. 11.

21.   The first article, Jim Walden, Kristopher Dawes, *The Curious Case of Stolt-Nielsen S.A. v. United States*, The Antitrust Source (March 2005) (Lau Decl. at ¶ 25), benefited from direct assistance by the Deputy Assistant Attorney General. Lau Decl. at ¶ 26 (e-mail from Jim Walden to Scott Hammond, dated January 25, 2005: "Thanks for all the helpful information, which was great. We will cite a bunch of it in the article").

22.   The second article, Donald L. Baker, *True Confessions*, Legal Times (September 26, 2005) (Lau Decl. at ¶ 27), also benefited from assistance from the Antitrust Division. The Antitrust Division reviewed a draft of Mr. Baker's article and provided Mr. Baker with its comments. Answer at p. 11.

23.    The Antitrust Division presented both the Walden and Baker articles to the United

States Court of Appeals for the Third Circuit as authority, without disclosing the fact that it had

reviewed and commented upon drafts of the articles.  Lau Decl. at ¶¶ 20 (Antitrust Division brief

to the Third Circuit), 22 (Antitrust Division Rule 28(j) letter to the Third Circuit); Answer at p.

11.

### D.    Communications With Attorneys

24.    Numerous communications have occurred between Robert Connolly, Chief of

the Philadelphia Field Office of the Antitrust Division, and David Golub, a Connecticut attorney

who represents Paul E. O'Brien.  Mr. O'Brien is a former General Counsel of Stolt-Nielsen who

has sued Stolt-Nielsen in Connecticut state court on a theory of constructive termination.  In

response to one of Stolt-Nielsen's FOIA requests, the Antitrust Division produced a series of

correspondence to and from Mr. Golub.  Statements made by Mr. Golub in open court, however,

reveal the existence of additional communications.  Specifically, Mr. Golub has stated that Mr.

Connolly asked him to defer depositions.  *See* Lau Decl. at ¶ 47 (*O'Brien v. Stolt-Nielsen*,

hearing transcript of March 29, 2004, at 28: "And he requested that the depositions be deferred

for some period of time").  Mr. Golub has also spoken with Mr. Connolly concerning the use of

information provided by Stolt-Nielsen to the Antitrust Division.  *See* Lau Decl. at ¶ 48 (*O'Brien*

*v. Stolt-Nielsen*, hearing transcript of July 27, 2004, at 61: "I have spoken with the Department

of Justice's attorney as to whether there were any representations made with respect to the use

and non-use of this information").

## II.    The FOIA Requests

25.    From June 2, 2005 to January 26, 2006, Stolt-Nielsen filed twelve separate FOIA

requests with the Antitrust Division.  Lau Decl. at ¶ 28 (summary chart).  The latter six requests

form the basis of this action.

**A.    The First FOIA Requests Made By Stolt-Nielsen**

26.    Stolt-Nielsen made its First, Second, Third, Fourth, Fifth, and Sixth FOIA requests from June 2, 2005 through September 30, 2005. Lau Decl. at ¶ 28 (summary chart). On November 15, 2005, Stolt-Nielsen commenced a civil action in this Court with respect to these six FOIA requests. *Stolt-Nielsen v. United States*, 05-cv-02217-RJL (D.D.C.).

**B.    The Six FOIA Requests That Are The Subject Of This Lawsuit**

**1.    Seventh Request:  Antitrust Division Communications With Certain Private Attorneys And Correspondents Regarding The Parcel Tanker Investigation**

27.    Stolt-Nielsen made its seventh request on October 14, 2005, requesting any and all documents that reflect, memorialize, embody or contain communications regarding the investigation into the parcel tanker investigation, to or from (1) David S. Golub; (2) Jonathan M. Levine; (3) James M. Griffin, the former Deputy Assistant Attorney General, following his departure from the Antitrust Division in December 2004; and (4) Donald I. Baker, the author of a September 26, 2005 article in the *Legal Times* entitled *True Confessions* ("Seventh FOIA Request"). Lau Decl. at ¶ 29.

28.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-003 to this request. Lau Decl. at ¶ 30.

29.    On April 27, 2006, the Antitrust Division wrote another letter to Stolt-Nielsen. Accompanying this letter were 158 pages of documents responsive to the Seventh Request, portions of which were redacted as purportedly covered by a FOIA exemption. Lau Decl. at ¶ 31. The Antitrust Division explained that it was withholding 36 documents (totaling 151 pages) in their entirety, again purportedly covered by a FOIA exemption. Lau Decl. at ¶ 31.

    **2.**    **Eighth Request: All Amnesty Agreements Entered Into By The Antitrust Division From August 1993 To The Present**

30.    Stolt-Nielsen made its eighth request on October 14, 2005, requesting any and all amnesty agreements entered into by the Antitrust Division from August 1993 to the present ("Eighth FOIA Request"). Lau Decl. at ¶ 32.

31.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-002 to this request. Lau Decl. at ¶ 33.

32.    On April 27, 2006, the Antitrust Division wrote another letter to Stolt-Nielsen. Accompanying this letter were four documents (totaling 14 pages) responsive to the Eighth Request. Lau Decl. at ¶ 34. The Antitrust Division explained that it was withholding an unspecified number of other documents in their entirety, purportedly covered by FOIA exemptions. Lau Decl. at ¶ 34.

