# Exhibit 47

```
CV 02-0190051S        )   SUPERIOR COURT

O'BRIEN, PAUL         )   STAMFORD/NORWALK J.D.

VS.                   )   AT STAMFORD

STOLT-NEILSON et al   )   JULY 27, 2004


              B E F O R E
     THE HONORABLE TAGGART D. ADAMS, JUDGE


A P P E A R A N C E S

DAVID GOLUB, ESQ.
     Attorney for the Plaintiff

JONATHAN WEIR, ESQ.
PETER CARNEY, ESQ.
CHRISTOPHER CURRAN, ESQ.
JONATHAN SACK, ESQ.
MARK J. GIDLEY, ESQ.
     Attorneys for the Defendants




                              VANESSA FJELLDAL
                              COURT MONITOR
```

2

1     THE COURT: The matter is O'Brien
2 versus Stolt-Neilson. You have three
3 motions to seal on the calendar today.
4 Just so that I am clear, I believe I have
5 read all the papers that have been
6 submitted, not only on the motions to seal
7 but the various other matters. On the
8 motions to seal, there is a motion to seal
9 plaintiff's sur-reply papers on the
10 summary judgment motion. There is a
11 motion to seal defendants' response to
12 that sur-reply, which I guess is another
13 way of saying a sur sur reply. Then there
14 is a motion to seal the plaintiff's
15 opposition to one of the motions to seal.
16 Is that a fairly accurate rendition of the
17 sealing -
18     MR. WEIR: That is correct.
19     THE COURT: - issue? All right.
20     MR. GOLUB: There is an intermediate
21 filing also by the defendants, a motion to
22 lodge. I think that was superceded by
23 their motion to seal. The only reason I
24 mention it is because plaintiff's response
25 to the last motion to seal was in response
26 to the objection to motion to lodge.
27 Motion to lodge the plaintiffs sealing

2

1 opposition papers, it turned into a motion
2 to seal.
3     THE COURT: I think I read those
4 papers.
5     MR. GOLUB: Right.
6     THE COURT: Although, at that time
7 there is a possibility my eyes were
8 glazing over. All right. We also have
9 some discovery issues that I want to take
10 up later. But I would like to say very
11 briefly without a lot of elaboration that
12 I am very concerned that this case has
13 gotten off the track. This is a civil
14 case. We seem to have gotten considerably
15 entangled in matters that I don't think
16 necessarily should be involved in this
17 case. It is going to be my goal over the
18 next few hours, the next few days, the
19 next few weeks and, if necessary, the next
20 few months, to get this case back on
21 track. I am not quite sure how I am going
22 to do that yet, but I have to say that I
23 believe the reason it has gotten off the
24 track is because we have extremely zealous
25 advocacy on all sides. I think it has now
26 reached the stage of possibly being to an
27 excess. It is time for counsel and the

3

1 parties to sit back, think through exactly
2 what their goals are in this litigation,
3 and take them in light of the
4 circumstances of other matters that are
5 going on, which I am perfectly aware of,
6 and see if there is another way to do
7 things than the way it is being done in
8 this particular case. All right, I may
9 have some suggestions at some point. I am
10 not going to go into them now, but
11 forewarned is forearmed.
12     Now, with respect to the motions to
13 seal, my understanding is that both
14 parties, and when I say both parties I
15 mean plaintiff and defendants, I realize
16 that there is more than one defendant,
17 all parties, seek to put on testimony. We
18 are going to do that first. I will say
19 before that, however, there is a motion to
20 quash a deposition. Not a deposition
21 subpoena, it is a subpoena for today's
22 proceedings to the record keeper of Stolt-
23 Neilson Transportation Group. I am not
24 going to - I am going to grant that
25 motion. I don't need to hear from the
26 record keeper of STN, SNTG, at least at
27 this point. So, I think the moving

60

MR. GOLUB: Your Honor, This Court has to engage in a balancing at this point. The balancing is public's interest in seeing things versus the defendant's interest in keeping things secret. If the plaintiff has a right to disclose his information, I understand we are not at that point yet; then the next issue is, should it be kept secret or should it not be kept secret?

THE COURT: Say that again?

MR. GOLUB: Okay. If the plaintiff has the right to disclose his information to respond to an attack on him by the defendant, if he has that right, the next issue is, how should that information be treated in this courtroom. If the information has already been made public by the defendants and if the plaintiff has the right to use the information to respond to attack, then the defendants' interest in sealing is de minimus.

THE COURT: But you are talking about information that has been given to the Department of Justice. That is somewhat - The Department of Justice has its own confidentiality rule.

61

MR. GOLUB: Your Honor, I believe that —

THE COURT: Let me finish. That, I think, there is a distinction between giving it to the Department of Justice and then you're saying have made it public. Those are two different things.

MR. GOLUB: Your Honor, I want to take those one at a time. I have spoken with the Department of Justice's attorney as to whether there were any representations made with respect to the use and non-use of this information. The Justice Department attorney, Robert Connelly, while not commenting directly, said that there are no special agreements with respect to the use of this information. The defendants in their papers have never contended that the government promised them they would not make use of the information that was divulged in the course of applying for amnesty.

THE COURT: But you know and I know that if Mr. Connelly had taken the information that he was given, purportedly, by Stolt-Neilson, and walked out onto the front doorsteps of his

62

building and distributed a leaflet with all of that information, he would have been fired on the spot.

MR. GOLUB: Yes, but the cases say, Your Honor, that when you turn information over to an investigating government agency or a prosecutor without any promise of confidentiality, that is a waiver of any privilege it attaches.

THE COURT: A privilege?

MR. GOLUB: It is a waiver of confidentiality that attaches.

THE COURT: Okay.

MR. GOLUB: Now, I am not saying that that in and of itself right where we are would necessarily authorize Mr. O'Brien to do something. What I am saying is something different. I am saying Mr. O'Brien has certain rights to defend himself from the attacks. This Court then has to decide, is the information he has used to defend himself properly kept sealed when the defendants have, in fact, disclosed it with no assurance of confidentiality. That is why these questions are relevant.

63

THE COURT: Well, I understand where you are going. I think I understand everybody's position in this case pretty clearly. I am aware certain information has been given to the Department of Justice.

MR. GOLUB: There is no evidence before The Court right now as to what was actually said by Stolt-Neilson to the government. If for example —

THE COURT: And we are not going to get into it today either, are we?

MR. GOLUB: I think I have a right to ask the witnesses —

THE COURT: No, because you told me in a letter, or if not a letter, a submission in court, that we were going to get into this. We were going to have testimony today that didn't get involved in confidential information.

MR. GOLUB: That is correct.

THE COURT: That is why we are having the testimony.

MR. GOLUB: What I am offering, Your Honor, is not confidential information. I am offering information that was not maintained as confidential. That is