# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S OPPOSITION
## TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, United States Department of Justice ("DOJ"), opposes plaintiff's May 13, 2006, motion for partial summary judgment (Dk# 14) in civil action 06-474, pursuant to Fed. R Civ. P. 56. As set forth in the accompanying memorandum of points and authorities, defendant has submitted reasonably detailed affidavits and an Amended 2006 *Vaughn* index which justify the withholding and redaction of documents. Accordingly, defendant is entitled to summary judgment.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR
D.C. Bar No. 498610
Interim United States Attorney


____/s/_____
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant U.S. Attorney


____/s/_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant U.S. Attorney
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>United States of America, )<br>)<br>Defendant. )<br>)<br>)<br>Stolt-Nielsen Transportation Group Ltd., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>United States Department of Justice, )<br>)<br>Defendant. )<br>) | Civil Action No. 05-2217 (RJL)<br><br><br><br><br><br>Civil Action No. 06-0474 (RJL) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant United States Department of Justice, Antitrust Division ("the Division or Agency"), by and through counsel, hereby submits this Opposition to plaintiff's May 13, 2006 Motion for Partial Summary Judgment.

**INTRODUCTION**

This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and concerns twelve requests for documents made by plaintiff to defendant.  In this opposition, defendant addresses the five FOIA requests that are the subject of plaintiff's May

13, 2006 summary judgment motion in civil action 06-474.  The five requests are: ATFY06-002, ATFY06-003, ATFY06-019, ATFY06-038, and ATFY06-040.  Defendant's opposition to plaintiff's other six FOIA requests was addressed separately in Defendant's Opposition to Plaintiff's August 18, 2006 Motion for Summary Judgment in civil action 05-2217  (Dk# 33) filed September 27, 2006.[1]  Plaintiff seeks no further relief on a twelfth request, ATFY05-071, which pertains to a meeting with John Nannes.  *See* Plaintiff's Motion for Summary Judgment (Dk# 23-1)[2] at 1.

**FACTS**

The background of the case is fully described in the Agency's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (Dk# 26-1) at 3-13, and so will not be repeated here.  After that motion was filed, the grand jury in the Eastern District of Pennsylvania, on September 6, 2006, indicted plaintiff Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen"), its parent Stolt-Nielsen S.A., another Stolt-Nielsen affiliate, Stolt-Nielsen executive Richard Wingfield, and Stolt-Nielsen executive Samuel Cooperman.  *United States v. Stolt-Nielsen S.A.*, Crim No. 06-466 (E.D. Pa.), Exhibit A to Defendant's Opposition to Motion for Summary Judgment (Dk# 33-3) filed September 27, 2006.  The Division's parcel tanker shipping grand jury investigation continues as to other subjects.

---

[1]     The six requests are:  ATFY05-072, ATFY05-080, ATFY05-088, ATFY05-113, ATFY05-131, and ATFY06-026.

[2]     This document number corresponds to the docket for civil action 05-2217.  Unless otherwise indicated, all other document numbers in this filing correspond to the docket for civil action 06-0474.

**ARGUMENT**

In its Motion for Partial Summary Judgment, plaintiff correctly notes that the Agency bears the burden to prove that it is entitled to withhold records pursuant to various FOIA exemptions. *CEI Washington Bureau Inc. v. U.S. Dep't of Justice*, 404 F. Supp. 2d 172, 175 (D.D.C. 2005) (citing 5 U.S.C. § 552(a)(4)(B)).   It is also true that "[a]n agency 'may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions.'" *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1034 (N.D. Cal. 2005) *(*citing *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996)). "'In evaluating a claim for exemption, a district court must accord substantial weight to  [agency] affidavits, provided the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of [agency] bad faith.'" *Id*.

In this case, the Amended 2006 *Vaughn* index (Dk# 29-3) compiled by the Antitrust Division, as well as the declarations of Scott Hammond and Ann Lea Richards, meet the Government's burden to prove that it is entitled to withhold records pursuant to certain exemptions.  The *Vaughn* index  provides "detailed justification" for the exemptions claimed. The index describes each record or portion of record withheld and identifies the date of the document, the names of the author and recipient, the title and/or type of document, the exemption claimed and, finally, the reasons why the record or portion of the record is exempt. The Division expressly considered the segregability of each document and concluded that no additional information could be released to the plaintiff without jeopardizing the ongoing investigation or litigation or the Division's anti-cartel enforcement program.  Richards decl. at 14-16, ¶¶ 26-27**,** Exhibit A to Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment (Dk# 28-2).  To further describe the information

sought would lead to disclosure of the very information sought to be protected.

