UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**STATEMENT OF GENUINE DISPUTED ISSUES
IN RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

Defendant submits this statement of genuine disputed issues, pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, in opposition to plaintiff's partial motion for summary judgment. Defendant contends that plaintiff's statement of material facts ¶¶ 1-24 are not material and so do not require a response because whether these statements are true or false does not affect the disposition of the motion. Defendant responds as follows to the factual assertions by plaintiff:

1. The Amended 2006 *Vaughn* index (Dk# 31-3) *Vaughn* index provides "detailed justification" for the exemptions claimed. The index describes each record or portion of record withheld and identifies the date of the document, the name of the author and recipient, the title and/or type of document, the exemption claimed and finally, the reasons why the record or

portion of the record is exempt.

2. The Division expressly considered the segregability of each document and concluded that no additional information could be released to the plaintiff without jeopardizing the ongoing investigation or litigation or the Division's anti-cartel enforcement program. To further describe the information sought would lead to disclosure of the very information sought to be protected. (Richards decl. ¶¶ 26-27, Exhibit A.)

3. As noted in defendant's Answer to the Complaint in Civ. Action No. 1:06-cv-00474 (RJL) (Dk# 13-1), the revocation of SNTG's conditional amnesty letter generated many questions from the antitrust defense bar as to the future application of the Division's Corporate Leniency Program[1] and the Division responded to such inquiries via reference to the public record in the amnesty litigation. The Division believed such comments were necessary for the guidance of the antitrust bar in the continued use of the Division's leniency program. *See* Answer at 10; Hammond declar. at 12, ¶14; 28 C.F.R. § 50.2(a)(2) ("[T]here are valid reasons for making available to the public information about the administration of the law."). As noted below and in Defendant's Opposition to Plaintiff's August 18, 2006 Motion for Summary Judgment at 6-7, the Division has produced to plaintiff its responsive speeches along with communications with private attorneys panel discussions, such as planning e-mails and discussion outlines circulated among speech panelists.

4. The requests at issue in plaintiff's Motion for Partial Summary Judgment go far beyond any public statements made by Division officials and seek internal Division deliberations

---

[1] The Division's Corporate Leniency Policy is attached as Exhibit 1 to plaintiff's August 18, 2006 Motion for Summary Judgment.

about speeches, internal speech drafts, a copy of every amnesty agreement entered by the Division since the Division Corporate Leniency Policy was revised in August 1993, and the Division's communications with potential witnesses, including victims of Stolt-Nielsen's cartel.

     5. Ann Lea Richards, Chief of the FOIA Unit, addresses segregablity on pages 12-15 of her declaration. (Exhibit A to Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment). She describes how Wayne Foster, paralegal specialist, reviewed each document to determine whether it was responsive, and then re-reviewed the responsive documents line-by-line to determine whether they could be released under the FOIA. Richards declar. at 12-14, ¶¶ 22, 26. "Exempt information in otherwise disclosable documents was bracketed for excision and the exemption supporting the non-disclosure was noted on the page next to the redaction." *Id*. at 13. The documents were then forwarded to Ms. Richards for further review. *Id.* at 13, ¶ 22. She states that she complied with the requirement to release all reasonably segregable information. *Id*. at 15, ¶ 26.

     6. In response to plaintiff's requests ATFY06-019 and ATFY06-038, the Division released one speech (ATR-4000-4014); communications with private attorneys about panel discussions such as planning emails with outside panelists (ATR-2341-2342) or discussion outlines circulated with outside panelists (ATR-2335, 2336-2338, 2339-2340, 3995-3999); and a quote from the Division's Third Circuit reply brief in *Stolt-Nielsen, S.A. v. United States* (ATR-2369), but withheld as work product and deliberative process internal communications reflecting attorneys' thoughts and opinions about what to include in Division speeches.

     7. Plaintiff does not identify any specific record from the Amended 2006 *Vaughn* index that it contends was inappropriately withheld under the deliberative process privilege due to the

3

presence of factual matter. Richards decl. ¶¶22, 26.

8. Defendant complied with its segregation obligations and redacted or withheld attorneys' thoughts and opinions about what to include in Division speeches.

9. The 2006 Amended *Vaughn* index contains detailed justifications for the redactions and withholdings in response to ATFY 06-019 and ATFY06-038. *See* Amended 2006 *Vaughn* index at 36-47, 152-153.

10. Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption (b)(5). The Amended 2006 *Vaughn* index, along with the detailed justifications, lists the specific documents that were redacted or withheld under Exemption (b)(5) for requests ATFY06-019 and ATFY06-038.

11. The Division is a criminal law enforcement agency and frequently gives speeches for law enforcement purposes, i.e. to provide guidance about Division enforcement efforts, such as the operation of the Division's leniency program; to promote deterrence of antitrust crimes; or to facilitate detection of antitrust crimes, such as by encouraging self-reporting of antitrust crimes. *See* Hammond declar. at 2, 6, 12, ¶¶ 2, 8, 14 ("To promote understanding of the leniency program, the Division has given speeches and participated in numerous panel discussions explaining the program and answering questions generated by the program. (citing Division speeches.) "The antitrust defense bar's recognition of the value of the program has been critical to the success of the program and the willingness of companies to apply for leniency." Hammond declar. at 6-7, ¶ 8).

12. The withheld attorney thoughts and opinions relate to the parcel tanker grand jury

investigation, the related leniency litigation with Stolt-Nielsen, and the then anticipated indictment of Stolt-Nielsen, which was returned by the grand jury on September 6, 2006. *United States v. Stolt-Nielsen S.A.*, Crim No. 06-466 (E.D. Pa.) (Exhibit A to Defendant's Opposition to Motion for Summary Judgment filed September 27, 2006.). It could be reasonably expected that if Stolt-Nielsen, the subject of those proceedings, obtained the Division's internal deliberations about what comments to make about the proceedings, that that disclosure could interfere with the proceedings. Hammond decl. ¶ .

13. The Division produced to Stolt-Nielsen in response to ATFY06-019 and 06-038 a speech and communications with private attorneys about panel discussions, such as planning emails with outside panelists or discussion outlines circulated with outside panelists.

14. The Amended 2006 *Vaughn* index, along with the detailed justifications, lists each specific document that was redacted or withheld under Exemption 7(A) for requests ATFY06-019 and ATFY06-038.

15. In regard to ATFY06-038, the Division asserted that "it ha[d] no additional documents, other than the documents already disclosed to Stolt-Nielsen." Pltf's Mem. at 10. In the Division's April 27, 2006 production letter to Stolt-Nielsen, the Division stated it was enclosing two documents of 20 pages responsive to ATFY06-038 and that it was unable to locate any additional documents. (Exhibit Z to Memorandum Of Points And Authorities In Support Of Defendant's Motion For Summary Judgment (Dk# 28-1)).

16. ATFY06-038 was highly duplicative of ATFY06-019. In addition to requesting speeches by Scott Hammond at different times and materials related to any such speeches, both requested speeches and speech-related materials given by any Division official other than Scott

Hammond relating to Stolt-Nilesen from March 1, 2004 to the date of the request.[2]  Hence, many of the documents that would have been responsive to ATFY06-038 had already been located during the earlier search for ATFY06-019 documents and were produced in response to that request.  *See* Richards declar. at 12, ¶ 21 (discussing in detail Division's full compliance with the search requirements of the FOIA and the Division's successive searches in response to plaintiff's repeated FOIA requests).  The Division identified this overlap during the production of the *Vaughn* index.  *See* Amended 2006 *Vaughn* index at 36-47, 126, and 152-153 for documents responsive to both requests.

**Amnesty Agreements   (ATFY06-002)**

17.  In ATFY06-002, Stolt-Nielsen, at the time of the request a target of a grand jury investigation and now an indicted defendant, seeks a copy of every amnesty agreement entered by the Division since its current Corporate Leniency Policy was instituted in August 1993.  Pltf's Mem. at 11.  This request involves approximately 100 grand jury investigations and approximately 100 amnesty letters.  (Hammond decl. ¶ 11).

18.  The Division responded to this request on April 27, 2006 and produced certain documents.  The Division produced five conditional amnesty agreements that have been made public at Division trials and Stolt-Nielsen's own conditional amnesty agreement which became a matter of public record in its leniency litigation in the Eastern District of Pennsylvania.[3]  Plaintiff correctly notes that the Division withheld documents under Rule 6(e) of the Federal Rules of

---

[2]     ATFY06-019 was dated November 9, 2005, while ATFY06-038 was dated January 24, 2006.

