UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stolt-Nielsen Transportation Group Ltd.,

    *Plaintiff,*

        v.

United States of America,

    *Defendant.*

Consolidated Cases
Civil Action No. 05cv2217 (RJL)
Civil Action No. 06cv0474 (RJL)

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
## FOR PARTIAL SUMMARY JUDGMENT (CIVIL ACTION NO. 06CV0474 (RJL)

**WHITE & CASE** LLP

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C. 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation
Group Ltd.*

October 27, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................2

I.    The Antitrust Division's Arguments Are Unpersuasive.....................................2

       A.    Amnesty Agreements  (Request No. ATFY06-002) ...............................2

       B.    Correspondence With Private Attorneys
             (Request Nos. ATFY05-072 and ATFY06-040)....................................8

       C.    Speeches Made By Antitrust Division Officials About Stolt-Nielsen
             (Request Nos. ATFY06-019 and ATFY06-038)..................................12

II.    There Is A Strong Public Interest In The Information Sought By Stolt-Nielsen .............14

III.    The Division's Statement Of Genuine Disputed Issues In Response To Plaintiff's
Statement Of Undisputed Facts Is Faulty.........................................................14

IV.    The Antitrust Division's 16-Month Delay Is Inexcusable................................16

CONCLUSION .................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986) ............................................................................................... 15

*Barney v. IRS,*
   618 F.2d 1268 (8th Cir. 1980) ................................................................................. 4

*Black v. Tomlinson,*
   425 F. Supp. 2d 101 (D.D.C. 2006) ........................................................................ 15

*Campbell v. U.S. Dep't of Justice,*
   164 F.3d 20 (D.C. Cir. 1999) ................................................................................... 11

*Church of Scientology Int'l v. U.S. Dep't of Justice,*
   30 F.3d 224 (1st Cir. 1994) ...................................................................................... 11

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
   670 F.2d 1051 (D.C. Cir. 1981) ............................................................................ 6, 12

*Dep't of Justice v. Landano,*
   508 U.S. 165 (1993) ............................................................................................ 2, 10

*Gardels v. Cent. Intelligence Agency,*
   637 F.2d 770 (D.C. Cir. 1980) ................................................................................. 14

*Gordon v. FBI,*
   388 F. Supp. 2d 1028 (N.D. Cal. 2005) ................................................................... 10

*Hayden v. Nat'l Sec. Agency,*
   608 F.2d 1381 (D.C. Cir. 1979) ............................................................................... 11

*Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,*
   No. Civ. A. 04-1724, 2006 WL 696053 (D.D.C. Mar. 20, 2006) ......................... 4, 13

*Jordan v. U.S. Dep't of Justice,*
   591 F.2d 753 (D.C. Cir. 1978) ................................................................................. 12

*Kanter v. IRS,*
   433 F. Supp. 812 (N.D. Ill. 1977) ......................................................................... 5, 11

*Krikorian v. Dep't of State,*
   984 F.2d 461 (D.C. Cir. 1993) ................................................................................... 7

*Maydak v. U.S. Dep't of Justice,*
    254 F. Supp. 2d 23 (D.D.C. 2003)................................................................7

*McGehee v. Cent. Intelligence Agency,*
    697 F.2d 1095 (D.C. Cir. 1983)..............................................................16

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977)................................................................12

*Rosenfeld v. U.S. Dep't of Justice,*
    57 F.3d 803 (9th Cir. 1995).....................................................................10

*Schwaner v. Dep't of the Air Force,*
    898 F.2d 793 (D.C. Cir. 1990)...................................................................5

*Stern v. Fed. Bureau of Investigation,*
    737 F.2d 84 (D.C. Cir. 1984).....................................................................4

*Stolt-Nielsen S.A. v. Celanese AG,*
    430 F.3d 567 (2d Cir. 2005) .....................................................................9

*Trans-Pacific Policing Agreement v. U.S. Customs Serv.,*
    177 F.3d 1022 (D.C. Cir. 1999).................................................................4

*Tarpley v. Greene,*
    684 F.2d 1 (D.C. Cir. 1982).....................................................................15

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973)...................................................................4

*Voinche v. Fed. Bureau of Investigation,*
    46 F. Supp. 2d 26 (D.D.C. 1999)............................................................10

