# Exhibit 11

Case 1:06-cv-00474-RJL     Document 39-13     Filed 10/27/2006     Page 1 of 4

# Feds' Power To Renege on Immunity May Be Tested in U.S. Supreme Court

Lisa Brennan
October, 16 2006
New Jersey Law Journal

A Third Circuit case at the door of the U.S. Supreme Court will test the federal government's power to revoke immunity from prosecution granted to antitrust violators who agree to rat on their rivals.

During an Oct. 27 conference, the Court will decide whether to hear *Stolt-Nielsen, S.A. v. U.S.*, 06-97, which would test whether a court can enjoin the Justice Department's Antitrust Division from withdrawing immunity promised under its Corporate Leniency Program.

The case piques the interest of not only antitrust lawyers but also white-collar criminal defense attorneys, because the lifting of immunity means that all items of evidence a cooperating company has willingly handed over can become weapons in the government's arsenal.

"*Stolt* could have broad implications in every instance in which the government promises a benefit to a defendant in exchange for cooperation," says Alison Smith, a former Antitrust Division lawyer now at Haynes & Boone in Houston. "A corporation considering applying for immunity must now question whether the evidence it provides to the government will simply be used against it."

Smith says an eventual ruling by the Court "could clarify the nature and extent of the defendants' constitutional rights in these agreements" and "could determine the limits of the government's ability to revoke agreements unilaterally, and the power of the courts to restrain the government's decision to prosecute."

Demonstrating the gravity of the case, no fewer than nine amici curiae have filed briefs supporting the petition for certiorari. One of them is the Association of Corporate Counsel, led by senior vice president and general counsel Susan Hackett. "The impact on my members is their concern that they can no longer make rational decisions that would suggest predictable results," she says.

Under the Corporate Leniency Program, companies that first report illegal antitrust activity can get immunity from indictment and prosecution. In exchange, they must incriminate themselves, turn over key documents, waive attorney-client privilege and fully cooperate with prosecutors seeking to convict their competitors. Companies that wait receive lesser degrees of leniency, similar to deferred prosecution agreements or single-count guilty pleas common in other corporate crime cases.

Since it was instituted in 1993, the program has been a strong magnet for cartel cases, attracting more than 100 applicants and generating $2 billion in fines, according to a former federal prosecutor, Donald Baker of Washington, D.C.'s Baker & Miller.

But the Antitrust Division's action in *Stolt* will cause some second-guessing among would-be participants. "If you're going to disclose what you did in exchange for leniency, and then the government turns around and pulls your ticket, it will have a potential chilling effect in all of these cases," says defense lawyer Michael Himmel, of Roseland's Lowenstein Sandler. "Corporations will have to think long and hard about coming forward for fear of being bitten."

The parties in the case are London-based shipping company Stolt-Nielsen, S.A. and two executives, who were indicted Sept. 6 for antitrust violations. A federal judge enjoined the indictment last year, but the Third U.S. Circuit Court of Appeals reversed on March 24.

In that ruling, a two-judge panel said a district court judge has no power to enjoin prosecutors from filing an indictment because the equitable powers of the court do not exist when there is "an adequate and complete remedy at law." That remedy is to raise the immunity agreement as a defense after indictment, the court said.

U.S. District Judge Timothy Savage in Philadelphia, who decided the case below in January 2005, recited that Stolt had entered into the Antitrust Division's program and had provided information about a price-fixing and bid-rigging conspiracy that led to guilty pleas from two co-conspirators and more than $62 million in fines. Because the company had fulfilled its obligations under an immunity agreement, Stolt was entitled to an injunction barring the filing of an indictment, Savage held.

Prosecutors had argued that Stolt misled the government by claiming that its participation in the antitrust conspiracy had ceased in March 2002, but Savage found the government had explicitly immunized the company and its executives from prosecution for activity prior to Jan. 15, 2003.

Because the government drafted the agreement, it "cannot depend upon a tacit understanding of what it contends was meant during negotiations but was not memorialized in the integrated agreement," Savage said.

Savage concluded that the only way to protect the company's and its executives' due process rights was to decide, prior to indictment, whether the government could void the agreement.

The Third Circuit disagreed, finding the trial court's ruling not only ultra vires but also violative of separation of powers. U.S. Circuit Judge Thomas Ambro said the appeal presented "a significant constitutional question of first impression in this circuit: whether federal courts have authority, consistent with the separation of powers, to enjoin the executive branch from filing an indictment."

Although federal courts have such authority "in narrow circumstances, . . . this is not such a case," wrote Ambro, joined by visiting U.S. Court of International Trade Judge Jane Restani. (Judge Samuel Alito Jr. was on the three-judge panel when the case was argued in September 2005 but did not participate in the ruling due to his elevation to the U.S. Supreme Court.)

According to court papers, Stolt admitted to participating in an international conspiracy to allocate customers, rig bids and fix prices on parcel tanker affreightment contracts for the shipment of specialty liquids to and from the United States and elsewhere.

On the basis of information Stolt provided, the government filed criminal charges and secured guilty pleas from two co-conspirators - Odfjell Seachem of Norway and Jo Tankers B.V., which is based in the Netherlands.

Odfjell Seachem agreed to pay a $42.5 million fine and Jo Tankers agreed to pay a $19.5 million fine. Two Odfjell executives and three Jo Tankers executives also entered guilty pleas. All five were sentenced to prison terms in the range of three to four months and paid fines totaling more than $600,000.

In April 2003, the Justice Department suspended Stolt's participation in the program on the grounds that it allegedly did not withdraw from the conspiracy in March 2002, as it had claimed, but had continued its illegal activity into the second half of 2002.

In June 2003, Stolt executive Richard Wingfield was arrested and charged with participating in the conspiracy to allocate customers, fixing prices and rigging bids between March 2001 and October 2002.

Under threat of indictment, Stolt filed suit in February 2004, seeking enforcement of its rights

under the agreement. Wingfield's suit followed.

In March 2004, the Justice Department formally revoked Stolt's conditional leniency and notified the company that it intended to seek an indictment.

Although the Court on the average grants only one out of 70 petitions for certiorari, bulking up with amici improves the odds. Of the 27,000 cert petitions filed over three terms from 2002 to 2004, only six cases had as many as nine amici, and cert was granted in three of them.

The other amici supporting Stolt's petition are the National Association of Manufacturers, the National Association of Criminal Defense Lawyers, the Chamber of Commerce of the United States, the Washington Legal Foundation, the New York Council of Defense Lawyers, the New England Legal Foundation, the International Association of Independent Tanker Owners and the Grand Duchy of Luxembourg.