# Exhibit 17



# Criminal Practice and Procedure Committee

### ANTITRUST LAW

August 2006/No. 35

## Message from the Chair
### by James M. Griffin

The Criminal Practice and Procedure Committee is pleased to publish its Newsletter for 2006. The last 12 months have witnessed a number of substantial developments that affect the practice of criminal antitrust law. The Sentencing Commission issued new guidelines for the imposition of jail sentences in antitrust cases that provide for the imposition of increased jail sentences in accordance with the new Sherman Act maximum sentences introduced in the Antitrust Criminal Penalty Enhancement and Reform Act of 2004. The Court of Appeals for the Third Circuit reversed the District Court's decision in the *Stolt-Nielsen* case restoring the Antitrust Division's authority to revoke conditional leniency and indict a company that allegedly misrepresents that it has complied with the prerequisites for leniency and fails to cooperate fully with the Division's investigation. The potentially first ever extradition of a foreign citizen to the US to face antitrust charges inched closer to becoming a reality as courts and government agencies in England issued rulings supporting the Division's request that Ian Norris, a United Kingdom citizen, be sent to the US to face a number of charges, including price fixing, resulting from his role in the carbon brushes antitrust investigation.

Continued →

### In This Issue

Chair's Message ................................................................................................................. 1

Recent Developments in Criminal Enforcement at the Antitrust Division ........................... 4

Antitrust Modernization Commission Considers Criminal Remedies .................................. 6

Stolt-Nielsen, S.A. v. United States: Raising the Risk in Pursuing Leniency ................... 15

New Federal "Victims' Rights" Statute Brings Antitrust Victims Into Courtroom ............... 19

The Antitrust Division's Practice of Publicly Naming
   Individual "Carve Outs" in Plea Agreements ............................................................... 23

Criminalising Cartel Conduct in Australia ......................................................................... 28

Survey of Recent Non-Antitrust Cases of Interest ........................................................... 34

| Section of Antitrust Law | American Bar Association |
|---|---|

Chair's Message continued . . .

The ever increasing and evolving cooperation among enforcement authorities in international cases was made evident once again with the coordinated searches and "drop-in" interviews in Europe, North America, and Asia in the air cargo services investigations in February. Penalties for cartel behavior continued to increase around the world and a number of jurisdictions, including Australia, took steps toward adopting criminal penalties in their efforts to punish and deter cartel conduct. In addition, the Antitrust Modernization Commission is reviewing a number of issues concerning criminal remedies in the U.S., the EC has adopted substantial changes to its fining practices, and the Canadian Competition Bureau has undertaken a major study of the structure and operation of its leniency policy.

The Newsletter reflects the breadth and scope of these developments with articles addressing virtually all of these issues and more. **Alison Smith** writes on the significance of the *Stolt-Nielsen* decision - what it resolved, what it left unresolved - and offers her views on what its significance may be for those seeking leniency in the future. **Bobby Burchfield** and **Richard Smith** summarize the Antitrust Modernization Commission's hearings on criminal remedies and **Scott Hammond**, the Deputy Assistant Attorney General for Criminal Enforcement, summarizes the recent developments in the Division's criminal enforcement program. **Nat Cousins** has written on the application of the new federal "victims' rights" legislation in antitrust cases and **Brigid Biermann** and **Kate Patchen** provide insight into the rationale behind the Division's practice of naming individual "carve outs" in publicly filed corporate plea agreements. Our colleague from "down under," **Bruce Lloyd**, brings us up to date with the pending criminalization of cartel conduct in Australia and on the revised and enhanced ACCC Immunity Policy. Finally, in an article that many of us have come to look forward to and rely on every year, Steve Squeri surveys and summarizes non-antitrust criminal cases that also are significant in the antitrust arena. The Newsletter was superbly edited by Committee vice chairs, **Kathy Beasley** and **Niall Lynch**.

