UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2217 (RJL) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Stolt-Nielsen Transportation Group Ltd., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0474 (RJL) |
| | ) |
| United States Department of Justice, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENT
TO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, United States Department of Justice ("DOJ"), by and through counsel, consents to Plaintiff's Motion for Leave to Supplement its Motion for Partial Summary Judgment (Dk# 47)[1] and hereby submits this Response to Plaintiff's Supplement to its Motion for Partial Summary Judgment (Dk# 47-3) filed on March 2, 2007.  Before filing its motion, plaintiff conferred with defendant as required by Local Rule 7(m).

---

[1] Unless otherwise indicated, the docket numbers herein refer to the docket for Civil Action No. 05-2217 (RJL).

**INTRODUCTION**

This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and concerns nine separate FOIA requests plaintiff made to defendant. Plaintiff seeks no further relief on three additional requests subject to this litigation.[2] In Plaintiff's Supplement to its Motion for Partial Summary Judgment (Dk# 47-3), plaintiff addresses one specific FOIA request, ATFY06-002, seeking "any and all amnesty agreements entered into by the Antitrust Division from August 1993 to the present." Defendant now submits this response and, in support thereof, respectfully refers the Court to its prior submissions[3] and the attached Supplemental Declarations of Wayne Foster, Paralegal, Antitrust FOIA/PA Unit (Foster Decl., Exhibit A); and Belinda Barnett, Senior Counsel, Office of Criminal Enforcement (Barnett Decl., Exhibit B).

The background of the case is fully described in the Division's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (Dk# 28-1) at 3-13. After that motion was filed, the grand jury in separate litigation in the Eastern District of Pennsylvania, on September 6, 2006, indicted plaintiff Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen"), its parent Stolt-Nielsen S.A., another Stolt-Nielsen affiliate, Stolt-Nielsen executive Richard Wingfield, and Stolt-Nielsen executive Samuel Cooperman. *See United States v. Stolt-Nielsen S.A.*, Crim No. 06-466 (E.D. Pa.) Exhibit A to Defendant's Opposition to Motion

---

[2] ATFY05-071, pertaining to a meeting with John Nannes, and ATFY05-088 and ATFY06-026, both of which concern communications with foreign agencies that are International Competition Network members. *See* Plaintiff's Motion for Summary Judgment (Aug. 18, 2006) (Dk# 23-1) at 1; Exhibit 5 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dk# 36) at 13, 32.

[3] This response is not a substitute for our prior submissions, but rather should be read in conjunction with them, including Defendant's Motion for Summary Judgment (Dk# 28-1), Declaration of Ann Lea Richards (Dk# 30-2, Exhibit A), and Declaration of Scott D. Hammond (Dk# 29-2, Exhibit B); Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dk# 40-1), Declaration of Robert E. Connolly (Dk# 40-2, Exhibit A), and Exhibit E (Dk# 41-3); Defendant's Opposition to Motion for Partial Summary Judgment (Dk# 34-1, 06-cv-474-RJL); Defendant's Opposition to Motion for Summary Judgment (Dk# 35-1); *Vaughn* Index (Dk# 20-2); Amended 2006 *Vaughn* Index (Dk# 31-3); Amended 2005 *Vaughn* Index (Dk# 31-2).

for Summary Judgment (Dk# 35-1) filed September 27, 2006. The Division's parcel tanker shipping investigation, an ongoing enforcement matter, continues as to other subjects.

**ARGUMENT**

In its Supplement to its Motion for Partial Summary Judgment (Dk# 47-3), plaintiff appears to challenge three things. First, plaintiff for the first time questions the adequacy of defendant's search, specifically for amnesty agreements, based on plaintiff's discovery of one agreement attached to a criminal defendant's pre-trial motion. Second, plaintiff challenges, as it did in its prior submissions, defendant's justifications for withholding the amnesty agreements; in particular, a purported 20 agreements that were allegedly the subject of media reports. Third, plaintiff reasserts its challenge regarding the segregability of amnesty agreements.

