**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

MAR 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| **STOLT-NIELSEN**<br>**TRANSPORTATION GROUP LTD.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Civil Case No. 05-2217 (RJL)** |
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| _____**Defendant.**_____ | ) | |
| **STOLT-NIELSEN**<br>**TRANSPORTATION GROUP LTD.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **Civil Case No. 06-0474 (RJL)** |
| **UNITED STATES DEPARTMENT OF**<br>**JUSTICE,** | ) ) ) | |
| _____**Defendant.**_____ | ) | |

**MEMORANDUM OPINION**
(March 28, 2007) [#14, #23, #26, #28]

Plaintiff, Stolt-Nielsen Transportation Group Ltd. ("Stolt-Nielsen"), brings these actions against the United States or America and the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking records pertaining to an ongoing grand jury investigation being conducted by the Antitrust Division of the DOJ (the "Division"). Currently before the Court are Cross-Motions for Summary Judgment filed in each of the two consolidated cases. After

1

reviewing the Motions and upon consideration of the entire record herein, the defendant's motions are GRANTED and plaintiff's motions are DENIED.

### BACKGROUND

On January 15, 2003, the Antitrust Division of the DOJ granted Stolt-Nielsen conditional leniency pursuant to its Corporate Leniency Program in which a cartel member admits its participation in a criminal antitrust conspiracy and cooperates in the Division's investigation of its coconspirators in return for protection from criminal conviction, fines, and jail terms for its employees. Three months later, the Division determined that Stolt-Nielsen was not complying with the terms of the conditional leniency, notified Stolt-Nielsen that it was considering whether to withdraw its conditional leniency, and suspended Stolt-Nielsen's obligations to cooperate with the Division. Subsequently, on June 24, 2003, an executive of Stolt-Nielsen was criminally charged with antitrust violations.

In February 2004, Stolt-Nielsen, its parent corporation, and the executive who was charged with criminal violations filed suit in the Eastern District of Pennsylvania. Although that court entered an injunction on January 15, 2005, prohibiting the Division from seeking an indictment of Stolt-Nielsen, its parent corporation, or the executive, that decision was reversed by the United States Court of Appeals for the Third Circuit on March 23, 2006. The district court also unsealed the case and all trial transcripts and exhibits. The revocation of conditional leniency by the Division and the subsequent court proceedings generated intense interest in the legal community. Indeed, the Division

responded to inquiries in the public forum through various means, such as speeches to the antitrust bar and other public pronouncements.

Stolt-Nielsen, for its part, has submitted fourteen FOIA requests to the Antitrust Division– twelve of which are the subject of this action. The requests, filed between June 3, 2005 and January 26, 2006, seek a myriad of documents including internal Division notes and memoranda relating to a Division meeting with Stolt-Nielsen counsel John Nannes; speeches by Division officials and related documents; documents related to articles published about the Stolt-Nielsen amnesty litigation; documents relating to the opening of the Divisions's investigation of the parcel tanker shipping cartel; communications by Division officials with foreign governments that are members of the International Competition Network relating to Stolt-Nielsen or the parcel tanker shipping cartel investigation; communications by the Division with the press, bar associations, and individuals uninvolved in the Stolt-Nielsen amnesty litigation or the parcel tanker shipping investigation; communications with various attorneys in private practice who represent potential fact or victim witnesses in the parcel tanker shipping grand jury investigation; and every amnesty agreement entered into by the Division since 1993. (*See* Richard's Decl. ¶ 9-20.)

On September 13, 2005, the Division produced 280 pages of documents in response to plaintiff's first through fifth FOIA requests, but withheld other documents. The Division supplemented its response on January 31, 2006 and March 28, 2006 with a total of 167 pages of documents, and informed plaintiff that a number of documents responsive to plaintiff's sixth FOIA request had been disclosed already in the September

13 production.  (*See* Def.'s Exs. S, T, U.)  On April 27, 2006, the Division produced 261

additional pages of documents and withheld approximately 1,232 pages in response to

plaintiff's seventh through twelfth FOIA requests.  (*See* Def.'s Exs. V-AA.)

## ANALYSIS

**I.     Standard of Review**

**A.     Federal Rule of Civil Procedure 56**

Summary judgment is appropriate when the pleadings and the record demonstrate

that "there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial

burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences

regarding the assertions made in a light favorable to the non-moving party, *Biodiversity*

*Conservation Alliance v. U.S. Bureau of Land Mgmt.*, 404 F. Supp. 2d 212, 216 (D.D.C.