    **3.**    **Ninth Request: Speeches By Antitrust Division Officials Concerning Stolt-Nielsen**

33.    Stolt-Nielsen made its ninth request on November 9, 2005, requesting (1) any speeches and speech-related materials concerning Stolt-Nielsen given by Mr. Hammond from June 2, 2005 (the date of Stolt-Nielsen's prior FOIA request) to the present, including but not limited to the speeches given by Mr. Hammond (a) in New York City on September 14, 2005, and (b) in Brussels, Belgium on October 26, 2005; and (2) any public speeches and speech-related materials concerning Stolt-Nielsen given by any other Antitrust Division official concerning Stolt-Nielsen, including but not limited to Lisa Phelan (currently Chief, National Criminal Enforcement Section), from March 1, 2004 to the present ("Ninth FOIA Request"). Lau Decl. at ¶ 35.

34.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-019 to this request. Lau Decl. at ¶ 36.

35.    On April 27, 2006, the Antitrust Division wrote another letter to Stolt-Nielsen. Accompanying this letter were 9 pages of documents responsive to the Ninth Request, portions of which were redacted as purportedly covered by FOIA exemptions. Lau Decl. at ¶ 37. The Antitrust Division explained that it was withholding 21 documents (totaling 33 pages) in their entirety, again purportedly covered by FOIA exemptions. Lau Decl. at ¶ 37.

### 4.    Tenth Request:   Communications Between The Antitrust Division And The International Competition Network About Stolt-Nielsen

36.    Stolt-Nielsen made its tenth request on December 7, 2005, requesting any and all materials relating to communications, presentations or speeches by any Antitrust Division official that discuss in any way Stolt-Nielsen, Stolt-Nielsen's status in the Division's amnesty program, the circumstances and rationale for the Division's attempted withdrawal of amnesty from Stolt-Nielsen, and/or the Antitrust Division's litigation with Stolt-Nielsen over Stolt-Nielsen's amnesty status in the Eastern District of Pennsylvania and the appeal to the United States Court of Appeals for the Third Circuit and/or the investigation into Stolt-Nielsen, by officials of the Antitrust Division to the participants in the International Competition Network ("Tenth FOIA Request"). Lau Decl. at ¶ 38.

37.    Stolt-Nielsen received a letter from the Antitrust Division, dated December 16, 2005, which assigned control number ATFY06-026 to this request. Lau Decl. at ¶ 39.

38.    On April 27, 2006, the Antitrust Division wrote another letter to Stolt-Nielsen. Accompanying this letter were 14 pages of documents responsive to the Seventh Request, portions of which were redacted as purportedly covered by FOIA exemptions. Lau Decl. at ¶ 40. The Antitrust Division explained that it was withholding 68 documents (totaling 154 pages) in their entirety, again purportedly covered by FOIA exemptions. Lau Decl. at ¶ 40.

5.    **Eleventh Request: Speeches By Antitrust Division Officials Concerning Stolt-Nielsen**

39.    Stolt-Nielsen made its eleventh request on January 24, 2006, requesting (1) any speeches and speech-related materials concerning Stolt-Nielsen given by Mr. Hammond from November 9, 2005 (the date of Stolt-Nielsen's most-recent FOIA request on this issue) to the present, including but not limited to the speeches given by Mr. Hammond at the National Press Club in Washington, D.C. on November 16, 2005; and (2) any public speeches and speech-related materials concerning Stolt-Nielsen given by any other Antitrust Division official concerning Stolt-Nielsen, including but not limited to Lisa Phelan (currently Chief, National Crime Enforcement Division), from March 1, 2004 to the present ("Eleventh FOIA Request"). Lau Decl. at ¶ 41.

40.    Stolt-Nielsen received a letter from the Antitrust Division, dated February 2, 2006, which assigned control number ATFY06-038 to this request. Lau Decl. at ¶ 42.

41.    On April 27, 2006, the Antitrust Division wrote another letter to Stolt-Nielsen. Accompanying this letter were 2 documents (totaling 20 pages) responsive to the Seventh Request. Lau Decl. at ¶ 43. The Antitrust Division explained that it was unable to locate any additional documents responsive to this request. Lau Decl. at ¶ 43.

6.    **Twelfth Request: Communications Between The Antitrust Division And Attorneys With (1) St. Martin & Williams; And (2) Kasowitz, Benson, Torres & Friedman LLP**

42.    Stolt-Nielsen made its twelfth request on January 26, 2006, requesting any and all documents that reflect, memorialize, embody or contain communications regarding the investigation into the parcel tanker investigation, to or from (1) any attorney with St. Martin & Williams, including but not limited to Conrad S.P. "Duke" Williams III; and (2) any attorney

with Kasowitz, Benson, Torres & Friedman LLP, including but not limited to Hector Torres, Harold G. Levinson, or Gary W. Dunn ("Twelfth FOIA Request").    Lau Decl. at ¶ 44.

43.    Stolt-Nielsen received a letter from the Antitrust Division, dated February 2, 2006, which assigned control number ATFY06-040 to this request. Lau Decl. at ¶ 45.

44.    On April 27, 2006, the Antitrust Division wrote another letter to Stolt-Nielsen. Accompanying this letter were 46 pages of documents responsive to the Seventh Request, portions of which were redacted as purportedly covered by FOIA exemptions. Lau Decl. at ¶ 46. The Antitrust Division explained that it was withholding 37 documents (totaling 526 pages) in their entirety, again purportedly covered by FOIA exemptions. Lau Decl. at ¶ 46.

Dated:  May 12, 2006                      Respectfully submitted,

                              WHITE & CASE LLP

                              By: _____
                                  J. Mark Gidley (D.C. Bar No. 417280)
                                  Christopher M. Curran (D.C. Bar. No. 408561)
                                  Lucius B. Lau (D.C. Bar No. 446088)
                                  701 Thirteenth St., N.W.
                                  Washington, D.C. 20005
                                  tel.: (202) 626-3600
                                  fax: (202) 639-9355

                                  *Counsel to Stolt-Nielsen Transportation
                                  Group Ltd.*