Plaintiff in its Memorandum Of Points And Authorities In Support Of Its Motion For Partial Summary Judgment (Dk# 14) wrongly claims that the Division has instigated a "public relations campaign" against it and that it commenced this FOIA action to obtain access to the Division's "publicity campaign against it."  Pltf's Mem. at 1.  As noted in defendant's Answer to the Complaint in Civ. Action No. 1:06-cv-00474 (RJL) (Dk# 13-1), the revocation of Stolt-Nielsen's conditional leniency letter generated many questions from the antitrust defense bar as to the future application of the Division's Corporate Leniency Program[3] and the Division responded to such inquiries via reference to the public record in the leniency litigation.  The Division believed such comments were necessary for the guidance of the antitrust bar in the continued use of the Division's leniency program.  *See* Answer at 10; Hammond decl. at 12, ¶14, Exhibit B to Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment (Dk# 27-2); 28 C.F.R. § 50.2(a)(2) ("[T]here are valid reasons for making available to the public information about the administration of the law.").  As noted below[4] and in Defendant's Opposition to Plaintiff's August 18, 2006 Motion for Summary Judgment at 6-7, the Division has produced to plaintiff publicly disclosed information, such as speeches and communications with private attorneys about panel discussions, including planning e-mails and discussion outlines circulated among speech panelists.

---

[3]        The Division's Corporate Leniency Policy is attached as Exhibit 1 to plaintiff's August 18, 2006 Motion for Summary Judgment (Dk# 25-2, civil action 05-2217).

[4]        *See* page 7 *infra.*

The requests at issue in plaintiff's Motion for Partial Summary Judgment, however, go far beyond any public statements made by Division officials and seek internal Division deliberations about speeches, internal speech drafts, a copy of every leniency agreement entered by the Division since the Division's Corporate Leniency Policy was revised in August 1993, and Division communications with potential witnesses, including victims of Stolt-Nielsen's cartel. Defendant responds below to each of plaintiff's arguments. The headings correspond to the sections in plaintiff's argument portion of its Memorandum Of Points And Authorities In Support Of Its Motion For Partial Summary Judgment, beginning on page 8.

## I.    The FOIA Requests Made By Stolt-Nielsen At Issue in This Motion

### A.    Speeches Made By Antitrust Division Officials About Stolt-Nielsen (ATFY06-019)(ATFY06-038)

Plaintiff requested that the Antitrust Division produce speeches and speech-related material concerning Stolt-Nielsen. Plaintiff concedes that in response to FOIA requests ATFY06-019 and ATFY06-038 the Division produced certain documents in their entirety and others in redacted form. Plaintiff correctly notes that the Division withheld records under Exemptions (b)(5) and 7(A). Pltf's Mem. at 8-10. *See* Amended 2006 *Vaughn* index at 36-47, 152-153.

#### 1.    Exemption (b)(5): Inter-Agency Or Intra-Agency Memoranda Or Letters

Plaintiff recites the law but does not identify any specific records that were improperly withheld under Exemption (b)(5). Instead, plaintiff merely cites several cases for the proposition that in some instances documents may not be exempt under (b)(5). But plaintiff does not provide any analysis and does not state how those cases apply to the instant

case. Pltf's Mem. at 9-10. Summary judgment may not be defeated "with pure conjecture about the possible content of withheld information, raising 'some metaphysical doubt as to the material facts.'" *See Steinberg v. United States Dep't of Justice*, 179 F.R.D. 357, 360 (D.D.C. 1998) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *aff'd* 1999 WL 1215779, No. 98-5465 (D.C. Cir. Nov. 5, 1999).

In this section of its memorandum, plaintiff observes that defendant bears the burden to prove that no segregable information exists within the records withheld by defendant. Pltf's Mem. at 8. Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552. Defendant met its burden to prove that no segregable information exists in this case. Ann Lea Richards, Chief of the FOIA Unit, addresses segregablity on pages 12-15 of her declaration. She describes how Wayne Foster, paralegal specialist, reviewed each document to determine whether it was responsive, and then re-reviewed the responsive documents line-by-line to determine whether they could be released under the FOIA. Richards decl. at 12-14, ¶¶ 22, 26. "Exempt information in otherwise disclosable documents was bracketed for excision and the exemption supporting the non-disclosure was noted on the page next to the redaction." *Id*. at 13. The documents were then forwarded to Ms. Richards for further review. *Id.* at 13, ¶ 22. She states that she complied with the requirement to release all reasonably segregable information. *Id*. at 15, ¶ 26. Ms. Richards' declaration proves that defendant complied in full with the reasonable segregation requirement of the FOIA.

Plaintiff also notes that information that may otherwise be protected by the attorney work-product doctrine and the deliberative process privilege is subject to waiver by

disclosure to third parties. Pltf's Mem. at 9. A FOIA exemption can be waived if the specific information sought to be withheld has been disclosed previously. *Afshar v. Department of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983); *United States Student Ass'n v. CIA*, 620 F. Supp. 565 (D.D.C. 1985). However, the extent of the waiver is equivalent to the extent of the disclosure. *See Mobil Oil Corp. v. EPA*, 879 F.2d 698, 701 (9th Cir. 1989). Plaintiff must establish that the information it seeks through the FOIA has "already been specifically revealed to the public" and duplicates the information being withheld. *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002); *United States Student Ass'n*, 620 F. Supp. at 571. In spite of its assertions, plaintiff has not even attempted to meet this test. *See Irons v. FBI*, 880 F.2d 1446 (1st Cir. 1989)(public testimony by confidential sources did not waive FBI's claim to confidential source exemption 7(D)), *Mehl v. EPA*, 797 F. Supp. 43, 47 (D.D.C. 1992)(no waiver of exemptions where partial disclosure of contents of document). Plaintiff does not identify any specific record from the Amended 2006 *Vaughn* index that it contends was disclosed to third parties, such that defendant waived the deliberative process or work product privileges.