[3]     ATR-2012-2014, 2015-2018, 2019-2022, 2023-2025, 4611-4616, and 4617-4621.

Criminal Procedure and Exemptions (b)(3), 7(A), 7(C) and 7(D).  Pltf's Mem. at 12.  Defendant also withheld amnesty agreements under Exemptions (b)(2) and (b)(5).  *See* Amended 2006 *Vaughn* index at 155-160.

19.  The Division's Corporate Leniency Program is considered the "cornerstone of its international anti-cartel enforcement program and has led to the detection and prosecution of more international cartels than all of the Division's search warrants, consensual monitoring, and FBI interrogations combined. . . .  The amnesty program is clearly the Division's most effective generator of international cartel cases, and has become the Justice Department's most successful voluntary disclosure program."  Hammond declar. at 5, ¶ 7.  The Division has promoted a transparent application of the Division's Corporate Leniency Program,[4] including having a written leniency policy; has given speeches answering common questions about the application of the Program;[5] and has published a model leniency agreement.[6]  The Division, however, has

---

[4]  *See, e.g.,* Scott D. Hammond, Director of Criminal Enforcement, Antitrust Div., U.S. Dep't of Justice, Cornerstones of an Effective Leniency Program, Speech Before the ICN Workshop on Leniency Programs (Nov. 22-23, 2004), *available at* http://www.usdoj.gov/atr/public/speeches/206611.htm.

[5]  Gary R. Spratling, Deputy Ass't Att'y Gen., Antitrust Div., U.S. Dep't of Justice, The Corporate Leniency Policy: Answers to Recurring Questions, Speech Before ABA Antitrust Section's 1998 Spring Meeting (Apr. 1, 1998), *available at* http://www.usdoj.gov/atr/public/speeches/1626.htm.

[6]  Spratling, Making Companies An Offer They Shouldn't Refuse, The Antitrust Division's Corporate Leniency Policy - An Update, Speech Before the Bar Association of the District of Columbia's 35th Annual Symposium on Associations and Antitrust (Feb. 16, 1999), *available at* http://www.usdoj.gov/atr/public/speeches/2247.htm; Spratling, The Corporate Leniency Policy:  Answers to Recurring Questions, *supra* note 9.  The Division did not use a model leniency letter before 1998, and terms of the letters used before that time varied.  Hence, any arguments Stolt-Nielsen has that redacting the name of the applicant or industry would only leave a published model letter would not apply to amnesty letters prior to 1998.

never publicly disclosed the text of an actual agreement with a specific amnesty applicant outside the context of litigation involving the specific cartel at issue in the letter disclosed. With respect to specific amnesty applications, the Division has touted the confidentiality of the leniency program with respect to the treatment of specific applicants, even after the specific investigation at issue is closed. (Hammond declar. at 7-8, ¶ 9).

20. To protect the confidentiality of the leniency program, the Division would not even share the amnesty agreements requested by Stolt-Nielsen with other antitrust authorities, despite the Division's close cooperative relations with foreign antitrust authorities and the critical requirement for cooperation between the Division and such authorities. (Hammond decl. at 8, ¶ 10).

21. Mr. Hammond further explained the effect on the perception of the amnesty program if the agreements were disclosable pursuant to the FOIA:

> If amnesty letters were publicly available pursuant to the FOIA, such a disclosure obligation could reasonably be expected to have a negative effect on the perception of the amnesty program. Amnesty applicants could perceive that the amnesty application process is no longer confidential, and hence the disclosure obligation would have a chilling effect on amnesty applications in both domestic and international investigations. Due to the importance of the Division's amnesty program, such a disclosure obligation could interfere with the Division's anti-cartel enforcement program, including both ongoing and prospective enforcement proceedings. Further, disclosure to Stolt-Nielsen in this case could lead to an onslaught of FOIA requests from various individuals and groups, including coconspirators under investigation, in every cartel grand jury investigation in an attempt to obtain confidential information, such as whether an amnesty application was made, who made it, and what can be gleaned from the letter regarding the information the applicant provided about the cartel. Without an effective amnesty program, numerous cartels would go undetected and large numbers of consumers would continue to be harmed by this egregious activity.

(Hammond declar. at 9, ¶ 11).

22. Disclosing amnesty agreements from closed investigations could affect the

perception of the amnesty program and chill cooperation from applicants in current proceedings or discourage future amnesty applicants in future investigations. *Id*.