*Warren v. Soc. Sec. Admin.,*
    No. 98-CV-0016E, 2000 WL 1209383 (W.D.N.Y. Aug. 22, 2000) ...................7

## STATUTES

5 U.S.C. § 552 .....................................................................................*passim*

Fed. R. Civ. P. 56..................................................................................16

The Antitrust Criminal Penalty Enhancement and Reform Act of 2004,
    15 U.S.C. § 4301 (2004)...........................................................................1

<u>OTHER</u>

1974 U.S.C.C.A.N. 6267 ..................................................................................................10

Local Rule 7(h) ...............................................................................................................14

Local Rule 56.1................................................................................................................14, 15

S. Rep. No. 93-1200 .........................................................................................................10

## INTRODUCTION

The Antitrust Division's opposition to Stolt-Nielsen's motion for partial summary judgment provides no justification for withholding the texts of some 100 amnesty agreements (ATFY06-002). Scott D. Hammond, the Deputy Assistant Attorney General for Criminal Enforcement of the Antitrust Division submitted a sworn declaration that stressed the importance of confidentiality of the identity of amnesty applicants for the Division's Corporate Leniency Program. *See* Hammond Decl. ¶¶ 9-11. Mr. Hammond's declaration, however, is contradicted by his *own speeches* that publicly disclose the identity of no fewer than six amnesty applicants. *See, e.g.*, Stolt-Nielsen's Opposition To Defendant's Motion For Summary Judgment (the "Stolt-Nielsen Opposition") 8-9; Declaration of Lucius B. Lau, September 27, 2006 ("September Lau Decl.") Exs. 28 (Aventis S.A.), 29-30 (The Carbide/Graphite Group Inc.), 31 (Cromption Corp. and Odfjell Seachem AS), 32-35 (Rhone Poulenc S.A.). Mr. Hammond's conclusory declaration is also refuted by some *twenty companies* that have already publicly *disclosed* their *own* participation in the Division's amnesty program. *See, e.g.*, Stolt-Nielsen Opposition 4-7; September Lau Decl. Exs. 3-27.

Such amnesty self-disclosure is no surprise in light of Congress's decision to de-treble Sherman Act damages for amnesty firms. De-trebling gives huge monetary incentives for amnesty applicants involved in civil lawsuits to disclose to the plaintiffs, the Court—and, hence, the public—that they have amnesty agreements with the Division. *See* The Antitrust Criminal Penalty Enhancement and Reform Act, 15 U.S.C. § 4301 (2004); *see also* Scott D. Hammond, An Overview Of Recent Developments In The Antitrust Division's Criminal Enforcement Program, Address Before the American Bar Association Midwinter Leadership Meeting, Jan. 10, 2005 (Declaration of Lucius B. Lau, October 27, 2006 ("October Lau Decl.") Ex. 2) at 11. Because this statute applies retroactively, its benefits are available to past amnesty applicants that

have already revealed their status to the public to avail themselves of de-trebling. *See, e.g.*, September Lau Decl. Ex. 6 (Marsulex, Inc.'s and Chemtrade Logistics (U.S.), Inc.'s Memorandum of Law in Support of Their Agreed Motion for a Finding of "Satisfactory Cooperation" and Limitation of Damages Pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004) at 1. Coupled with the ability to redact the identity of the remaining firms, the texts of these agreements should be released immediately.

The Court should also order the Antitrust Division to immediately release communications it has had with plaintiff's attorneys in litigation against Stolt-Nielsen. According to the *Vaughn* indices, the Antitrust Division is withholding approximately 700 pages of documents relating to communications with private claimants' counsel (151 pages pertaining to David Golub, *et al.* and 526 pages pertaining to Hector Torres, *et al.*). The Division's main argument is that it may withhold this information because Mr. Golub and Mr. Torres are (or represent) "confidential informants." It is an oxymoron, however, for the Division to claim that these individuals are confidential when Stolt-Nielsen has already identified them by name. In any event, the Antitrust Division has never established that these individuals provided information with either an express or implied assurance of confidentiality. *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).

## ARGUMENT

### I.    The Antitrust Division's Arguments Are Unpersuasive

#### A.    Amnesty Agreements (Request No. ATFY06-002)

Most of the arguments raised by the Antitrust Division appeared in its motion for summary judgment—those arguments were fully addressed at pages 3 through 18 of the Stolt-Nielsen Opposition. Stolt-Nielsen incorporates those arguments by reference. The Antitrust Division makes several new arguments, all of which are readily rejected.