The Committee had a very active year in 2005-2006. It presented three brown bag lunch programs, all of which were joint projects with other ABA entities or other Bar Associations. Our November 2005 program was jointly sponsored with the International Committee and focused on the developments in international cartel enforcement. Participants and panelists literally dialed-in from around the world. In May we co-sponsored a program with the Canadian Bar Association, which included senior enforcement officials from both the Antitrust Division and the Canadian Competition Bureau. The Committee also sponsored a panel on the state of global cartel enforcement 10-years after the ADM searches at the 2005 ABA annual meeting and a number of Committee members were involved in the planning and presentation of the Section's International Cartel Workshop program in London last February.

| Section of Antitrust Law | American Bar Association |
|---|---|

Chair's Message continued . . .

The Committee also was very active at the 2006 Spring Meeting. We co-sponsored, with the Sherman Act Section One Committee, "Dealing With The Civil Damage Liability Of A Corporate Amnesty Applicant And A Pleading Corporate Defendant In An International Cartel Investigation." In addition, the Committee presented a program on the future of cartel enforcement around the world. The panel discussed the impact of U.S. extradition efforts, *Stolt-Nielsen*, adoption of criminal antitrust provisions in Australia and elsewhere, and trends in leniency practices.

The Committee also published a completely revised edition of the **Criminal Antitrust Litigation Handbook** this year, which should be on every criminal antitrust lawyer's bookshelf. The Committee was also extremely busy this year preparing comments on cartel issues under consideration by various governmental authorities. We prepared and submitted comments to the U.S. Antitrust Law Modernization Commission on criminal remedies, to the European Commission on its draft amendment to the Commission's 2002 Notice on Immunity from Fines and Reduction of Fines in Cartel Cases, and to the Canadian Competition Bureau in response to its Consultation Paper on the Canadian Immunity Program Review.

The Criminal Practice and Procedure Committee will continue to pursue an active agenda during the 2006-2007 Section year, including sponsoring seminars, programs, brown bags, books, the newsletter, notices to members, through the list serve, on "breaking news" on issues relevant to the practice of criminal antitrust law, and special task forces to address emerging issues. We encourage members to participate in the exciting work of the Committee. If you are interested in participating, please contact one of the members of the Committee Leadership listed at the end of this Newsletter. Also, please inform your colleagues of the benefits of Committee membership and encourage them to join and participate.

I hope you find the Newsletter interesting, enjoyable, and beneficial.

Best Wishes,

Jim Griffin, Chair
Criminal Practice and Procedure Committee
Section of Antitrust Law
American Bar Association

| Section of Antitrust Law | American Bar Association |
|---|---|

[51] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No 108-237, § 215 (2004).

[52] Barnett Statement, Att. 1.

[53] Id.

[54] Smith Cmt., at 18 (emphasis in original).

[55] Hammond Statement, at 5.

[56] Transcript, at 55 (Hammond) ("any suggestion that [the Division] [takes] a wink at [prosecuting individuals] in our corporate plea agreements, or that we trade money for time is dead wrong."); Public Hearings Before the Antitrust Modernization Commission, at 88 (Barnett)(even if a corporate defendant proposed such a trade off, it "wouldn't get away with it").

[57] See, e.g., Comments of ABA Antitrust Section (June 30, 2006) at 17-21.

[58] See Public Deliberation of Antitrust Modernization Commission at 15 (remarks of Commissioner Kempf) 19-20 (remarks of Commissioner Burchfield), 35 (remarks of Commissioner Litvack).∎

## STOLTZ-NIELSEN, S.A. V. UNITED STATES: RAISING THE RISK IN PURSUING LENIENCY

*By Alison L. Smith\**

Adding uncertainty to the Department of Justice's antitrust leniency program, the Third Circuit Court of Appeals sided with the DOJ and held that federal courts lack authority to enjoin the DOJ from indicting a leniency applicant it had agreed not to prosecute. *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006). As the Third Circuit saw it, the applicant's sole recourse is to file a post-indictment motion to dismiss on the ground that the DOJ breached its promise.