As discussed more fully below, plaintiff's assertions regarding the adequacy of defendant's search fail for several reasons. First, defendant conducted a legally sufficient search as demonstrated by the Declaration of Ann Lea Richards (Dk# 30-2) and the attached Supplemental Declarations. Second, there is no cause to question the adequacy of the search, because the document that plaintiff asserts was overlooked by defendant was *not* overlooked. Rather, it was included in the *Vaughn* Indexes and properly withheld under several FOIA exemptions. Plaintiff raises no new arguments regarding FOIA exemptions and segregability as applied to amnesty agreements.

**I.   The Antitrust Division Conducted a Reasonable Search for and Properly Processed Amnesty Agreements**

Plaintiff observes that the agency bears the burden of proof on the question of whether defendant conducted an adequate search for amnesty agreements in response to plaintiff's FOIA request, ATFY06-002, seeking "any and all amnesty agreements entered into by the Antitrust Division from August 1993 to the present." Plaintiff claims it "discovered" the DuPont-Akra

3

Amnesty Agreement ("Agreement" or "*Dutton* Attachment") attached to a pre-trial pleading, "Defendant's Motion *In Limine* to Exclude Amnesty Agreement," filed in the public docket of a criminal price-fixing case, *United States v. Dutton*, in the U.S. District Court for the Western District of North Carolina (Dk# 47, 47-6). In that case, after the government had identified that Agreement on its list of proposed exhibits, defendant Dutton filed a pre-trial motion seeking to exclude the Agreement from evidence, to which motion he attached a copy of the Agreement (DK# 47-6). Although the court denied the motion, the government ultimately decided not to use the Agreement at trial. Nonetheless, based on its "discovery" of this one document attached to an obscure pre-trial pleading, plaintiff mistakenly concludes that this "reveals that the Antitrust Division has not conducted an adequate FOIA search" (Dk# 47 at 1). Plaintiff misstates the legal standard for an adequate search. As demonstrated below, defendant conducted an adequate search and properly withheld the Agreement along with other amnesty agreements, as indicated on its *Vaughn* Indexes filed in this case on July 7, 2006 (Dk# 20-2 at 140) and September 5, 2006 (Dk# 31-3 at 157).

In discussing the standard by which an agency's search for records is to be judged, the Court of Appeals for the District of Columbia has held that under the FOIA, an agency is required to undertake "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of a search is "dependent upon the circumstances of the case," *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir. 1990), and is measured by "the reasonableness of the [agency's] effort in light of the specific request,"

4

*Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  Accordingly, "[i]n determining the adequacy of a FOIA search, the Court is guided by the principle of reasonableness." *Maydak v. United States Dep't of Justice*, 254 F. Supp. 2d 23, 38 (D.D.C. 2003).

To demonstrate the adequacy of its search, the agency must provide the court with "affidavits of responsible agency officials which are relatively detailed, nonconclusory, and submitted in good faith."  *Greenberg v. United States Dep't of Treasury*, 10 F. Supp. 2d 3, 12-13 (D.D.C. 1998)*; Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Agency affidavits should be "accorded a presumption of good faith." *SafeCard Servs. v SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  It is not necessary that the agency employee who actually performed the search supply an affidavit describing the search; rather the affidavit of an official responsible for supervising or coordinating the search effort should be sufficient in any FOIA litigation case to fullfill the "personal knowledge" requirement of Rule 56(e). *See, eg., Carney v. United States Dep't of Justice,* 19 F.3d at 807, 814 (2d Cir. 1994); *SafeCard Serv. v. SEC*, 926 F.2d 1197, 1201, 1202 (D.C. Cir. 1991).  If the affidavits' description of "what records were searched, by whom, and through what processes," establishes that the agency conducted an adequate search, then summary judgment in favor of the agency is appropriate.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994); *See, e.g., Oglesby*, 920 F.2d at 68; *Weisberg*, 705 F.2d at 1351.