2005) (citing *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 192-93 (D.D.C. 2005)).  "[W]hen

ruling on cross-motions for summary judgment, the Court shall grant summary judgment

only if one of the moving parties is entitled to judgment as a matter of law upon material

facts that are not genuinely disputed."  *Barr Labs., Inc. v. Thompson*, 238 F. Supp. 2d

236, 244 (D.D.C. 2002) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).

**B.     The Freedom of Information Act**

In a FOIA case, an agency "is entitled to summary judgment if no material facts

are in dispute and if it demonstrates 'that each document that falls within the class

requested either has been produced . . . or is wholly exempt from the Act's inspection

requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)); *see Billington v. DOJ*, 233 F.3d 581, 583-84 (D.C. Cir. 2000). Notably, in a FOIA case, "the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). For such an affidavit to entitle an agency to summary judgment, the agency "must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency "must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *id.*, and the affidavit must "recite[] facts which enable the District Court to satisfy itself that all appropriate files have been searched, *i.e.*, that further searches would be unreasonably burdensome," *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986). Our Circuit Court has noted that "in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

## II.    Defendant Conducted a Reasonable Search.

As a threshold matter, this Court finds defendant's search for records pertaining to Stolt-Nielsen's FOIA request to be adequate. While there is no requirement that an

agency search every record system in response to a FOIA request, *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986), an agency must search records systems in which it is likely to find responsive records, *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1999). The agency is entitled to summary judgment on the adequacy of its search if it can show that it made a "good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested." *Id.* (citing *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

In support of its Motion for Summary Judgment, defendant put forth the declaration of Ann Lea Richards, the Chief of the FOIA Unit of the Antitrust Division of the DOJ. Ms. Richards described in detail the action taken by defendant in response to plaintiff's FOIA request and the bases for the FOIA exemptions exercised by defendant in this action. According to Ms. Richards, the Division's computerized records were searched for documents relevant to all requests submitted by Stolt-Nielsen. (Richard's Decl. ¶ 21.) When the search revealed an open investigation in the Philadelphia Field Office, the chief of that office was contacted to conduct a search responsive to Stolt-Nielsen's requests. In addition, Scott Hammond, the Deputy Assistant Attorney General for Criminal Enforcement of the Antitrust Division of the DOJ was contacted to conduct similar searches of records. (*Id.*) After each request was received from plaintiff, Mr. Connolly and Mr. Hammond were contacted to conduct searches for responsive documents. (*Id.*) Upon receipt, a paralegal specialist in the Division's FOIA Unit reviewed the documents located in response to the requests to determine whether they were responsive and, then, whether they were publicly available. (*Id.* ¶ 22.) The

documents were then re-reviewed by Ms. Richards, and, ultimately, the appropriate documents were produced to Stolt-Nielsen. (*Id.*)

Based on the declaration of Ms. Richards, and mindful of the deference due to agency decisions in this context and that it must accord "substantial weight" to agency affidavits, *see Goland*, 607 F.2d at 352, this Court finds that defendant's search was adequate and that defendant is properly entitled to summary judgment on this issue.

## III.    FOIA Exemptions Invoked by the Division

The Antitrust Division has moved for summary judgment on the grounds that it withheld records that are appropriately exempted from disclosure under FOIA and that it has adequately justified the exemptions it has claimed through the declarations provided by Ann Lea Richards, the Chief of the FOIA Unit of the Antitrust Division of the DOJ, and Scott Hammond, the Deputy Assistant Attorney General for Criminal Enforcement of the Antitrust Division of the DOJ, and the *Vaughn* Index attached to its Motion for Summary Judgment.[1]    Defendant invokes the following seven FOIA exemptions in its index:  5 U.S.C. § 552(b)(2) ("Exemption (b)(2)"); 5 U.S.C. § 552 (b)(3) ("Exemption (b)(3)"); 5 U.S.C. § 552 (b)(5) ("Exemption (b)(5)"); 5 U.S.C. § 552(b)(6) ("Exemption (b)(6)"); 5 U.S.C. § 552 (b)(7)(a) ("Exemption (b)(7)(a)"); 5 U.S.C. § 552(b)(7)(c) ("Exemption (b)(7)(c)"); and 5 U.S.C. § 552(b)(7)(d) ("Exemption (b)(7)(d)").    Plaintiff objects to redactions based upon each of these exemptions.  For the following reasons, the

---

[1]    Our Circuit held in *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973), that there is no set form for an index compiled in response to a FOIA request.  However, three important components are:  (1) that the index is one document; (2) the index must adequately describe the withheld documents or deletions; and (3) the index must state the particular FOIA exemption and explain why the exemption applies. *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

Court disagrees with each of the plaintiff's objections, and finds that the defendant's search meets the necessary standard established by our Circuit.