In response to plaintiff's requests ATFY06-019 and ATFY06-038, the Division released publicly disclosed information, such as a speech (ATR-4000-4014); communications with private attorneys about panel discussions, such as planning emails with outside panelists (ATR-2341-2342) or discussion outlines circulated with outside panelists (ATR-2335, 2336-2338, 2339-2340, 3995-3999); and a quote from the Division's Third Circuit reply brief in *Stolt-Nielsen, S.A. v. United States* (ATR-2369), but withheld as work product and deliberative process internal communications reflecting attorneys' thoughts and opinions about what to include in Division speeches. Work product does not have to be released just

because it might have some public interest. One of the reasons for withholding documents pursuant to the work-product and deliberative process privileges is to avoid confusion about the agency's actual position as opposed to proposed positions. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc) *overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco &Firearms,* 670 F.2d 1051 (D.C. Cir. 1981) (*en banc*). These privileges also encourage open and frank discussions. *Greenberg v. United States Dep't of Treasury*, 10 F. Supp. 2d 3, 16 n.19 (D.D.C. 1998) (concluding that Exemption 5 "is not limited to preventing embarrassment or 'chilling' of the individual authors of deliberative documents" but is designed to prevent chilling of agency deliberations); *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 117 (D.D.C. 1984) (finding that ongoing regulatory process would be subject to "delay and disrupt[ion]" if preliminary analyses were prematurely disclosed).

Plaintiff also asserts the deliberative process privilege "does not apply to purely factual matters or to factual sections of deliberative memoranda, unless the facts are 'inextricably intertwined' with deliberative material." Pltf's Mem. at 9 (citations omitted). But plaintiff does not identify any specific record from the Amended 2006 *Vaughn* index that it contends was inappropriately withheld under the deliberative process privilege due to the presence of factual matter. Plaintiff merely repeats the defendant's obligation to segregate nonexempt material. As detailed above, defendant complied with its segregation obligations and redacted or withheld attorneys' thoughts and opinions about what to include in Division speeches.

Thus, defendant met its burden to show that it properly withheld documents under

Exemption (b)(5).  Both the Amended 2006 *Vaughn* index and the Richards declaration

contain detailed justifications explaining why defendant redacted or withheld records under

Exemption (b)(5).   The Amended 2006 *Vaughn* index lists, along with the detailed

justifications, the specific documents that were  redacted or withheld under Exemption (b)(5)

for requests ATFY06-019 and ATFY06-038.  *See* Amended 2006 *Vaughn* index at 36-47,

152-153.

> **2.    Exemption 7(A): Records Compiled For Law Enforcement**
> **Purposes That Could Reasonably Be Expected To Interfere**
> **With Enforcement Proceedings**

Plaintff also asserts that speech-making materials cannot have been compiled for a

law enforcement purpose and hence cannot fall within Exemption 7(A).  Pltf's Mem. at 10.

While the original version of Exemption 7 only applied to "investigatory files compiled for

law enforcement purposes," Pub. L. No. 90-23, 81 Stat. 54, 55 (1967) (subsequently

amended), Exemption 7 has been broadened to apply to "records or information compiled for

law enforcement purposes."  5 U.S.C. § 552(b)(7) (emphasis added).  Hence the focus is on

the content of documents and the purpose for which the information was created, not the

physical format or ultimate use of the information.  *Ponder v. Reno*, No. 98-3097, slip op. at

4-5 (D.D.C.  Jan. 22, 2001); S. Rep. No. 98-221, at 23 (1983).  The Division is a criminal law

enforcement agency and frequently gives speeches for law enforcement purposes, i.e. to

provide guidance about Division enforcement efforts, such as the operation of the Division's

leniency program; to promote deterrence of antitrust crimes; or to facilitate detection of

antitrust crimes, for example by encouraging self-reporting of antitrust crimes.  *See*

Hammond decl. at 2, 6, 12, ¶¶ 2, 8, 14 ("To promote understanding of the leniency program,

the Division has given speeches and participated in numerous panel discussions explaining

the program and answering questions generated by the program. (citing Division speeches)

The antitrust defense bar's recognition of the value of the program has been critical to the

success of the program and the willingness of companies to apply for leniency."  Hammond

decl. at  6-7, ¶ 8.)

Plaintiff also challenges whether speech-making materials could interfere with

pending or reasonably anticipated enforcement proceedings and states that material that is

shared with other members of the public must also be shared with it.  Pltf's Mem. at 10.

Here the withheld attorney thoughts and opinions relate to the parcel tanker grand jury

investigation, the related leniency litigation with Stolt-Nielsen, and the then anticipated

indictment of Stolt-Nielsen, which was returned by the grand jury on September 6, 2006.

*United States v. Stolt-Nielsen S.A.*, Crim No. 06-466 (E.D. Pa.), Exhibit A to Defendant's

Opposition to Motion for Summary Judgment filed September 27, 2006.  It reasonably could

be expected that if Stolt-Nielsen, the subject of those proceedings, obtained the Division's

internal deliberations about what comments to make about the proceedings, that that

disclosure could interfere with the proceedings.  As discussed in defendant's Memorandum

Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment at 29-

30, the FOIA is not to be used by a criminal defendant, such as Stolt-Nielsen, as a subterfuge

for discovery.  *See Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (citing *NLRB v.*

*Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (FOIA "not intended to function as a

private discovery tool. . . . Plaintiffs can access information through 'normal pre-trial

discovery channels.'"))*; Kanter v. I.R.S., et al.*,  433 F. Supp. 812, 816, 819 n.13 ( N.D. Ill.