23. The agency withheld amnesty agreements under Exemption (b)(2) because if disclosed, they would reveal information relating to the operation of the Division's amnesty program and impede the effectiveness of that program. If the amnesty agreements are disclosed, it would interfere with ongoing or prospective enforcement proceedings and would discourage future amnesty applicants due to loss of confidentiality. (Hammond declar. at 4-10, ¶¶ 6-11).

24. The Amended 2006 *Vaughn* index lists, along with the detailed justification, each specific document that was redacted or withheld under Federal Rule of Criminal Procedure 6(e) for request ATFY06-002. All of these documents withheld under Rule 6(e) were grand jury exhibits or contain information about the scope, direction, and subjects of the grand jury investigation, and were not pre-existing documents but were created for the purposes of the investigation.

25. In FOIA requests ATFY06-003 and ATFY06-040, the Division responded to these requests on April 27, 2006, producing a total of 204 pages. Some documents were produced in redacted form. Others were withheld.

26. Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption (b)(3) and Rule 6(e). The Amended 2006 *Vaughn* index lists, along with the detailed justifications, the specific documents that were redacted or withheld under Exemption (b)(3) and Rule 6(e) for requests ATFY06-003 and ATFY06-040.

27. The Division redacted portions of documents pursuant to the work-product privilege.

Plaintiff does not identify any document it claims was improperly redacted pursuant to this exemption.

28. Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption (b)(5). The Amended 2006 *Vaughn* index lists, along with the detailed justifications, the specific documents that were redacted or withheld under Exemption (b)(5) for request ATFY06-003 and ATFY06-040.

29. The documents responsive to ATFY06-003 and ATFY06-040 include documents relating to the grand jury investigation, as well as references to third parties, some of whom could become witnesses. Release of this information "could reasonably be expected to interfere with [the Division's] enforcement proceedings."

30. Both the Amended 2006 *Vaughn* index and the Richards declaration contain detailed justifications explaining why defendant redacted or withheld records under Exemption 7(A). In addition to noting the general likely harm to the Division's enforcement proceedings, Ms. Richards also identified four specific potential sources of harm that would be evident from release of records withheld under Exemption 7(A). Richards declar. at 28-29, ¶¶ 37-8. These are: a) destruction or alteration of evidence that remains to be discovered; b) witness intimidation; c) giving potential defendants insights into the government's strategy and strength of position; and d) the chilling of cooperation. *Id*.

31. The Amended 2006 *Vaughn* index, along with the detailed justifications, lists each specific document that was redacted or withheld under Exemption 7(A) for request ATFY06-003 and ATFY06-040.

32. The Division is a law enforcement agency that is investigating criminal violations of the Sherman Act. *Id*. For this reason, defendant has withheld the names of persons mentioned in records of its investigations. *Id*. There is no public interest that would be served by the release of such information, and having one's name associated with a criminal investigation is stigmatizing. Individuals, whether they are suspects or witnesses, have a strong interest in having their association with a criminal investigation remain secret.

33. The Amended 2006 *Vaughn* index lists each document that was redacted or withheld under Exemption 7(C) for request ATFY06-003 and ATFY06-040 and provides a detailed justification for the redaction or withholding.

34. The Amended 2006 *Vaughn* index lists, along with the detailed justifications, each specific document that was redacted or withheld under Exemption 7(D) for request ATFY06-003 and ATFY06-040. Richards declar. at 33-35, ¶ 40.

35. Defendant has withheld under Exemption (b)(7)(D) the identities of persons who provided information to the Division about criminal activity under the express assurance of confidentiality or with the understanding of confidentiality and withheld the information they provided. Richards declar. at 33-35, ¶ 40. In addition, in order to prevent indirect source identification, even the name of a third party who acts as an intermediary for a confidential source in his or her communications with the agency can be withheld. Informants are concerned that, if their identities and the information they provide are discovered, they will lose favor in the industry, become the subject of retaliation by customers and competitors, and be subject to harassment, loss of employability, and social stigma. *Id*.

Respectfully submitted,


\_\_/s/_____
JEFFERY A. TAYLOR
D.C. Bar No. 498610
Interim United States Attorney

\_\_/s/_____
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant U.S. Attorney

\_\_/s/_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant U.S. Attorney
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332