*First*, the government characterizes Stolt-Nielsen's FOIA request for amnesty agreements as "unprecedented" (Def.'s Br. at 12), as if to suggest that there is no public interest in these agreements. This is incorrect. The national publication *Business Week* has made a FOIA request seeking *all* Antitrust Division amnesty agreements. *See* Letter from Lorraine Woellert of *Business Week* to Ann Lea Richards, Oct. 18, 2006 (October Lau Decl. Ex. 4). The Voluntary Trade Council, a nonprofit research and educational organization, has also applied for an amnesty agreement through FOIA. *See* Letter from S.M. Oliva to Ann Lea Richards, June 30, 2005 (October Lau Decl. Ex. 3).

*Second*, the Antitrust Division notes that, in response to Stolt-Nielsen's request for amnesty agreements, it produced a copy of Stolt-Nielsen's amnesty agreement, "which became a matter of public record in its leniency litigation in the Eastern District of Pennsylvania." Def.'s Br. at 13. The Division fails to mention, of course, that the Stolt-Nielsen amnesty agreement became public because *the Division moved to unseal the records in that case.* *See* Government's Motion to Unseal, May 13, 2004 (October Lau Decl. Ex. 5).

*Third*, the Antitrust Division mischaracterizes this request as "a demand for the Division to open its leniency files to Stolt-Nielsen." Def.'s Br. at 13. Stolt-Nielsen's request, however, seeks only the *texts* of the final, signed amnesty agreements. It does *not* seek drafts, other correspondence between the Antitrust Division and amnesty applicants, internal Division files, or any other records or information concerning the Division's amnesty program for these 100 applicants.

*Fourth*, the Government's throw-away assertion that this request is disguised discovery (Def.'s Br. at 13) obscures the fact that there is a great public interest in the Amnesty Program, as the Division's own speeches and Answer in action concede. *See* Answer at p. 10 ("The facts

which led to the only revocation in the history of the Corporate Leniency Program were of very high interest to the antitrust bar in advising their clients as to whether to seek leniency"). In addition to other organizations seeking the texts of these agreements, "Congress enacted FOIA for the purpose of introducing transparency to government activities." *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. Civ. A. 04-1724, 2006 WL 696053, at *6 (D.D.C. Mar. 20, 2006) (citing *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984)).

The Antitrust Division touts the "transparency" of its Leniency Program to the bar. *See, e.g.*, Thomas O. Barnett, Asst. Attorney Gen., Antitrust Div., U.S.D.O.J., Criminal Enforcement of Antitrust Laws: The U.S. Model, Address Before the Fordham Competition Law Institute's Annual Conference on International Antitrust Law and Policy, Sept. 14, 2006, at 5 (October Lau Decl. Ex. 6); September Lau Decl. Exs. 29 at 1, 33 at 7; Declaration of Lucius B. Lau, May 12, 2006 ("May Lau Decl."), Ex. 9 at 2. As explained later in this Reply, numerous articles have been written about Stolt-Nielsen's struggles to retain its amnesty.

The cases cited by the Antitrust Division are not to the contrary. *Barney v. IRS*, 618 F.2d 1268, 1272-74 (8th Cir. 1980), is an Eighth Circuit case in which the court (1) refused to follow this Circuit's mandate in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), requiring the government to produce a *Vaughn* Index; (2) made no determination on whether the withheld documents were segregable; and (3) ruled that disclosure of the requested documents would damage the government's case. This Eighth Circuit case is inapplicable here because (1) much of the requested information is already public, and therefore there is no basis for the argument that releasing this information could harm the government's case; and (2) the law of this Circuit requires a segregability analysis. *See Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999) ("It has long been a rule in this Circuit that nonexempt

portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). In *Kanter v. IRS*, 433 F. Supp. 812 (N.D. Ill. 1977), despite the government's argument that the information sought by the plaintiffs "would give the plaintiffs access to virtually the entire Government's case against them," the Court found the government's response to the FOIA requests were inadequate and required the government to submit a detailed verified index for *in camera* inspection. *Id.* at 814, 824-25.