*Stolt* concerned a common corporate leniency agreement, in which the DOJ conditionally accepted SNTG into its corporate leniency program and agreed:

> [N]ot to bring any criminal prosecution against SNTG for any act or offense it may have committed prior to the date of this letter in connection with the activity being reported. (emphasis added)

The agreement was subject to verification of SNTG's representation that it "took prompt and effective action to terminate its part in the activity being reported upon discovery of the activity."

SNTG thereafter cooperated with the DOJ's antitrust investigation, implicating itself and others in an alleged customer allocation agreement. Using SNTG's information, the DOJ secured guilty pleas from SNTG's co-conspirators, resulting in prison sentences for individuals and $62 million in fines.

Even so, SNTG did not get the promised pass from prosecution. In its ensuing investigation, the DOJ concluded that SNTG's participation in the conspiracy continued several months after the date that SNTG "discovered" it. Even though SNTG had terminated its participation when it sought and obtained conditional leniency, the DOJ suspended SNTG's cooperation obligations and announced plans to withdraw the grant of leniency.

---

\**Alison L. Smith is a partner in the Houston, Texas office of Haynes and Boone LLP.*

### THE DISTRICT COURT'S OPINION

SNTG filed a civil suit against the DOJ seeking to enjoin the presentment of an indictment. District Judge Timothy Savage found in SNTG's favor, holding that due process required that a court (and not the DOJ acting unilaterally) decide whether there has been a breach of the agreement and that the decision should be made *before* indictment. The court reasoned that a pre-indictment decision was required because "if an indictment were later to have been wrongfully secured, it would be too late to prevent the irreparable consequences." *Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553, 560 & n.8 (E. D. Pa. 2005). Following an evidentiary hearing, the court held that SNTG had not breached the leniency agreement and permanently enjoined the DOJ from prosecuting and indicting the company and its executives.

### THE THIRD CIRCUIT'S OPINION

SNTG's victory proved short-lived. In an opinion that pitted the DOJ's separation of powers argument against SNTG's due process argument, the Third Circuit gave primacy to what it saw as the government's virtually "exclusive authority and absolute discretion to decide whether to prosecute a case." *Id.* at 184, citing *United States v. Nixon*, 418 U.S. 683, 693 (1974).

The Third Circuit acknowledged that the federal courts have jurisdiction to enjoin a criminal prosecution under some circumstances, but held that those circumstances were very narrow -- primarily when the very act of filing an indictment may chill the expression of First Amendment rights. The court also recognized that interlocutory appeals were appropriate to challenge government prosecutions that violated the Double Jeopardy Clause or the immunity of Congressional members to speak freely in legislative sessions under the Speech and Debate Clause. But the court reasoned that the right not to be prosecuted existed only when necessary to protect express textual commands in the Constitution, and that SNTG's asserted right was not of that caliber.

At the same time, the Third Circuit did agree that SNTG had a constitutional interest in its leniency agreement that was worthy of some protection. It was "well established" that the government must adhere strictly to the terms of agreements made with defendants – including plea, cooperation and immunity agreements – to the extent the agreements require the defendants to sacrifice constitutional rights, and further, that federal courts have jurisdiction to consider, and hold the government to, the terms of the agreements it makes with defendants. The question thus became:

> [W]hether, in those cases not concerning First Amendment rights, the authority to enforce cooperation or immunity agreements may be exercised pre-indictment in the form of an injunction.

*Id.* at 184. The court answered that question, "No." While, in many circumstances, pre-indictment determination of the parties' obligations under an immunity agreement "would be a good idea," the federal courts had agreed that it was not required. *Id.* at 185.