Plaintiff also wrongly asserts that because the amnesty status of 20 companies has allegedly been made public through events ranging from unconfirmed media reports to SEC filings, any amnesty agreements pertaining to those companies should, therefore, be released in full.  Plaintiff cites no authority for its assumption that defendant is somehow obligated to conduct its search outside its own records to find publicly available information.  Indeed,

5

defendant is not obligated to search for responsive records in other agencies' records, pleadings in court dockets, or media reports. *See Brunskill v. United States Dep't of Justice*, No. 99-3316, slip op. at 4-5 (D.D.C. Mar. 19, 2001) (concluding that FBI has no obligation to search for records at Customs Service, because "there is no basis to compel defendant to conduct its search outside its own systems of records"), *summary affirmance granted per curiam*, No. 01-5135 (D.C. Cir. Oct. 15, 2001)(attached as Exhibit C). "The [agency] is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir 1996).

"Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard*, 926 F.2d at 1201 *(cited in Steinberg*, 23 F.3d at 552). Likewise, plaintiff's speculation that more amnesty agreements are in the public domain, simply because it found one attached to an obscure pleading, is insufficient to raise an issue of material fact with regard to the adequacy of the Antitrust Division's search. *See Oglesby*, 920 F.2d at 6-7 n.13 ("Hypothetical assertions are insufficient to raise a material question of fact with respect to adequacy of the agency's search"); *Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004)(stating that "purely speculative claims about the existence and discoverability of other documents are not enough to rebut the presumption of good faith" (quoting *SafeCard*, 926 F.2d at 1200)).

"Nor does plaintiff's identification of unreleased documents that plaintiff obtained through other sources render the [agency's] search unreasonable." *Shewchun v. INS.*, No. 95-1920, slip op. at 7 (D.D.C. Dec. 10, 1996) *summary affirmance granted per curiam*, No. 97-5044 (D.C. Cir. June 5, 1997)(attached as Exhibit D). Indeed, it is the adequacy of the search that matters, not the results of the search. *Steinberg,* 23 F.3d at 551 *(quoted in Shewchun,* No. 95-1920, slip op. at 6

("the central inquiry is not whether there might exist any other documents possibly responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>."); *Weisberg,* 745 F.2d at 1485*; Piper v. United States Dep't of Justice,* 294 F. Supp. 2d 16, 23-24 (D.D.C. 2003).

      A.      **Defendant Searched its Systems of Records for Amnesty Agreements**

           **1. Antitrust Division's Systems of Records**

In his Declaration, Wayne Foster explains that the Antitrust Division has published systems of records used primarily for the fulfillment of the Division's law enforcement mission (Foster Decl. ¶ 5). He stated that any documents responsive to all of plaintiff's FOIA requests would have been located in and retrieved from two systems of records: (1) ATR-004, Statements by Antitrust Division Officials (ATD Speech File); and/or (2) ATR-006, Antitrust Management Information System (AMIS) – Matter Report. The AMIS system contains the primary application, called the Matter Tracking System (MTS), which is used by personnel to locate information about the Division's merger, civil non-merger, and criminal investigations and cases (Foster Decl.¶ 5). As Mr. Foster indicated, no other systems of records would be likely to contain records responsive to plaintiff's requests, and only system of records ATR-006 would be likely to contain amnesty agreements (Foster Decl. ¶¶ 6, 28). The physical records that comprise records system ATR-006 are maintained in different offices, and the Division uses MTS to determine which offices maintain the records pertaining to the search. The files can then be physically retrieved from the appropriate locations. The MTS information is maintained electronically and is retrieved by a variety of key search words and terms such as the name of a company, name of an individual, DOJ file number, or an industry code. (Foster Decl. ¶ 8).