### 1) Exemption (b)(2)

Exemption (b)(2) allows for the withholding of any information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). In *Schwaner v. Department of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990), our Circuit established a two-step test for determining whether materials are exempt from disclosure under Exemption (b)(2). "First, the material withheld should fall within the terms of the statutory language." *Id.* (quoting *Founding Church of Scientology*, 721 F.2d at 830 n.4.) If this criterion is satisfied, "the agency may defeat disclosure by proving that either 'disclosure may risk circumvention of agency regulation,'" *id.* (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369 (1976)), or "the material relates to trivial administrative matters of no genuine public interest," *id.* (citing *Founding Church of Scientology*, 721 F.2d at 830 n.4) (internal quotation marks omitted).

To determine whether the requested information is sufficiently related to the internal concerns of an agency, our Circuit employs a test of "predominant internality." *Id.* at 795 (citing *Crooker v. A.T.F.*, 670 F.2d 1051, 1074 (D.C. Cir. 1981)). As such, to qualify under Exemption (b)(2), information need not actually constitute "rules and practices," but need only be "related" to rules and practices. *Id.* Indeed, "courts have also exempted materials that are so closely related to rules and practices that disclosure could lead to disclosure of the rule or practice itself." *Id.* at 796.

The material exempted by defendant under Exemption (b)(2) satisfies the first prong as the Division withheld materials that include "documents that would reveal techniques and procedures for law enforcement investigations or prosecutions, would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities." (Richards Decl. ¶ 28.)    Further, the leniency agreements withheld pursuant to this exemption are compiled for law enforcement purposes and are used by the Division as internal documents.    The agreements, although they require input from leniency applicants, are maintained as confidential, internal documents and are not disseminated outside the Division except when necessary in trial proceedings in that individual case. (*Id.*)

Because defendant has thus satisfied the first portion of the test established in *Schwaner*, it is necessary to determine if disclosure of the information withheld "may risk circumvention of agency regulation," *Schwaner*, 898 F.2d at 794 (citing *Rose*, 425 U.S. at 369; *Crooker*, 670 F.2d at 1074), or if "the material relates to trivial administrative matters of no genuine public interest," *id.* (citing *Founding Church of Scientology*, 721 F.2d at 830 n.4) (internal quotation marks omitted).    The Division has withheld some documents as trivial and having no genuine public interest.    The Court agrees that these documents as described by the *Vaughn* indexes were properly withheld pursuant to this exemption. (*See* Richards Decl. ¶ 28.)

Further, the leniency agreements sought by plaintiff, if made public, could assist some individuals in evading the law as they would reveal information relating to the

operation of the Division's amnesty program.    The Division understandably must safeguard the confidentiality of the amnesty program, which is an incentive for amnesty applicants to cooperate.    Even if the agreements were released in redacted form, the confidentiality of the program would be compromised.  In addition, the Division withheld materials pursuant to this exemption that are related to confidential consultations with foreign antitrust enforcers about the investigation of plaintiff or the parcel tanker industry. (*Id.*)  If the details of these communications were disclosed, it would interfere with ongoing or prospective enforcement proceedings and would discourage such communications from occurring in the future.    Accordingly, the Court finds that defendant properly withheld information under FOIA Exemption (b)(2).

### 2) Exemption (b)(3)

Exemption (b)(3) allows for the exemption of information "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  In evaluating withholdings under Exemption (b)(3), the court "do[es] not closely scrutinize the contents of a withheld document; instead, [it] determine[s] only whether there is a relevant statute and whether the document falls within that statute." *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993).