1977) ("parties in other litigation only entitled to that discovery provided by the rules

applying to their suit").

With respect to plaintiff's stated position that material that is shared with other members of the public must also be shared with it, the Division, as noted above, produced to plaintiff, in response to ATFY06-019 and 06-038, publicly disclosed information, including a speech and communications with private attorneys about panel discussions, such as planning emails with outside panelists or discussion outlines circulated with outside panelists. Defendant met its burden to show that it properly withheld documents under Exemption 7(A). The Amended 2006 *Vaughn* index lists, along with the detailed justifications, each specific document that was redacted or withheld under Exemption 7(A) for requests ATFY06-019 and ATFY06-038.

### 3.    Adequacy of Search for ATFY06-038

Finally, plaintiff challenges the adequacy of the Division's search for documents responsive to ATFY06-038, stating that the Division asserted that "it ha[d] no additional documents, other than the documents already disclosed to Stolt-Nielsen." Pltf's Mem. at 10. In the Division's April 27, 2006 production letter to plaintiff, the Division stated that it was enclosing two documents of 20 pages responsive to ATFY06-038, and that it was unable to locate any additional documents. Exhibit Z to Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment (Dk# 26-25). Plaintiff fails to note that ATFY06-038 was highly duplicative of ATFY06-019. In addition to requesting speeches by Scott Hammond at different times and materials related to any such speeches, both requests asked for speeches and speech-related materials given by any Division official other than Scott Hammond relating to Stolt-Nielsen from March 1, 2004 to the date of the

request.[5]  Hence, many of the documents that would have been responsive to request
ATFY06-038 had already been located during the earlier search for documents responsive to
request ATFY06-019, and were produced in response to that request.  *See* Richards decl. at
12, ¶ 21 (discussing in detail Division's full compliance with the search requirements of the
FOIA and the Division's successive searches in response to plaintiff's repeated FOIA
requests); *see also Defenders of Wildlife v. United States Dep't of the Interior*, 314 F. Supp.
2d 1, 10 (D.D.C. 2004) ("[I]t would be illogical and wasteful to require an agency to produce
multiple copies of the exact same document.").  To assist in resolution of matters in this
litigation and to show that the Division produced documents to plaintiff that were responsive
to both requests, the Division identified this overlap during the production of the *Vaughn*
index.  *See* Amended 2006 *Vaughn* index at 36-47 and 152-153 (listing documents
responsive to both requests).

### B.    Amnesty Agreements   (ATFY06-002)

In an unprecedented FOIA request, ATFY06-002, Stolt-Nielsen, which was at the
time of the request a target of a grand jury investigation and is now an indicted defendant,
seeks a copy of every leniency agreement entered by the Division since its current Corporate
Leniency Policy was instituted in August 1993.  Pltf's Mem. at 11.  This request involves
approximately 100 grand jury investigations and approximately 100 leniency letters.
Hammond decl. at 9, ¶ 11.  Plaintiff concedes that the Division responded to this request on
April 27, 2006 and produced certain documents.   The Division produced five conditional

---

[5]       ATFY06-019 was dated November 9, 2005, while ATFY06-038 was dated January
24, 2006.

leniency agreements that have been made public at Division trials[6] and Stolt-Nielsen's own conditional leniency agreement which became a matter of public record in its leniency litigation in the Eastern District of Pennsylvania.[7]  Plaintiff correctly notes that the Division withheld documents under Rule 6(e) of the Federal Rules of Criminal Procedure and Exemptions (b)(3), 7(A), 7(C) and 7(D).  Pltf's Mem. at 12.  Defendant also withheld leniency agreements under Exemptions (b)(2) and (b)(5).  *See* Amended 2006 *Vaughn* index at 155-160.

Stolt-Nielsen seeks a copy of every agreement the Division has entered with informants pursuant to its modern Corporate Leniency Program, a request which spans informant agreements over the last thirteen years.  This request is basically a demand for the Division to open its leniency files to Stolt-Nielsen.  Stolt-Nielsen seeks these documents, as well as other documents requested in additional FOIA requests, for use in a motion to dismiss the indictment returned against it.[8]

As noted above, the FOIA is not to be used by a criminal defendant, such as Stolt-Nielsen, as a subterfuge for discovery.  *See Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (FOIA "not intended to function as a private discovery tool. . . . Plaintiffs can access information through

---

[6]     ATR-2012-2014, 2015-2018, 2023-2025, 4611-4616, and 4617-4621.

[7]     Joint Appendix at 73-76, *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006) (No. 05-1480); ATR-2019-2022.

[8]     Plaintiff's Response to Defendant's Motion to Consolidate at 2, *Stolt-Nielsen Transportation Group Ltd. v. United States*, Civ. Action No. 05cv2217 (RJL) (Dk# 15-1) (filed May 25, 2006) ("Stolt-Nielsen could be subject to indictment at almost any time.  The information that Stolt-Nielsen has requested through its FOIA requests is necessary in order for the Company to present an effective motion to dismiss.").