*Fifth*, the government's recital of excerpts from the Hammond Declaration in its opposition pleading does not make those statements more relevant or make the level of proof required to prove the claimed FOIA exemptions less stringent (or satisfied). *See* Def.'s Br. at 14-17. As explained in the Stolt-Nielsen Opposition, no fewer than *twenty applicants* have publicly announced their participation in the Program. *See* Stolt-Nielsen Opposition 4-8. The 2004 legislation guarantees that amnesty applicants will reveal their identities. Releasing the texts of their amnesty agreements implicates no confidentiality concerns. As for the other eighty or so agreements, redacting the names of the amnesty applicants as well as their respective industries eliminates those same concerns.

*Sixth*, Stolt-Nielsen demonstrated in the Stolt-Nielsen Opposition why Exemptions (b)(2) (matters related solely to the internal personnel rules and practices of an agency) and (b)(5) (inter-agency or intra-agency memoranda) are manifestly inapplicable to the amnesty agreements—which are between companies and the Division. Stolt-Nielsen Opposition 13-16. Although the government's opposition does not add any more factual detail to meet its burden, specific responses to its opposition are as follows:

- The opposition provides no facts or argument as to how agreements between the Division and third-parties satisfy the "predominant internality" test. *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990);

- The opposition provides no facts or argument, beyond merely parroting the legal standard, as to how releasing amnesty agreements would aid individuals in evading the law where such agreements (1) are *already in the public domain*; or (2) have been redacted to eliminate the applicant's name and industry. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1066 (D.C. Cir. 1981). Even taking the government's assertions as true, "diminish[ing] confidence in the confidentiality of the leniency program and imped[ing] the effectiveness of that program" (Def.'s Br. at 17) do not amount to the evasions of law contemplated by this exemption; and

- The opposition provides no additional facts to show how companies such as Crompton Corporation and Rhone-Poulenc SA would qualify as "consultants" to the Division under the "consultant corollary" to Exemption 5's "efficient governmental operations privilege," when those companies are admitted law-breakers taking advantage of the Amnesty Program for their own self-interest.

*Seventh*, the government mischaracterizes the record regarding its response to this request. The government states that the Amended 2006 *Vaughn* index and the Richards declaration provide "detailed justifications for the withheld records" and that the Amended 2006 *Vaughn* index "lists, along with the detailed justifications, each specific document that was redacted or withheld under Federal Rule of Criminal Procedure 6(e) for request ATFY06-002." Def.'s Br. at 19. That is incorrect. As explained in the Stolt-Nielsen Opposition, the Amended 2006 *Vaughn* index is wholly inadequate for claiming any exemption, including Rule 6(e). Stolt-Nielsen Opposition 12, 29-32, Ex. 5. For example, the last three entries of the Amended 2006 *Vaughn* index purport to justify withholding all of the approximately 100 amnesty agreements in the Division's possession. Yet, it is impossible to tell from these entries even how many documents they cover. The information in the "justifications" column is cut-and-pasted from one entry to the others. There is no "detailed justification" for "each specific document" withheld. The agreements are simply grouped together in three separate entries. Such aggregation is improper and falls far short of satisfying the requirements of *Vaughn v. Rosen* and its progeny.

*Eighth*, the Antitrust Division cites *Warren v. Soc. Sec. Admin.*, No. 98-CV-0116E, 2000 WL 1209383, at *5 (W.D.N.Y. Aug. 22, 2000), for the proposition that releasing the amnesty agreements in redacted form is not required when the redacted documents would amount to "little more than templates." Def.'s Br. at 19-20. That case does not apply here. In *Warren*, the Court stated that "if the purpose served by releasing the records in full is no longer served when names or other identifying information are redacted, then the agency should not be forced to release the records at all." *Warren*, 2000 WL 1209383, at *5. In this case, the release of redacted amnesty agreements will provide valuable information to the public as to the frequency with which the Division departs from the language in the Model Amnesty Agreement—a key issue in trial testimony unsealed at the Division's insistence. *See* October Lau Decl. Ex. 23 at JA572-576 (testimony of Mr. Griffin about the differences in another amnesty agreement as contrasted with the language of the Stolt-Nielsen amnesty agreement). The antitrust bar and business press such as *Business Week* have an interest to see what deviations from the model letter the Division has used over the course of the program and in the Stolt-Nielsen case.