The Third Circuit observed that SNTG's constitutional interest in its leniency agreement was circumscribed -- the right to a judicial determination of breach before being deprived of its interest in the enforcement of the agreement, which it saw as an interest in not being convicted, rather than not being indicted. *Id.* at 185, citing *United States v. Meyer*, 157 F.3d 1067 (7th Cir. 1998). Thus, even though the DOJ promised "not to bring any criminal prosecution" against SNTG, that agreement would be interpreted only to protect SNTG against conviction rather than indictment and trial. Admitting that this interpretation of a non-prosecution agreement was "counterintuitive," the Third Circuit explained that merely being indicted and forced to stand trial is not constitutional injury, but rather one of painful obligations of citizenship and that the federal courts were generally reluctant to recognize a right not to be indicted or tried absent an express constitutional or perhaps statutory command.

| Section of Antitrust Law | American Bar Association |
|---|---|

Accordingly, the Third Circuit reversed the district court's judgment on the ground that the district court lacked authority to enjoin the prosecutions of SNTG and its executives. All SNTG had was a due process right to a judicial determination that it had breached the agreement before being subjected the risk of conviction, and a pretrial[1] [but post-indictment] evidentiary hearing would satisfy this requirement. SNTG and its executives could thus impose the leniency agreement (as a defense to conviction) in a pre-trial motion or during trial. The availability of this "plain, adequate and complete remedy at law" precluded equitable relief.

## UNCERTAIN RAMIFICATIONS AND OPEN QUESTIONS

In the popular lingo, it is often said, "Be careful what you ask for." The success of the DOJ leniency program has always depended on a leniency applicant's belief that it would escape prosecution. Only this inducement would cause it to confess illegal conduct and expose itself to certain civil damages and other negative fallout. The DOJ's decision unilaterally to revoke SNTG's conditional amnesty and pursue a judicial carte blanche to seek indictment of applicants it has promised not to prosecute could backfire. *Stolt*'s clear lesson is that the DOJ is free to pursue an indictment of a leniency applicant, after the applicant has incriminated itself and seek to use the fruits of that cooperation in pursuit of a conviction.

*Stolt* also underscores the ambiguities imbedded in the antitrust leniency program and the risks entailed when the DOJ and applicant disagree regarding leniency standards and whether they were met. *Stolt* is a colorful example, with the DOJ and SNTG sparring over when SNTG "discovered" the conduct and whether it took "timely and effective action" to terminate its participation. Regarding the decision to indict, *Stolt* holds that only the DOJ's opinion counts.

The *Stolt* decision, while a win for the DOJ, could thus make some applicants think twice about the wisdom of seeking leniency.

An open question is whether other circuits will follow *Stolt*. The Third Circuit said that precedent belied SNTG's argument regarding the necessity of a pre-indictment determination, but that is not necessarily correct. The court's ruling regarding the sufficiency of a post-indictment hearing relied upon two Seventh Circuit cases in which the defendants had already been indicted; the Seventh Circuit perceived that the benefit of the bargain to those defendants was to avoid the risk of conviction and not indictment. Both cases held that a post-indictment hearing on breach satisfied due process *under the circumstances*, but stressed that:

> [I]n cases such as these, the preferred procedure, absent exigent circumstances, would be for the government to seek relief from its obligations under the immunity grant prior to indictment.

*United States v. Meyer*, 157 F.3d at 1078. *Accord United States v. Verrusio*, 803 F.2d 885, 889-90 (7th Cir. 1986). The *Stolt* facts were different -- SNTG had never been indicted.

Another circuit might disagree that the government's interest in prosecutorial discretion takes primacy over a party's constitutional interest in the enforcement of its leniency agreement. The DOJ's strenuous argument in favor of unfettered discretion in indictment decisions was arguably a straw man – the DOJ had already exercised that discretion when it chose to enter the leniency agreement with SNTG. The real issue was not prosecutorial discretion, but whether the DOJ's promise not to prosecute SNTG was enforceable before indictment.