           **2. Defendant Properly Searched for and Located Amnesty Agreements**

In his Declaration, which should be "accorded a presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1200, Wayne Foster explains that on October 14, 2005 plaintiff submitted a FOIA request that was assigned control number ATFY06-002 seeking: "[A]ny and all amnesty agreements entered into by the Antitrust Division from August 1993 to the present." (Richards Decl. ¶ 16, Dk# 30-2; Exhibit N, Dk# 28-14; Foster Decl. ¶ 27). Mr. Foster coordinated the search for responsive records in system of records ATR-006. (*See* Foster Decl. ¶ 11). His initial search relating to plaintiff's first two FOIA requests had revealed an ongoing matter involving Stolt-Nielsen at the Philadelphia Field Office, which maintains the records relating to any ongoing investigation conducted by that office (Foster Decl. ¶ 11). Thus, Mr. Foster contacted Robert Connolly, Chief of the Philadelphia Field Office, to which the matter was assigned, forwarded copies of plaintiff's FOIA request, and asked that a search be conducted for responsive records (Foster Decl.¶ 11).

By e-mail, dated October 20, 2005, Ann Lea Richards, Chief of the FOIA Unit, informed Belinda Barnett, Senior Counsel for Office of Criminal Enforcement (OCE), of request ATFY06-002. Mr. Foster forwarded a copy of request number ATFY06-002 to Ms. Barnett on October 25, 2005, seeking responsive documents. Mr. Foster personally went to the OCE to review the amnesty agreements and their content, and Ms. Barnett's office later provided copies of the amnesty agreements to Mr. Foster (Foster Decl. ¶ 28). Ultimately, each Division criminal section and the Office of Criminal Enforcement searched for amnesty agreements in system of records ATR-006. No other system of records would be likely to contain responsive documents to request number ATFY-06-002. (Foster Decl. ¶¶ 6, 28).

As Mr. Foster explains in his Declaration, Mr. Connolly informed his staff of request

ATFY06-002 and instructed them to maintain all documents generated during the investigation, search for any potentially responsive documents in system of records ATR-006, including electronic and hard copy files, and produce such documents to Melissa Lenzi, supervisory paralegal, who he designated to collect all responsive documents from staff. On November 22, 2005, Mr. Connolly's office forwarded all potentially responsive documents to the FOIA Unit for request ATFY06-002. (Foster Decl. ¶ 13).

     As Belinda Barnett explains in her Declaration, she conducted a search in system of records ATR-006 for amnesty agreements in the OCE. In addition, Ms. Barnett personally reviewed the amnesty agreements located and maintained in OCE's amnesty files or obtained by the OCE from Division criminal sections. She and her paralegal Cassi Wiseman also contacted each Division criminal section to ensure that OCE had copies of all Division amnesty agreements. The OCE provided Mr. Foster with copies of all Division amnesty agreements responsive to request ATFY06-002. (Barnett Decl. ¶¶ 3, 5). Through Ms. Barnett's work in the OCE, she was aware that trials had occurred in certain investigations that had involved an amnesty applicant. Thus, searching for responsive records, she contacted trial staffs whose underlying investigations had involved an amnesty applicant to determine if the pertinent applicant's amnesty agreement had been disclosed in Division trial proceedings. (Barnett Decl. ¶ 6). While this effort was in progress, the Division's FOIA Unit instructed her that it would disclose amnesty agreements that had been made exhibits and entered into evidence at Division trials. She ultimately also contacted all Division criminal section chiefs to determine whether any amnesty agreements had been made exhibits at Division trials and, if so, to obtain copies of those exhibits (Barnett Decl. ¶ 6).

Ms. Barnett specifically contacted, among others, Duncan Currie, Chief of the Dallas Field Office, and Mitchell Chitwood, Assistant Chief and lead attorney for the Division in the *Dutton* litigation. She specifically inquired about the Agreement and was told the Agreement was not used as an exhibit at the *Dutton* trial. Ms. Barnett learned from Mr. Chitwood that the trial staff had originally planned to use the Agreement as an exhibit at trial, but the staff ultimately decided against its use at trial and the Agreement was not made an exhibit (Barnett Decl. ¶6).