In this case, defendant has withheld documents based upon Federal Rule of Criminal Procedure 6(e), which explicitly bars disclosure of a "matter before the grand jury," and which has been recognized as a statute under FOIA Exemption (b)(3). *See*

*Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 867-68

(D.C. Cir. 1981). Rule 6(e) describes the circumstances under which grand jury

testimony may be disclosed, *see* Federal Rule of Criminal Procedure 6(e)(3); however,

none of these exceptions are applicable here. Here, the amended *Vaughn* indexes

describe the records that have been withheld pursuant to Rule 6(e) as including the

request for grand jury authority, indictment recommendations, identities of witnesses

before the grand jury, the subjects and the discretion of grand jury investigations, text of

grand jury testimony, and grand jury exhibits. (*See* Richards Decl. ¶ 29.) This type of

information has been held to be governed by Rule 6(e), and, thus, excluded from release

under FOIA Exemption (b)(3). *See, e.g., Douglas Oil Co. of Cal. v. Petrol Stops N.W.*,

441 U.S. 211, 221-24 (1979); *Lopez v. DOJ*, 393 F.3d 345, 364 (D.C. Cir. 2005). Thus,

the Court is satisfied that defendant has met the standard for applying Exemption (b)(3).

### 3) Exemption (b)(5)

Exemption (b)(5) provides that "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party . . . in litigation with the agency"

are exempted from disclosure under FOIA. 5 U.S.C. § 552(b)(5). Typically, this

exemption applies to documents "which would normally be 'protected' in civil

discovery." *Jiminez v. FBI*, 938 F. Supp. 21, 28 (D.D.C. 1996). Among those documents

protected in civil discovery, and therefore covered by this exemption, are deliberative

process and attorney work product materials. *See NLRB v. Sears, Roebuck & Co.*, 421

U.S. 132, 149 (1975); *EPA v. Mink*, 410 U.S. 73, 86 (1973); *Coastal States Gas Corp. v.*

*U.S. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (stating that a "traditional area

of privilege which has been recognized under Exemption 5 is attorney work-product.").
While the attorney work product privilege provides a "'zone of privacy' within which to
think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal
theories," the doctrine protects only those documents "prepared in contemplation of
litigation." *Coastal States*, 617 F.2d at 864.

Moreover, as explained by our Circuit Court, the purpose of the "deliberative
process privilege" is to assure that subordinates within an agency will feel free to provide
the decisionmaker with their uninhibited opinions and recommendations without fear of
later being subject to public ridicule or criticism; to protect against premature disclosure
of proposed policies before they have been finally formulated or adopted; and to protect
against confusing the issues and misleading the public by the dissemination of documents
suggesting reasons and rationales for a course of action which were not in fact the
ultimate reasons for the agency's action. *Id.* at 866.

As indicated by defendant's *Vaughn* Index, and stated by Ms. Richards in her
declaration, the documents defendant withheld pursuant to Exemption (b)(5) include,
*inter alia*, materials prepared in anticipation of litigation, drafts for supervisory approval,
and proposed direct and cross examinations. (*See Vaughn* Index at 26, 61; Dorn Decl. ¶
85.)[2] These are precisely the types of materials that the attorney work product and
deliberative process privileges, as embodied by FOIA Exemption (b)(5), are designed to

---

[2] The Division has withheld documents related to the opening date of the investigation into the
parcel tanker industry. Plaintiff acknowledges that segregability is not required for documents
that are fully protected by the work product doctrine. *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366,
371 (D.C. Cir. 2005). Moreover, this Court finds that the Division has not waived this privilege
as plaintiff cannot show that the Division has publicly disclosed this information. *See Stolt-
Nielsen v. United States*, Civ. Action No. 04-537 (E.D. Pa. 2004) at JA 558.

protect from disclosure. Accordingly, this Court finds that defendant properly invoked Exemption (b)(5) to withhold these materials.

### 4) Exemption (b)(6)

Exemption (b)(6) provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" may be exempted from disclosure under FOIA. 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted "similar files" to include all information "on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497 (1966) *reprinted in* 1966 U.S.C.C.A.N. 2418). To properly invoke Exemption (b)(6), the agency must show that the information applies to a particular individual and is personal in nature. *N.Y. Times Co. v. NASA*, 852 F.2d 602, 606 (D.C. Cir. 1988).

This exemption requires that the Court strike a proper "balance between the protection of an individual's right to privacy and the preservation of the public's right to Government information." *Wash. Post Co.*, 456 U.S. at 599 (quoting H.R. Rep. No. 89-1497); *Hornbostel v. Dep't of the Interior*, 305 F. Supp. 2d 21, 34 (D.D.C. 2003) (quoting *Wash. Post Co.*, 456 U.S. at 599). The analysis of the "public interest" focuses on the purpose for which FOIA was enacted, that is, to "shed[] light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Accordingly, if a document invades a third party's privacy but does not contain "official information" shedding light on government functions, it may be withheld under Exemption (b)(6). *Id.* at 774.