'normal pre-trial discovery channels.'")); *Kanter v. I.R.S., et al.*,  433 F. Supp. 812, 816, 819 n.13 ( N.D. Ill. 1977) ("FOIA cases treated as independent causes operating on a different plane from other litigation; parties in other litigation only entitled to that discovery provided by the rules applying to their suit" and noting that permitting the FOIA to be used as a criminal discovery device would open the floodgates to FOIA litigation and contribute to the "already burdensome backlog of FOIA cases" thereby "undermining the rights of those members of the public whom Congress primarily intended to benefit.").

### 1.    Plaintiff's Challenges To ATFY06-002 Production

Stolt-Nielsen asserts that production of these approximately 100 leniency letters to it would be "consistent with the 'transparency'" of the Division's Corporate Leniency Program; notes that the Division has published the text of its model conditional leniency agreement; alleges that the text of leniency agreements have not been shown to be matters occurring before a grand jury; asserts that Exemption 7(A) would not apply to leniency agreements from closed investigations; and asserts that the applicability of Exemptions 7(A) and 7(D) can be satisfied by redacting the name of the leniency applicant and the industry involved and that the applicability of Exemption 7(C) can be satisfied by redacting the name of the leniency applicant.  Pltf's Mem. at 11-14.

### 2.    Need To Protect Integrity Of Leniency Program And Confidentiality Of Specific Leniency Agreements

As Mr. Hammond explained in his declaration, the Division's Corporate Leniency Program is considered the "cornerstone of its international anti-cartel enforcement program and has led to the detection and prosecution of more international cartels than all of the Division's search warrants, consensual monitoring, and FBI interrogations combined. . . .

The amnesty program is clearly the Division's most effective generator of international cartel cases, and has become the Justice Department's most successful voluntary disclosure program." Hammond decl. at 5, ¶ 7.  The Division has promoted a transparent application of the Division's Corporate Leniency Program,[9] by, among other things, developing a written leniency policy, giving speeches answering common questions about the application of the Program,[10] and publishing its model conditional leniency agreement.[11]  The Division, however, has never publicly disclosed the text of an actual agreement with a specific leniency applicant outside the context of litigation involving the specific cartel at issue in the agreement disclosed.  The Division has touted the confidentiality of the leniency program with respect to the treatment of specific applications, even after the specific investigation at issue is closed.  As Mr. Hammond explained in his declaration:

> [T]he Division concluded long ago that confidential treatment of amnesty applications is crucial.  In . . . speeches regarding the application of the amnesty program, the Division has emphasized the confidentiality of the amnesty program.  The Division 'holds the identity of amnesty applicants in

---

[9]    *See, e.g.,* Scott D. Hammond, Director of Criminal Enforcement, Antitrust Div., U.S. Dep't of Justice, Cornerstones of an Effective Leniency Program, Speech Before the ICN Workshop on Leniency Programs (Nov. 22-23, 2004), *available at* http://www.usdoj.gov/atr/public/speeches/206611.htm.

[10]    Gary R. Spratling, Deputy Ass't Att'y Gen., Antitrust Div., U.S. Dep't of Justice, The Corporate Leniency Policy:  Answers to Recurring Questions, Speech Before ABA Antitrust Section's 1998 Spring Meeting (Apr. 1, 1998), *available at* http://www.usdoj.gov/atr/public/speeches/1626.htm.

[11]    Spratling, Making Companies An Offer They Shouldn't Refuse, The Antitrust Division's Corporate Leniency Policy - An Update, Speech Before the Bar Association of the District of Columbia's 35th Annual Symposium on Associations and Antitrust (Feb. 16, 1999), *available at* http://www.usdoj.gov/atr/public/speeches/2247.htm; Spratling, The Corporate Leniency Policy:  Answers to Recurring Questions, *supra* note 9.  The Division did not use a model leniency letter before 1998, and terms of the letters used before that time varied.  Hence, any arguments Stolt-Nielsen has that redacting the name of the applicant or industry would only leave a published model letter would not apply to amnesty letters prior to 1998.

strict confidence, much like the treatment afforded to confidential informants [and] [t]herefore, . . . will not publicly disclose the identity of an amnesty applicant, absent prior disclosure by the applicant, unless required to do so by court order in connection with litigation.'[12]  Moreover, amnesty negotiations are conducted with the express understanding that those negotiations and the information provided by the applicant will remain confidential, even after the investigation at issue is closed.  Even after an investigation is closed, confidential informants pursuant to the leniency program maintain an interest in keeping their identities and the information they disclose confidential due to fear of retribution by former coconspirators they implicated and damaged relations with customers.  Moreover, with respect to amnesty applications for international conspiracies, given that some foreign governments do not have statutes of limitations for cartel offenses and thus the applicant's foreign exposure remains, this continued confidentiality is particularly important.  Many leading members of the private antitrust bar who represent amnesty applicants have advised me that the Division's promise of confidentiality is a critical, and in some cases determinative, factor that companies rely upon in making a decision whether to self report pursuant to the Division's amnesty program.

Hammond decl. at 7-8, ¶ 9.