*Ninth*, the government's reiteration of assertions from the Richards declaration does not assist this Court in determining whether the Division conducted a satisfactory segregability analysis. *See, e.g., Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (holding that to make the required showing that exempt and nonexempt information is inextricably intertwined, the agency must provide "a relatively detailed description" of the withheld documents); *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 40 (D.D.C. 2003) (holding that the general statement that "each document" was reviewed to determine segregability and "that no further release of meaningful information can be made" is insufficient).

*Finally*, the baseless confidentiality concerns identified by the Antitrust Division simply have no weight in light of Stolt-Nielsen's willingness to receive the amnesty agreements without any identifying information.  As stated by Stolt-Nielsen when it originally requested these agreements, "[i]n an effort to expedite response to this matter and protect any arguably confidential information regarding the identity of companies or individuals, SNTG will accept such documents with the names and identities of the relevant companies or individuals redacted." September Lau Decl. Ex. 37.  Such redaction, of course, would not be necessary for the twenty companies whose participation in the amnesty program is already a fact of public record.

**B.    The Division's Correspondence With Plaintiffs' Attorneys (Request Nos. ATFY06-003 and ATFY06-040)**

The Stolt-Nielsen Opposition provided detailed arguments as to why the Antitrust Division failed to establish that some 700 pages of communications with plaintiffs' attorneys is covered by Exemptions (b)(5), 7(A), 7(C) and 7(D).  Stolt-Nielsen Opposition 19-24; Ex. 5 at 19-22, 33-39.

The Antitrust Division principally relies on Exemption 7(D) (law enforcement records that could reasonably be expected to disclose the identity of a confidential source) to justify its failure to produce some 700 pages of communications with plaintiff's attorneys.  This exemption is wholly inapplicable because the fact of these attorneys' representation of their respective clients and their clients' identities are a matter of public record.

Much of the communications are with David Golub, attorney of record in the employment lawsuit brought by Stolt-Nielsen's former General Counsel Paul E. O'Brien.  *See* Amended Complaint, *Paul E. O'Brien v. Stolt-Nielsen Transportation Group Ltd.*, D.N. CV 02-0190051 S (Conn. Super. Ct. Nov. 1, 2002) (October Lau Decl. Ex. 1) (listing David Golub as counsel for Paul O'Brien).  The Antitrust Division's Answer in this FOIA action claims that it

8

opened its investigation based on a *Wall Street Journal* article describing the O'Brien employment suit:

> Defendant admits that Paul E. O'Brien, former General Counsel and Senior Vice-President, Projects, for Stolt-Nielsen filed suit in June 2002 against Stolt-Nielsen claiming he was constructively discharged from the company. In November 2002, O'Brien amended his complaint . . . . On November 22, 2002, the Wall Street Journal published an article about O'Brien's suit and his allegation that Stolt-Nielsen had been engaged in "illegal antitrust activities" . . . .

Mr. Hammond has given public speeches regarding the role of Paul O'Brien, the former General Counsel for Stolt-Nielsen, in the start of the parcel tanker investigation. *See, e.g.,* Answer at 10. James Griffin, the then-Deputy Assistant Attorney General, testified in the 2004 trial in the Eastern District of Pennsylvania that the November 22, 2002 *Wall Street Journal* article was based on Mr. O'Brien's civil suit. *See* September Lau Decl. Ex. 39 at JA398-399. Mr. Griffin also testified regarding Mr. O'Brien's state court complaint. *See* October Lau Decl. Ex. 23 at JA591-593; *see also* Answer at 2. Finally, the Antitrust Division moved to unseal all of this testimony concerning Mr. O'Brien and his involvement in the opening of the parcel tanker industry investigation. *See* October Lau Decl. Ex. 5.

Similarly, the fact of Hector Torres' representation as counsel for claimants in a private damages lawsuit involving one of Stolt-Nielsen's competitors in the parcel tanker industry is also a matter of public record. *See Stolt-Nielsen S.A. v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005) (listing Mr. Torres as counsel for appellee, Celanese AG). The FOIA confidential informant exemption presupposes that the informant's identity is confidential. That is not the case here.

Strikingly, Deputy Assistant Attorney General Hammond is silent about the Division's communications with these plaintiff's lawyers and thus makes no factual claim on which the Antitrust Division could meet its burden on a confidential informant exemption.