Another court might find that SNTG's constitutional interests were worthy of greater protection. The Third Circuit recognized that due process gave SNTG the right to a pre-trial determination by a court of its interest in the leniency agreement – it was the timing of the determination that was at stake. Whether that determination occurred before or after indictment

| Section of Antitrust Law | American Bar Association |
|---|---|

would seem insignificant to the DOJ – its burden would be the same either way. *United States v. Meyer*, 157 F.3d at 1078 ("a de minimis inconvenience"). By contrast, postponing the determination until after indictment arguably burdened SNTG a great deal. The DOJ had promised SNTG not to "bring any criminal prosecution" against the company. In reliance upon that promise, SNTG implicated itself and its co-conspirators in a crime and gave up valuable constitutional rights along the way. Allowing the DOJ unilaterally to determine that SNTG breached the leniency agreement and seek an indictment of the company extinguished SNTG's right not to have a criminal prosecution brought against it. Another court might find that DOJ's conduct, in the parlance of constitutional due process law, permanently deprived SNTG of a constitutionally protected interest without a meaningful hearing at a meaningful time before an unbiased decision-maker.[2]

The Third Circuit's effort to minimize the burden to SNTG was unconvincing. The court interpreted the DOJ's promise "not to bring any criminal prosecution" against SNTG as merely protecting SNTG against conviction and not indictment, but even the Third Circuit conceded that its interpretation was "counterintuitive." Its interpretation is also difficult to reconcile with the rule it cited elsewhere, that the government must "adhere strictly" to the terms of its agreement. The Third Circuit further described the burden of indictment as merely "unpleasant" and the "painful obligation of citizenship" – characterizations that generally might be true but were arguably inapt when the DOJ had promised not to prosecute SNTG and, in reliance, SNTG irrevocably implicated itself in a crime and waived valuable constitutional rights in the process. The court's characterization also understated the "painful obligation" of indictment in today's world. For corporations, an indictment can mean a corporate death sentence (*see* Arthur Andersen) and furnish sufficient evidence for suspension from government contracting. For individuals, it can mean the end of employment and the former employer's refusal to indemnify defense costs (*see* the Thompson memo).

Given these considerations, another court might find that the federal courts' clear jurisdiction to enjoin indictments that violate specific constitutional rights (*e.g.*, the First Amendment and the Double Jeopardy clause) extends to indictments that extinguish constitutionally protected interests without due process.[3] In the meantime, lawyers negotiating leniency agreements with the DOJ should seek a written agreement providing for a pre-indictment hearing in the event the government claims that the agreement has been breached. According to the Seventh Circuit, such a provision might make all the difference. *United States v. Verrusio*, 803 F.2d at 890 & n. 3.

---

[1] In a footnote, the court commented that a pre-trial determination was "appropriate," notwithstanding the observations by some courts that non-prosecution agreements protect against the risk of conviction and punishment, not trial. It was not in the interest of defendants or the government, once an indictment has been issued, to proceed with a trial before determining whether an immunity agreement bars conviction.

[2] As the Seventh Circuit also observed, "A pre-indictment hearing would curtail prosecutorial overreaching in drafting ambiguous immunity agreements and, in cases in which the defendant had fulfilled his obligations under the agreement, would help to prevent the government from using the threat of criminal prosecution "to achieve by coercion what it could not achieve through voluntary negotiation. *United States v. Meyer*, 157 F.3d at 1079.

[3] *United States v. Verrusio*, 803 F.2d at 890, said as much, "[I]f the second indictment constituted a deprivation of his interest in enforcement of the plea agreement, then, absent exigent circumstances, Verrusio would be entitled to a pre-indictment hearing to determine whether he breached his obligations under the plea agreement." ■

*By Nathanael M. Cousins\**

## NEW FEDERAL "VICTIMS' RIGHTS" STATUTE BRINGS ANTITRUST VICTIMS INTO THE COURTROOM