As a result of Ms. Barnett's inquiries, she was ultimately informed that five amnesty agreements had been made exhibits at Division trials. Ms. Barnett produced copies of those five trial exhibit agreements to Wayne Foster. She also produced to Mr. Foster a copy of plaintiff's amnesty agreement provided to her by the Division's Appellate staff that had been made an exhibit in plaintiff's litigation against the Division, concerning the revocation of its amnesty agreement (Barnett Decl. ¶ 6).

Defendant's multiple searches, as set forth in the Declarations of Richards (Dk# 30-2 ¶ 21), Foster, and Barnett, performed in response to plaintiff's request were calculated to locate all responsive records and demonstrate that the Antitrust Division conducted a reasonable search. Their Declarations also indicate that no other system of records beside ATR-006 would likely contain responsive records. The Declarations describe "what records were searched, by whom, and through what processes," and thereby establish that the Antitrust Division's search for responsive documents was adequate. *See Steinberg*, 23 F.3d at 552.

    **B.**    **Defendant Properly Processed Plaintiff's FOIA Requests**

Mr. Foster stated that he was assigned all plaintiff's FOIA requests for processing. After he located potentially responsive documents, he reviewed the documents and separated responsive records from non-responsive records. Mr. Foster carefully reviewed responsive pages

line-by-line, applying the FOIA exemptions, marking the pages with his recommendations for redacting portions of pages and/or withholding entire pages, and segregating the nonexempt portions for release. Mr. Foster's recommendations were then forwarded to Ann Lea Richards, Chief, FOIA/PA Unit, who made the final determinations for releasing or withholding Division records. In particular, as for the amnesty agreements that are the subject of plaintiff's current motion, he also reviewed the amnesty agreements and forwarded his recommendations to Ms. Richards for a final determination on disclosure. After the final review was completed, the exempt documents that were to be withheld in their entirety were separated and marked accordingly. Exempt portions of the remaining disclosable documents were redacted and marked with applicable FOIA exemptions. Pages containing no exemptions were released in full. The redacted documents and those to be released in full were copied and produced to plaintiff (Foster Decl. ¶¶ 4, 26; Richards Decl. ¶ 21-22). The Declarations of Mr. Foster and Ms. Richards show that the Antitrust Division's FOIA Unit properly processed the plaintiff's requests and carefully segregated nonexempt portions for release. *See Warren v. Soc. Sec. Admin.*, No. 98-0116E, 200 WL 1209383, at *5 (W.D.N.Y. Aug. 22, 2000) *aff'd in pertinent part*, 10 F. App'x. 20 (2d Cir. 2001).

    C.    **Defendant Released to Plaintiff Six Amnesty Agreements That Were Exhibits and Entered into Evidence at Division Trials or Hearings**

On April 27, 2006, defendant responded to all six of plaintiff's FY 2006 requests, including ATFY06-002 seeking amnesty agreements. *See* Ann Lea Richard's Declaration for a description of the records produced to plaintiff on that date (Richards Decl. ¶ 25, Dk# 30-2; Exhibits V-AA, Dk# 26-22 – 26-26). Initially, on April 27, the FOIA Unit released to plaintiff four amnesty agreements in their entirety (14 pages): ATR-2012-2014, ATR-2015-2018, ATR-2019-2022, and ATR-2023-2025. (Dk# 28-23, Exhibit W; Foster Decl. ¶ 42; Amended 2006

*Vaughn* Index Dk# 31-3 at 2-3).

On July 7, 2006, in conjunction with filing a *Vaughn* Index, a supplemental document production was released to plaintiff. Included in the production were two additional amnesty agreements that had been entered into evidence at Division trials: ATR- 4611-4616 (previously Bates numbered ATR-3160-3164) and ATR-4617-4621 (previously Bates numbered ATR-3165-3169), both released in full. See Amended 2006 *Vaughn* Index (Dk# 31-3 at 153-154).