13

In this case, defendant invokes Exemption (b)(6) to withhold phone numbers and

e-mail addresses. (Richards Decl. ¶¶ 35.) As defendant correctly notes, this information

is clearly personnel information, medical information, or information that can "be

identified as applying to [a particular] individual," *Wash. Post Co.*, 456 U.S. at 602, and

therefore satisfies the threshold requirement for withholding under FOIA Exemption

(b)(6). Plaintiff has not demonstrated any legitimate public interest in the release of this

personnel information, and, therefore, this information was properly withheld pursuant to

Exemption (b)(6). *See, e.g., Judicial Watch, Inc. v. Dep't of Commerce*, 83 F. Supp. 2d

105, 112 (D.D.C. 1999) (finding similar biographical data to be the type of information

protected by Exemption (b)(6)).

### 5) Exemption (b)(7)(a)

Plaintiff challenges those documents withheld pursuant to 7(a), which allows

agencies to withhold information that could reasonably interfere with law enforcement

proceedings. 5 U.S.C. § 552(b)(7)(a). In order to apply Exemption 7(a), the agency must

demonstrate that: (1) a law enforcement proceeding is pending or that the information

withheld is likely to lead to a proceeding; and (2) release of the information is reasonably

expected to cause articulable harm. *Manna v. DOJ*, 51 F.3d 1158, 1164 (3rd Cir. 1995).

Articulable harm occurs "whenever the government's case in court . . . would be harmed

by the premature release of evidence or information," *NLRB v. Robbins Tire & Rubber

Co.*, 437 U.S. 214, 232 (1978), or when disclosure would impede any necessary

investigation prior to the enforcement proceeding, *Dickerson v. DOJ*, 992 F.2d 1426,

1429 (6th Cir. 1993).

In this case, plaintiff seeks a copy of every amnesty agreement entered by the Division since its Corporate Leniency Policy was instituted in August 1993, which involves 100 grand jury investigations and approximately 100 amnesty letters. (Hammond Decl. ¶ 11.) The Division has withheld copies of these amnesty agreements entered in grand jury investigations that do not involve this plaintiff, except for five agreements that were made public at other trials. (Def.'s Mot. Summ. J. at 35.) The confidential nature of these agreements and the parties that enter into them is crucial to the nature of the program, and the revelation of these materials could reasonably be expected to interfere with ongoing and prospective anti-cartel enforcement proceedings by having a chilling effect on the program and the cooperation of participants in it. (Richards Decl. ¶ 37 (d).)

Similarly, the Division has withheld materials relating to private consultations with foreign antitrust enforcers about the investigation of plaintiff or the parcel tanker industry. These consultations were conducted in confidence to further criminal investigations in both this country and abroad. (Hammond Decl. ¶ 19.) The Division states that "[t]o effectively investigate and prosecute international cartels, governments need to be able to communicate freely on investigative and prosecutorial issues . . . without a concern that such communications could be publicly disclosed." (*Id.* ¶ 18.) Therefore as release of this information would provide potential witnesses with insights into the Division's strategy and the strength of its position, chill necessary investigative communications with foreign governments, and have a chilling effect on amnesty applications, the Court is satisfied that the Division properly applied Exemption (b)(7)(a).

15

**6) Exemption (b)(7)(c)**

Exemption(b)(7)(c) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c). For records to be "compiled for law enforcement purposes," they must meet two criteria: (1) the activity that gave rise to the documents must be related to enforcement of federal laws or maintenance of national security; and (2) the nexus between the activity and "one of the agency's law enforcement duties must be based on information sufficient to support at least a 'colorable claim' of rationality." *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982); *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987).

In asserting this exemption, an agency is required to balance the nature of the privacy interest with the public interest in disclosure. *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 855 (D.D.C. 1989). In this regard, our Circuit Court has stated that "'Exemption 7(c) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.'" *Computer Prof'ls for Soc. Responsibility v. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996) (quoting *Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990)). Our Circuit Court also has found that there is a considerable stigma inherent in being associated with law enforcement proceedings, and, therefore, courts should not "require a balance tilted emphatically in favor of disclosure" when weighing the privacy

interest against the public interest in disclosure. *Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C. Cir. 1981).

Here, the Division withheld only the names of individuals under this exemption, and does not assert this exemption as justification for withholding the amnesty agreements in full. (*See* Amended *Vaughn* Index at 155, 157, 159; Reply to Pl.'s Opp. to Mot. Summ. J. at 10.) Accordingly, as the amnesty agreements were "compiled for law enforcement purposes," *see Pratt*, 673 F.2d at 421, and because plaintiff has failed to demonstrate a public interest in individuals' names that is sufficient to outweigh the privacy concerns implicated, this Court finds that defendant properly withheld this information pursuant to Exemption (b)(7)(c).