As Mr. Hammond further explained, to protect the confidentiality of the leniency program, the Division would not even share the leniency agreements requested by Stolt-Nielsen with other antitrust authorities, despite the Division's close cooperative relations with foreign antitrust authorities and the critical need for cooperation between the Division and such authorities.  Hammond decl. at 8, ¶ 10.  Mr. Hammond also explained the damage to the perception of the leniency program if the agreements were disclosable pursuant to the FOIA:

If amnesty letters were publicly available pursuant to the FOIA, such a disclosure obligation could reasonably be expected to have a negative effect on the perception of

---

[12]

Gary R. Spratling, Deputy Ass't Att'y Gen., Antitrust Div., U.S. Dep't of Justice, The Corporate Leniency Policy: Answers to Recurring Questions at 11, Speech Before ABA Antitrust Section's 1998 Spring Meeting (Apr. 1, 1998), available at: http://www.usdoj.gov/atr/public/speeches/1626.htm.

the amnesty program.  Amnesty applicants could perceive that the amnesty application process is no longer confidential, and hence the disclosure obligation would have a chilling effect on amnesty applications in both domestic and international investigations.  Due to the importance of the Division's amnesty program, such a disclosure obligation could interfere with the Division's anti-cartel enforcement program, including both ongoing and prospective enforcement proceedings.  Further, disclosure to Stolt-Nielsen in this case could lead to an onslaught of FOIA requests from various individuals and groups, including coconspirators under investigation, in every cartel grand jury investigation in an attempt to obtain confidential information, such as whether an amnesty application was made, who made it, and what can be gleaned from the letter regarding the information the applicant provided about the cartel.  Without an effective amnesty program, numerous cartels would go undetected and large numbers of consumers would continue to be harmed by this egregious activity.

Hammond decl. at 9, ¶ 11.

Even disclosing leniency agreements from closed investigations could damage the perception of the leniency program and chill cooperation from applicants in current proceedings or discourage future leniency applicants in ongoing or future investigations.

### 3.    Exemptions (b)(2) and (b)(5)

The agency withheld leniency agreements in their entirety under Exemption (b)(2) because if disclosed, they would reveal information relating to the operation of the Division's leniency program, diminish confidence in the confidentiality of the leniency program, and impede the effectiveness of that program.  The loss of confidentiality resulting from disclosure of the leniency agreements would interfere with ongoing or prospective enforcement proceedings and would discourage future leniency applications.  Hammond decl. at 4-10, ¶¶ 6-11.  This "high (b)(2)" exemption, *see Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992), exempts from mandatory disclosure documents relating to substantive internal matters.  *Id.*  An agency is authorized to withhold documents in this category to the extent that disclosure would reveal techniques and procedures for law enforcement

investigations or prosecutions, *id*.; would disclose guidelines for law enforcement investigations; or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities.  *See Crooker*, 670 F.2d 1051 (D.C. Cir. 1981) (*en banc*); *Hardy v. ATF*, 631 F.2d 653, 656 (9th Cir. 1980).

Likewise, the Exemption (b)(5) privilege for information that would promote the efficient operations of the government has also been asserted as a basis for withholding leniency agreements in their entirety. The efficient governmental operations privilege is included within the civil discovery privileges incorporated into Exemption (b)(5) of the FOIA, 5 U.S.C. § 552(b)(5).  *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 802 (1984).  It protects inter- and intra-agency memoranda and letters obtained under a promise of confidentiality when confidentiality is necessary to ensure and/or encourage frank disclosures and disclosure is countrary to the public interest.  *See Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963) (confidential statements made to air crash safety investigators are privileged in civil discovery.)  Generally, inter- and intra-agency communications refer to information exchanged internally within an agency or between two agencies of the United States. *Department of the Interior et al.v. Klamath Water Users Protective Association*, 532 U.S. 1, 2 (2001).  But the Supreme Court has recognized a "consultant corollary" to Exemption (b)(5) whereby "a document prepared for a Government agency by an outside consultant qualifies as an 'intra-agency' memorandum."  *Id*. at 2.  In this case, agreements with confidential informants qualify as intra-agency memoranda under the "consultant corollary" to Exemption (b)(5).

The privilege is recognized because the government would not be able to obtain the information if the privilege did not exist.  Substantial Sherman Act violations have been

uncovered because of the willingness of companies to self-disclose so long as their cooperation remains confidential.  Thus, the privilege promotes the efficient operation of the Division's Corporate Leniency Program and its international anti-cartel program.  Hammond decl. at 4-6, 7-8, ¶¶ 6-7, 9.

### 4.        Rule 6(e) Of The Federal Rules Of Criminal Procedure

Defendant also has met its burden to show that it is entitled to withhold leniency agreements under Exemption (b)(3) and Federal Rule of Criminal Procedure 6(e) by providing detailed justifications for the withheld records in the Amended 2006 *Vaughn* index and in the Richards declaration.  Richards decl. at 18-20, ¶ 29.  The Amended 2006 *Vaughn* index lists, along with the detailed justification, each specific document that was redacted or withheld under Federal Rule of Criminal Procedure 6(e) for request ATFY06-002.  All of the documents withheld under Rule 6(e) were grand jury exhibits or contain information about the scope, direction, and subjects of the grand jury investigation, and were not pre-existing documents but were created for the purposes of the investigation.  *Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 549 (6th Cir. 2001) (protecting grand jury transcripts, exhibits, and identities of witnesses); *Twist v. Reno*, No. 95-258, 1997 U.S. Dist. LEXIS 8981, at *5 n.1 (D.D.C. May 12, 1997) (holding that agency properly withheld information that would reveal strategy or direction of grand jury investigation), *summary affirmance granted*, No. 97-5192, 1997 WL 811736 (D.C. Cir. Dec. 9, 1997).