It is, of course, the government's burden to demonstrate that Exemption 7(D) applies. The government has not done so. Although the government is correct that it must establish "a rational nexus" between enforcement of a federal law and the document for which this exemption is claimed (Def.'s Br. at 25), that is only the "threshold requirement" for all exemptions under 5 U.S.C. § 552(b)(7). *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995); *accord Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005). Pursuant to Exemption 7(D), the government must *also* prove that the confidential source "spoke with an understanding that the communication would remain confidential." *Rosenfeld*, 57 F.3d at 814 (quoting *Landano*, 508 U.S. at 172); *see also Landano*, 508 U.S. at 172 ("a source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred'" (quoting S. Rep. No. 93-1200, at 13, *reprinted in* 1974 U.S.C.C.A.N. 6267, 6291)). The Division has submitted no testimony about the circumstances of these communications. Nowhere in its pleadings, declarations or *Vaughn* indexes does the government explain under what circumstances this allegedly "confidential information" was shared to carry this burden. *See, e.g.*, *Voinche v. FBI*, 46 F. Supp. 2d 26, 34 (D.D.C. 1999) ("To properly invoke Exemption 7(D), however, the FBI must present more than the conclusory statement of an agent that is not familiar with the informant.").

Concerning Exemption (b)(5) (inter-agency or intra-agency memoranda or letters), Stolt-Nielsen has identified specific documents for which the government has not provided sufficient facts to justify withholding information. *Id.* Ex. 5 at 19-22, 33-39.

Concerning Exemption 7 generally (records compiled for law enforcement purposes), Stolt-Nielsen has already demonstrated that the Antitrust Division has failed to provide any *facts*

to show that the withheld documents could reasonably be expected to interfere with a concrete, prospective law enforcement proceeding.   Stolt-Nielsen Opposition 22-24.   In light of that failure, the Antitrust Division may not rely upon Exemption 7 as an excuse to withhold documents. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1999) (holding that an agency's affidavit "'will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if [it is] too vague or sweeping'" (quoting *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979))); *see also Kanter*, 433 F. Supp. at 822-23 (holding that, to invoke Exemption 7(A), affidavits attempting "to depict the anticipated interference which release of withheld materials would engender" by merely providing a laundry list of government concerns is insufficient, and that "if the court is to hazard a guess as to the connection between the evils anticipated by the government and the documents in dispute, it must have a much clearer understanding of the contents of these documents").

With respect to Exemption 7(C) (records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy), the government's opposition adds no new *facts* to defend the deficient Amended 2006 *Vaughn* index and accompanying declarations as to why the release of information would be a clearly unwarranted invasion of person privacy.   Again, facts—not unsupported conclusions— are needed to successfully meet its burden for Exemption 7.   *See Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 232 (1st Cir. 1994) (rejecting the government's argument that privacy concerns warrant withholding an entire document and stating that the government must provide more than unsupported conclusions to justify withholding entire documents based on this exemption).

11

**C.     Speeches Made By Antitrust Division Officials About Stolt-Nielsen (Request Nos. ATFY06-019 and ATFY06-038)**

Exhibit 5 to the Stolt-Nielsen Opposition provides detailed arguments explaining the government failed to adequately prove that withheld speeches and speech-related information are covered by Exemptions (b)(5) and 7(A).   Stolt-Nielsen Opposition Ex. 5 at 23-32.   The arguments contained in that exhibit are summarized as follows:

- **Inadequate *Vaughn* Index:**   Stolt-Nielsen lists eighteen specific documents for which the Amended 2006 *Vaughn* index is inadequate. *Id.*;

- **Failure To Segregate:**  Faults as to the government's segregability analysis for these documents as well as many other documents are detailed in the Stolt-Nielsen Opposition. *Id.* 27-29; *see also Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260-61 (D.C. Cir. 1977) (holding that the Air Force "must provide a more detailed justification than the conclusory statements it has offered to date" and "[i]n addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document"). Neither (1) the Amended 2006 *Vaughn* index; (2) its accompanying declarations; nor (3) the parroted language in the government's opposition provides more than conclusory statements of legal standards.  In fact, the Division (1) fails to address Stolt-Nielsen's argument that this privilege does not apply to purely factual matters; and (2) does not describe the extent to which factual material was "inextricably intertwined" with alleged privileged material. *See* Pl.'s Mot. Partial Summ. J. 9.   Therefore, this Court should require the government to prove that it segregated all non-exemptible information;