Defendant has produced supplemental records to plaintiff on several occasions. In the process of assisting with this response, Ms. Barnett found six e-mails (12 pages) potentially responsive to request ATFY05-072 (Barnett Decl. ¶ 8). On March 20, 2007, Ms. Barnett forwarded these records to the FOIA Unit. Accordingly, the FOIA Unit is processing the records (ATR-4995-5006) and any nonexempt portions will be released to plaintiff shortly (Foster Decl. ¶ 47). Also, on March 22, 2007, the FOIA Unit became aware of and was provided with a four-page document that is a shorter version of a document (ATR-336-342) previously produced in full to plaintiff in response to request ATFY05-072. See Amended 2005 *Vaughn* Index p. 17 (Dk# 31-2). The FOIA Unit will be releasing this document (ATR-4990-4994) in its entirety to plaintiff (Foster Decl. ¶¶ 12, 47). Courts have treated the additional release of records as evidence of an agency's good faith efforts. *Maynard v. CIA*, 986 F.2d 547, 565 (1st Cir. 1993).

    **D.**    **Defendant Correctly Withheld the *Dutton* Attachment**

That plaintiff has been able to obtain a copy of the *Dutton* Attachment does not prove that the Agreement was improperly withheld. Defendant has already released to plaintiff six amnesty agreements that were either introduced into evidence during a Division criminal trial or, in the case of the Stolt-Nielsen amnesty agreement, in the Stolt-Nielsen civil case against the Division concerning the revocation of its amnesty agreement. In her letter dated April 27, 2006 to

plaintiff, in which amnesty agreements were disclosed, Ann Lea Richards, Chief, Antitrust FOIA Unit, explained that amnesty agreements admitted into evidence at trial are public documents and thus subject to disclosure pursuant to the FOIA.  (Dk# 28-23, Exhibit W).  Ms. Richard's letter is fully consistent with the defendant's statement in its Opposition to Plaintiff's Motion for Partial Summary Judgment, quoted by plaintiff in its Supplement, that the Division has produced all agreements "that have been made public at Division trials." (Dk# 47-3 citing Def. Opp. Mot. Partial Summ. J., No. 06-474 (RJL) at 13).  In contrast to the six released amnesty agreements, the Agreement plaintiff cites was never introduced into evidence at a Division trial or in the case of the Stolt-Nielsen agreement, a Division hearing.  Rather, it was simply an attachment to a pretrial motion filed by a criminal defendant and was never used at the subsequent trial.  Moreover, as described below, Mr. Foster's attempts to verify whether the Agreement was publicly available revealed that access to it was restricted.  Accordingly, defendant correctly concluded that the *Dutton* Attachment was not a "public" document and not subject to release, pursuant to applicable FOIA Exemptions.

The Supreme Court has instructed that a source in a criminal investigation will be deemed confidential, within the meaning of Exemption 7(D), whenever the source "provides information under either an express assurance of confidentiality or under circumstances where such an assurance can reasonably be inferred." *United States Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).  In this case, the Declaration of Scott Hammond explains the importance of maintaining confidentiality for sources in the Division's amnesty program. (Hammond Decl. ¶¶ 9-11).  Once confidentiality is established, courts are reluctant to find a waiver of Exemption 7(D) protections. *See e.g., Parker v. Dep't of Justice*, 934 F.2d 375, 378-79 (D.C. Cir. 1991); *Neely v. Federal Bureau of Investigation*, 208 F.3d 461, 466 (4th Cir. 2000) (recognizing that a source can

remain a confidential source even if the source's communication with the agency is subsequently disclosed at trial); *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)(concluding that an informant's testimony in open court did not waive the government's right to invoke Exemption 7(D)).

The Division in this instance properly withheld from plaintiff the Agreement which contains identifying information of the confidential source as well as the information provided by the source, such as an amnesty agreement. The Court need look no farther than the Division's application of Exemption 7(D) to find that the amnesty agreement was properly withheld.