### 7) Exemption (b)(7)(d)

Exemption 7(d) protects from disclosure those records or information compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(d). This exemption provides for protection of all information provided by a confidential source if there has been an explicit assurance of confidentiality or circumstances existed which would have implied an understanding of confidentiality. *DOJ v. Landano*, 508 U.S. 165 (1993); *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

There is, however, no assumption that a source is confidential for purposes of Exemption 7(d) whenever a source provides information to a law enforcement agency in the course of a criminal investigation, but, rather, a source's confidentiality is determined on a case-by-case basis. *Id.* at 179-80. Where an agency relies on an express assurance of confidentiality to justify its decision to withhold information under Exemption 7(d), it must offer "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. DOJ*, 60 F.3d 1043, 1061 (3rd Cir. 1995)). Where an agency relies on an implied assurance of confidentiality, the Court must determine "whether the particular source spoke with an understanding that the communication would remain confidential." *Landano*, 508 U.S. at 172. The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists. *Id.* at 179-80; *Quinon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996).

The Antitrust Division has criminal law enforcement authority and conducts wide-ranging investigations into antitrust conspiracies. Those charged with such conspiracies face serious criminal penalties. The Division has stated that those who provide information about co-conspirators are often concerned about keeping their identities and information confidential because retaliation is a harsh reality in the marketplace, and "[t]hus, many seek explicit assurances of confidentiality before sharing any information. Others assume from the circumstances that their identity and any information they impart will be held in confidence." (Richards Decl. ¶ 40.) More specifically, plaintiff complains that the Division has not produced materials related to plaintiff's former general counsel,

Paul O'Brien, who is suing plaintiff for alleged retaliation in the form of constructive discharge for actions related to this case. (Reply to Pl.'s Opp. to Mot. Summ. J. at 12 n.8.) However, because Mr. O'Brien himself has sued Stolt-Nielsen, it seems apparent that he would have wanted any conversations he had with the Division regarding his former employer to be kept confidential. Thus, given the nature of the conspiracies at issue and Mr. O'Brien's relationship with the plaintiff, the Division has more than established that implied assurances of confidentiality apply to these sources of information.

Plaintiff claims, nonetheless, that the confidential nature of the information is waived in some cases, because a party has either announced its acceptance into the leniency program or a public report identifies a participant as being in the program. Unfortunately for the plaintiff, however, our Circuit has held that a waiver should be found only upon "absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality." *Parker v. DOJ*, 934 F.2d 375, 378 (D.C. Cir. 1991) (quoting *Dow Jones & Co. v. DOJ*, 908 F.2d 1006, 1011 (D.C. Cir. 1990)). Indeed, the requester must demonstrate that "'the exact information given to [law enforcement] has already become public, and the fact that the informant gave the same information to [law enforcement] is also public." *Id.* (quoting *Dow Jones*, 908 F.2d at 1011). Here, although plaintiff asserts that in some cases a leniency agreement was acknowledged in public or reported in the media, it does not

claim that the leniency agreements themselves were made public.[3]  Accordingly, this Court finds that defendant properly withheld this information pursuant to Exemption (b)(7)(d).

## IV.  Defendant Released All Responsive Segregable Records

Finally, with regard to segregablility, if a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999); 5 U.S.C. § 552(b).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Here, the Division has submitted a sufficiently detailed *Vaughn* index describing each document, its authors, recipients, and dates in support of its assertion that it has released all responsive segregable records.  Moreover, the Division has submitted two declarations, including one by its FOIA Unit Chief, Ann Lea Richards, that include detailed explanations for the reviews conducted by the Division.  Having reviewed the Division's declaration and attachments, the Court concludes that the Division has withheld only the records or portions of records exempt under the exemptions noted above, and that all reasonably segregable material has been released.  (*See* Richards Decl.

---

[3]  Where the leniency agreements were made public at a trial, defendant produced those agreements. *See* Amended *Vaughn* Index at 2-3, 153-54.

¶¶ 22-26.)  Finally, this Court finds that the information contained in the leniency agreements is not reasonably segregable because of the nature of those documents.  With respect to these records, the Division's declaration and attachments adequately specify "in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Motions for Summary Judgment and DENIES plaintiff's Motions for Summary Judgment.  An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

21