### 5.        Non-Segregability Of The Leniency Agreements

Plaintiff seeks redaction of almost 100 leniency agreements and the release of the remainder of these documents.  Pltf's Mem. at 13-15.  Documents are not reasonably segregable when the only nonexempt information amounts to "little more than templates,"

such as text from the model leniency letter would be here. *Warren v. Soc. Sec. Admin.*, No. 98-0116E, 2000 WL 1209383, at *5 (W.D.N.Y. Aug. 22, 2000), *aff'd in pertinent part*, 10 Fed. Appx. 20 (2d Cir. 2001). The Division expressly considered the segregability of each document and concluded that no additional information could be released to the plaintiff without jeopardizing the ongoing investigation or litigation or the Division's anti-cartel enforcement program. Richards decl. at 14-15, ¶¶ 26-27. As Ms. Richards stated: "In processing the documents responsive to plaintiff's FOIA requests, the defendant complied in full with the reasonable segregation requirement of the Act, 5 U.S.C. § 552 (final sentence), which reads: 'Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.' As noted above in ¶ 22, Mr. Foster reviewed each page line by line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act. In my review of the responsive records, I also adhered to the requirement to release all reasonably segregable information contained therein." Richards decl. at 14-15, ¶ 26. As explained above, public release of the leniency agreements would damage the perception of the confidentiality of the leniency program and discourage future amnesty applications, thus impeding the effectiveness of the Division's law enforcement activities and the efficient operations of the leniency program. The Amended 2006 *Vaughn* index compiled by the Antitrust Division and the declarations of Scott Hammond and Ann Lea Richards provide detailed justifications for the exemptions claimed and meets the defendant's burden to prove that it is entitled to the leniency agreements pursuant to the claimed exemptions.

### C.    Correspondence With Private Attorneys (ATFY06-003)(ATFY06-040)

In FOIA requests ATFY06-003 and ATFY06-040, plaintiff requested all documents that reflect, memorialize, embody or contain communications to or from several private attorneys.  Pltf's Mem. at 15.  Plaintiff concedes that the Division responded to these requests on April 27, 2006, producing a total of 204 pages.  Some documents were produced in redacted form.  Others were withheld.  Plaintiff correctly notes that the Division redacted or withheld documents under Rules 6(e) of the Federal Rules of Criminal Procedure and Exemptions (b)(3), (b)(5), 7(A), and 7(C) and 7(D).  Pltf's Mem. at 15-16; Amended 2006 *Vaughn* index at 4-5, 9-36, 127-152.

### 1.    Exemption(b)(3): Material Specifically Exempted From Disclosure By Statute And Rule 6(e) Of The Federal Rules Of Criminal Procedure

Plaintiff notes that the Division withheld or redacted portions of documents pursuant to Exemption b(3), but does not identify any specific document it claims was improperly redacted pursuant to this exemption**.**  Defendant met its burden to show that it properly withheld documents under Exemption (b)(3) and Rule 6(e).  Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption (b)(3) and Rule 6(e).   The Amended 2006 *Vaughn* index lists, along with the detailed justifications, the specific documents that were redacted or withheld under Exemption (b)(3) and Rule 6(e) for request ATFY06-003 and ATFY06-040.

### 2.    Exemption(b)(5): Inter-Agency Or Intra-Agency Memoranda or Letters

Plaintiff notes that the Division redacted portions of documents pursuant to the work-

product privilege.  Plaintiff does not identify any document it claims was improperly redacted pursuant to this exemption.  Defendant met its burden to show that it properly withheld documents under Exemption (b)(5).  Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption (b)(5).   The Amended 2006 *Vaughn* index lists, along with the detailed justifications, the specific documents that were  redacted or withheld under Exemption (b)(5) for request ATFY06-003 and ATFY06-040.

> **3.      Exemption 7(A): Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected to Interfere With Enforcement Proceedings**

Plaintiff sets forth the standard for meeting exemption 7(A), that production of the withheld records could interfere with ongoing criminal proceedings, but provides no analysis and only identifies one specific record it claims was improperly redacted under Exemption 7(A).  Pltf's Mem. at 15-16 (citing Lau Decl. ¶ 51, citing Exhibit 50 to Pltf's Mem. (Dk#17-35)).  This document is ATR-4036-4040, described on page 127 of the Amended 2006 *Vaughn* index.  When originally producing the document to plaintiff, defendant asserted the 7(A) and 7(C) exemptions, but in preparing the *Vaughn* index, defendant removed the 7(A) exemption and added a 7(D) exemption.  Because the FOIA directs district courts to review agency actions de novo, 5 U.S.C. § 552(a)(4)(B), an agency is not barred from invoking a particular exemption in litigation merely because that exemption was not cited in responding to the request at the administrative level.  *Juda v. United States Customs Serv.*, No. 98-0533, 1999 U.S. Dist. LEXIS 12536, at *9 n.1 (D.D.C. Aug. 2, 1999) noting that "[d]efendant may assert new exemptions at the federal district court level"), *rev'd & remanded on other*

*grounds*, No. 99-5333, 2000 WL 1093326 (D.C. Cir. , June 19, 2000). With respect to the applicability of Exemption 7(D), as discussed below, Defendant met its burden to show that it is entitled to withhold records under Exemption (b)(7)(D) by providing detailed justifications in the Amended 2006 *Vaughn* index, and in the Richards declaration.