- **Improper Invocation Of Attorney Work-Product Doctrine:**   Merely labeling information as "reflecting attorneys' thoughts and opinions" (as the Division does) is insufficient to prove Exemption 5 applies. *See Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978), *abrogated on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1053 (D.C. Cir. 1981).  This is especially true regarding information the government describes as "about what to include in Division speeches," when there has been no showing that that information is pre-decisional or antecedent to the adoption of agency policy. *Id.*; and

- **Improper Redaction Of Factual Material:**   Exhibit 5 to the Stolt-Nielsen Opposition identifies eighteen specific documents that were either withheld or redacted improperly due to the presence of factual material. Stolt-Nielsen Opposition Ex. 5 at 23-32.

One argument made by the Antitrust Division warrants particularly close scrutiny.

According to the Division, it publicly commented upon Stolt-Nielsen "*for the guidance of the*

***antitrust bar in the continued use of the Division's leniency program.***"  Def.'s Br. at 4 (emphasis added).  Such a position, however, stands in stark contrast to the Antitrust Division's own Manual, which contains specific instructions for public, out-of-court statements regarding ongoing investigations:

<u>Press Inquiries and Comments to the Press</u>

It is the policy of the Department of Justice and the Antitrust Division that public out-of-court statements regarding investigations, indictments, ongoing litigation, and other activities ***should be minimal***, consistent with the Department's responsibility to keep the public informed.

Antitrust Division Manual, Sec. VII.H.2 (emphasis added) (October Lau Decl. Ex. 7).  Because "Congress enacted FOIA for the purpose of introducing transparency to government activities," the public has a strong interest in information regarding the Division's reasons from departing from its manual.  *Hornbeck Offshore Transp.*, 2006 WL 696053, at *6; *see also* September Lau Decl. Ex. 31 n.8 ("For example, in the Division's parcel tanker investigation, Odfjell received a 30% discount off the bottom of its minimum Guidelines sentence.  Odfjell contacted the Division to offer its cooperation the day after the investigation went overt.").

The Antitrust Division cannot have it both ways.  On one hand, its professed policy (as expressed in its manual) is to make only "minimal" out-of-court statements regarding its investigations.  On the other hand, the Antitrust Division has made ***extensive*** out-of-court statements concerning its investigation of Stolt-Nielsen and the parcel tanker industry.  Yet, before this Court, the Antitrust Division has made several strained arguments to withhold supposedly exempt material.  The Court should not allow the Antitrust Division to manipulate FOIA in order to make selective (and slanted) public statements about Stolt-Nielsen.

**II.    There Is A Strong Public Interest In The Information Sought By Stolt-Nielsen**

The Antitrust Division also argues in its brief that Stolt-Nielsen is utilizing its FOIA requests as a subterfuge for discovery. Def.'s Br. at 10. Such a position ignores the fact that there is intense public interest in the Antitrust Division's amnesty program and the other information Stolt-Nielsen is seeking with its FOIA requests. *See, e.g.*, Plaintiff's Reply In Support Of Its Motion For Summary Judgment (Civil Action No. 05CV2217 (RJL)) 13-16.

**III.    The Division's Statement Of Genuine Disputed Issues In Response To Plaintiff's Statement Of Undisputed Facts Is Faulty**

Finally, the Court should deem as admitted the factual assertions contained in Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Dispute ("Stolt-Nielsen's Statement of Facts") and disregard Defendant's Statement Of Genuine Disputed Issues In Response To Plaintiff's Statement of Dispute Facts ("Division's Statement Of Genuine Disputed Issues") because the Division's Statement Of Genuine Disputed Issues does not comply with this Court's Local Rules.

In pertinent part, Local Rules 7(h) and 56.1 state as follows:

An opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.

"The procedure contemplated by the [local] rule . . . isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record." *Gardels v. Cent. Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980). The Antitrust Division has failed to comply with this rule in several ways.