The Supreme Court has affirmed the privacy interests of individuals mentioned in law enforcement files. *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 772-73 (1989). In this case, Mr. Dutton has privacy interests related to the allegations of criminal conduct about him that were disclosed during the course of his criminal trial, filed in September 2002. This is especially true since he received a jury verdict of "not guilty" in the case in October 2003. (Dk# 47-5 at 5, 11). *See Reporters Committee*, 489 U.S. 749 (1989) (finding a person's privacy interest in his or her criminal history is so substantial, despite the fact that the events contained therein were once a matter of public record, that disclosure of such material to a third party is *per se* an unwarranted invasion of privacy). Plaintiff has not articulated any public policy reasons that would outweigh Mr. Dutton's privacy interests to justify an agency release of criminal allegations about Mr. Dutton, such as the *Dutton* filings that plaintiff has filed in this FOIA case. Any public interest would be *de minimis* compared to the privacy interests in this instance. Plaintiff's personal interest in seeking information through FOIA for use in its criminal trial is not a FOIA recognized interest that should be weighed against Mr. Dutton's privacy interests. *See Neely v. FBI*, 208 F.3d at 464 (plaintiff's purpose of requesting records to attack his

convictions does not count in the calculation of the public interest).  Accordingly, the Division acted properly in withholding personal information about Mr. Dutton's trial and the criminal allegations in that case pursuant to Exemption 7(C) of the FOIA.

For references to the Division's prior briefs and exhibits on the application of Exemptions 7(A), 7(D), 7(C), (b)(5), (b)(2), and (b)(3) to amnesty agreements, see Section II of this response, below.

### E.   The *Dutton* Attachment Agreement Appears on Defendant's *Vaughn* Indexes

On February 20, 2007, defendant learned that plaintiff had located one of the amnesty agreements that defendant had withheld in response to request ATFY06-002.  Plaintiff provided defendant with a copy of (1) a pretrial motion, Defendant Robert Bradley Dutton's Motion *In Limine* To Exclude Amnesty Agreement with the attached Agreement, filed September 8, 2003 in *United States of America v. Robert Bradley Dutton*, Case No. 3:02CR220-V (W.D. N.C. Case Dk# 50)(Dk# 47-5, 47-6); (2) Government's Response to Defendant's Motion *in Limine* to Exclude Amnesty Agreement and proposed Order file-stamped September 15, 2003 (WD NC Case) (Dk# 47-7); and (3) an April 27, 2006 letter from Ann Lea Richards to Lucius B. Lau and Mark B. Gidley, White & Case LLP, in response to request ATFY06-002, which released three amnesty agreements that "had been entered into evidence at trial," plus Stolt-Nielson's own agreement that had been entered into evidence in a civil action concerning the revocation of its amnesty agreement. (Foster Decl. ¶ 48)(Richards Decl. ¶25, Dk# 30-2; Exhibit W, Dk# 28-23).

Mr. Foster personally checked the records and reviewed the *Vaughn* Indexes filed in this FOIA litigation to determine if the *Dutton* Attachment was among those amnesty agreements that were found in the Division's initial search for responsive documents and withheld as set forth in

the *Vaughn* Indexes (Foster Decl. ¶ 49). He confirmed that the Agreement (ATR-4766-4770)[4] was included in the Amended 2006 *Vaughn* Index filed on September 5, 2006 (Dk# 31-3 at 157). He observed that the *Dutton* Attachment was not marked with an exhibit sticker or court file-stamp date to indicate that it had been filed in a previous court case (Foster Decl. ¶50).

As stated above, Ms. Barnett had contacted Duncan Currie, Chief, and Mitchell Chitwood, Assistant Chief, of the Division's Dallas Field Office, to inquire whether the Agreement had been entered into evidence and used at trial. According to Mr. Chitwood, the government had initially planned to introduce the Agreement as evidence at trial, but ultimately decided not to use it at trial (Barnett Decl. ¶ 6). Contrary to plaintiff's suggestion, the Division did not introduce the Agreement into evidence or rely on it at trial in the *Dutton* case (Barnett Decl. ¶ 6). It was Mr. Dutton, not the Division, who attached it to his motion. (*See* Dk# 47-5, 47-6).