With respect to other documents for which Exemption 7(A) was claimed, defendant met its burden to show that it properly withheld documents under Exemption 7(A). The documents responsive to ATFY06-003 and ATFY06-040 include documents relating to the grand jury investigation, as well as references to third parties, some of whom could become witnesses. Release of this information "could reasonably be expected to interfere with [the Division's] enforcement proceedings." Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption 7(A). In addition to noting the general likely harm to the Division's enforcement proceedings, Ms. Richards also identified four specific potential sources of harm that would be evident from release of records withheld under Exemption 7(A). Richards decl. at 28-29, ¶¶ 37-8. These are: a) destruction or alteration of evidence that remains to be discovered; b) witness intimidation; c) giving potential defendants insights into the government's strategy and strength of position; and d) the chilling of cooperation. The Amended 2006 *Vaughn* index, along with the detailed justifications, lists each specific document that was redacted or withheld under Exemption 7(A) for request ATFY06-003 and ATFY06-040.

### 4. Exemption 7(C): Records Compiled For Law Enforcement Purposes That Could Reasonably Be Expected To Constitute An Unwarranted Invasion Of Personal Privacy

Defendant met its burden to justify withholding of records under Exemption 7(C). In

its memorandum, plaintiff sets forth the standard for withholding documents under

Exemption 7(C).  Once again, plaintiff provides no analysis and only identifies one specific

document that it claims was improperly withheld under Exemption 7(C).  Pltf's Mem. at 15;

ATR 4036; Amended 2006 *Vaughn* index at 127.  Plaintiff notes that on this document, the

Division redacted the name of the recipient of an email.  Plaintiff claims it is not plausible

that the recipient of the email would have an expectation of privacy.  Pltf's Mem. at 15-16.

But Exemption 7(C)'s privacy protection is particularly applicable to investigations by

criminal law enforcement agencies.  Richards decl. at 31-33, ¶ 39.  The Division is a law

enforcement agency that is investigating criminal violations of the Sherman Act.  *Id*.  For this

reason, defendant has withheld the names of persons mentioned in records of its

investigations.  *Id*.  There is no public interest that would be served by the release of such

information, and having one's name associated with a criminal investigation can be

stigmatizing.  Individuals, whether they are suspects or witnesses, have a strong interest in

having their association with a criminal investigation remain secret.  *Quiñon v. FBI*, 86 F.3d

1222, 1230 (D.C. Cir. 1996) ("[p]ersons involved in FBI investigation – even if they are not

the subject of the investigation – 'have a substantial interest in seeing that their participation

remains secret'" (citations omitted)).  The Amended 2006 *Vaughn* index lists each document

that was redacted or withheld under Exemption 7(C) for request ATFY06-003 and ATFY06-

040, and provides a detailed justification for the redaction or withholding.

     **5.**    **Exemption 7(D): Records Compiled For Law Enforcement
Purposes That Could Reasonably Be Expected to Disclose The
Identity Of A Confidential Source**

Defendant met its burden to show that it is entitled to withhold records under

Exemption (b)(7)(D) by providing detailed justifications in the Amended 2006 *Vaughn* index,

and in the Richards declaration.  Richards decl. at 33-35, ¶ 40.  The Amended 2006 *Vaughn* index lists, along with the detailed justifications, each specific document that was redacted or withheld under Exemption 7(D) for request ATFY06-003 and ATFY06-040.  A law enforcement agency, such as the Department of Justice, "need only establish a 'rational nexus' between enforcement of a federal law and the document for which [a law enforcement] exemption is claimed."  *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005).

Defendant has withheld under Exemption (b)(7)(D) the identities of persons who provided information to the Division about criminal activity under the express assurance of confidentiality, or with the understanding of confidentiality, and withheld the information they provided.  Richards decl. at 33-35, ¶ 40.  In addition, in order to prevent indirect source identification, even the name of a third party who acts as an intermediary for a confidential source in his or her communications with the agency can be withheld.  *Birch v. United States Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).  Informants are concerned that, if their identities and the information they provide are discovered, they will lose favor in the industry, become the subject of retaliation by customers and competitors, or be subject to harassment, loss of employability, and social stigma.  *Id*.  These concerns establish a "rational nexus" between the documents withheld and the enforcement of federal law.  *Rosenfeld*, 57 F.3d at 808.

## CONCLUSION

For the reasons set forth above, the Court should grant defendant's Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 and deny plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR
D.C. Bar No. 498610
Interim United States Attorney


___/s/_____
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant U.S. Attorney


___/s/_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant U.S. Attorney
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332