***First***, the Antitrust Division has failed to respond to the factual assertions contained in paragraphs 1 through 24 of Stolt-Nielsen's Statement of Facts. "The Court is entitled to treat as

admitted those facts identified in the moving party's statement and not controverted in that of the nonmovant." *Black v. Tomlinson*, 425 F. Supp. 2d 101, 107 (D.D.C. 2006) (citing Local Civ. R. 56.1).  Because the Antitrust Division failed to controvert the factual assertions contained in paragraphs 1 through 24 of Stolt-Nielsen's Statement of Facts, the Court should deem those facts as admitted.

*Second*, the Antitrust Division does not set forth "material facts" as to which it contends there is a "genuine issue necessary to be litigated."  Rather, the Antitrust Division appears to repeat many of the assertions made in its Statement of Facts Not In Dispute ("Division's Statement of Facts").  *Compare* Division's Statement of Facts at ¶ 39 ("the defendant complied in full with the reasonable segregation requirement of the Act") *with* Division's Statement Of Genuine Disputed Issues at ¶ 2 ("The Division expressly considered the segregability of each document").

*Third*, many of the assertions are made with no citation to facts in the record.  *See, e.g.,* Division's Statement Of Genuine Disputed Issues ¶¶ 1, 4, 6, 8, 10, 12-14, 24-29, 31-33.  These paragraphs fail as a matter of law.  *See Tarpley v. Greene*, 684 F.2d 1, 7 (D.C. Cir. 1982) (affirming the grant of summary judgment and observing that the nonmoving party had not "cite[d] any record evidence" and in his statement of genuine factual issues "did not set forth specific, material facts, but simply asserted, without citing evidence in the record, that there was a disputed issue").

*Fourth*, the Division's Statement Of Genuine Disputed Issues also includes denials of Stolt-Nielsen's *legal conclusions.  See* Division's Statement Of Genuine Disputed Issues ¶¶ 1, 8-10, 12, 14, 15, 23, 26, 28-35.  This is also inadequate.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (in opposing a motion for summary judgment, the adverse party "may not

rest upon the mere allegations or denials of [the adverse party's] pleading, but 'by affidavits or as otherwise provided in this rule,' must set forth specific facts showing that there is a genuine issue for trial" (quoting Fed. R. Civ. P. 56(e)).

Because the Division's Statement Of Genuine Disputed Issues does not comply with Local Rules 7(h) or 56.1, it should be disregarded in its entirety.

## IV.    The Antitrust Division's 16-Month Delay Is Inexcusable

Stolt-Nielsen made its first requests for information through FOIA on June 2, 2005. Now, nearly seventeen months later, the Antitrust Division continues to wrongfully withhold reams of information responsive to Stolt-Nielsen's requests. At each juncture, the Antitrust Division has delayed, obfuscated, and stonewalled Stolt-Nielsen in its search for information. This is wholly improper. *See McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1101 n.18 (D.C. Cir. 1983) ("The [FOIA] statute is plainly written so as to disfavor any effort by agency officials to shirk their responsibilities to respond promptly and fully to requests for records."); *see also* 5 U.S.C. § 552(a)(3) ("[E]ach agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, ***shall make the records promptly available to any person***." (emphasis added)). The Antitrust Division should not be allowed to delay any further and this Court should order it to produce this information post haste. *See McGehee*, 697 F.2d at 1114 ("The Freedom of Information Act nevertheless imposes on the courts the responsibility to ensure that agencies comply with their obligation to 'make . . . records promptly available to any person' who requests them unless a refusal to do so is justified by one of the Act's specific, exclusive exemptions. Especially where, as here, an agency's

responses to a request for information have been tardy and grudging, courts should be sure they do not abdicate their own duty." (citation omitted)).

* * *

The FOIA is designed to achieve transparency.  The Antitrust Division, despite the lip service its speeches pay to transparency, has made its amnesty program opaque.  Relying upon Orwellian doublespeak and foot-dragging, it has thwarted the public purpose of FOIA.

CONCLUSION

For these reasons, the Court should grant Stolt-Nielsen's motion for partial summary judgment.

Dated:  October 27, 2006

Respectfully submitted,

WHITE & CASE LLP

By: _____

J. Mark Gidley (D.C. Bar No. 417280)
Christopher M. Curran (D.C. Bar No. 408561)
Lucius B. Lau (D.C. Bar No. 446088)
701 Thirteenth St., N.W.
Washington, D.C.  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Stolt-Nielsen Transportation Group Ltd.*