Mr. Foster attempted to retrieve the *Dutton* Attachment filed in the *Dutton* case from the U.S. District Court for the Western District of North Carolina's PACER Web site and found that all of the documents filed in the *Dutton* case were unavailable on PACER. He called the W.D.N.C. clerk's office and was informed that all criminal cases before November 2004 are restricted by the court and not available on PACER (Foster Decl ¶ 52). Although he was able to obtain the motion and attached Agreement (W.D.N.C. *Dutton* Dk# 50) from the clerk's office, he could only do so by providing the *Dutton* case name and number. The *Dutton* Attachment was not available on PACER, until plaintiff attached it to the instant motion and filed it in this FOIA litigation (Dk# 47-6). However, even now it is not widely available to a member of the public, either on PACER or from the Court, without first identifying the case name or number. The pretrial motion was marked with a court file-stamp date, but the Agreement that Mr. Foster

---

[4] In the September 5, 2006 Amended 2006 *Vaughn* Index, the Agreement was Bates-numbered ATR-4766-4770, and the Index was filed in Consolidated Cases, 05-cv-2217 (RJL)(Dk# 31-3 at 157) and 06-cv-474 (RJL)(Dk# 29-2 at 157).

received from the court had no court file-stamp date or exhibit sticker affixed to it that would indicate it had been filed in a previous court case (Foster Decl. ¶ 52).

Mr. Foster's and Ms. Barnett's Declarations demonstrate that the Agreement was included on the defendant's *Vaughn* Indexes that were filed in this case, well before plaintiff discovered the Agreement on its own. Accordingly, plaintiff's challenge to the adequacy of defendant's search for responsive documents based on plaintiff's "discovery" of the *Dutton* Attachment is without merit.

## II. Defendant Properly Withheld the Amnesty Agreements under FOIA Exemptions

Plaintiff's Supplement (Dk# 47-3) seeks partial summary judgment against defendant regarding its request seeking "all amnesty agreements from 1993 to the present (with only the applicant's name and industry redacted)." Plaintiff seeks full release of 20 agreements whose identities plaintiff alleges have been revealed in media reports. These claims have been already fully briefed before this Court, and plaintiff has raised no materially new arguments regarding FOIA Exemptions or segregation in its supplemental pleading. Thus, defendant respectfully refers the Court to the defendant's prior briefings and exhibits on these issues for the reasons why defendant is entitled to summary judgment as a matter of law.[5]

---

[5] Defendant's Motion for Summary Judgment (Dk# 28-1), Declaration of Ann Lea Richards (Dk# 30-2, Exhibit A), and Declaration of Scott D. Hammond (Dk# 29-2, Exhibit B); Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dk# 40-1), Declaration of Robert E. Connolly (Dk# 40-2, Exhibit A), and Exhibit E (Dk# 41-3); Defendant's Opposition to Motion for Partial Summary Judgment (Dk# 34-1, 06-cv-474-RJL); Defendant's Opposition to Motion for Summary Judgment (Dk# 35-1); *Vaughn* Index (Dk# 20-2); Amended 2006 *Vaughn* Index (Dk# 31-3).

**CONCLUSION**

As demonstrated above, the Court should find Defendant's search for amnesty agreements to be adequate, grant Defendant's Motion for Summary Judgment, and deny Plaintiff's Motions for Partial Summary Judgment and for Summary Judgment.

Respectfully submitted,

\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar No. 498610
United States Attorney

\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar No. 434122
Assistant U.S. Attorney

\_\_\_/s/_____
CHARLOTTE A. ABEL, D.C. Bar No. 388582
Assistant U.S. Attorney
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332